UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALEXANDRA POPOVCHAK and OSCAR
GONZALEZ, individually and on behalf of all
others similarly situated,

                  Plaintiffs,

     -against-

UNITEDHEALTH GROUP INCORPORATED,
UNITED HEALTHCARE INSURANCE
COMPANY, UNITED HEALTHCARE
SERVICES, INC., and UNITED HEALTHCARE
SERVICE LLC

                  Defendants.
-------------------------------------------------------------x

Case No.  1:22-cv-10756-LLS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice pending*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

MEMORANDUM OF LAW ........................................................................................................ 1

I.    INTRODUCTION .............................................................................................. 1

II.    BACKGROUND .................................................................................................. 4

III.    LEGAL STANDARD .......................................................................................... 8

IV.    ARGUMENT ...................................................................................................... 10

    A.    Plaintiffs' Claims Are Procedurally Defective. ......................................... 10

    B.    Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC. ..................... 12

    C.    Plaintiffs Do Not State a Viable Claim Under Section 1132(a)(3). ........................... 14

    D.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under Section 1132(a)(2) and 1109(a) on Behalf of Their Plans. ........................................................19

    E.    Plaintiffs Fail to State a Claim Based On Co-Fiduciary Liability ............................ 20

    F.    Plaintiffs Do Not Have Standing to Pursue Prospective Relief................................ 21

    G.    The Court Should Strike Plaintiffs' Jury Trial Demand............................................ 23

V.    CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Med. Ass'n v. United Healthcare Corp.*,
　2001 WL 863561 (S.D.N.Y. July 31, 2001) ........................................................20

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)................................................................................................8

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)................................................................................................8

*Bellanger v. Health Plan of Nevada, Inc.*,
　814 F. Supp. 914 (D. Nev. 1992).........................................................................22

*Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
　775 F. Supp. 2d 730 (S.D.N.Y. 2011).............................................................15, 18

*Bushell v. UnitedHealth Grp. Inc.*,
　2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018) ...............................................12, 13

*Canouse v. Protext Mobility, Inc.*,
　2019 WL 691732 (S.D.N.Y. Jan. 30, 2019) .........................................................8

*Cavelli v. New York City Dist. Council of Carpenters*,
　2011 WL 9155793 (E.D.N.Y. Mar. 7, 2011).......................................................12

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
　771 F.3d 150 (2d Cir. 2014).............................................................................15, 16

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
　472 U.S. 559 (1985)..............................................................................................18

*In re Citigroup ERISA Litig.*,
　2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)....................................................21

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983)................................................................................................23

*CLA Milton, LLC v. N. Am. Elite Ins. Co.*,
　2022 WL 347621 (S.D.N.Y. Feb. 4, 2022).........................................................11

*Conkright v. Frommert*,
　559 U.S. 506 (2010)..............................................................................................19

*Conroy v. High Peaks Dental Pro. P'ship*,
 2019 WL 3997118 (N.D.N.Y. Aug. 23, 2019) ...................................................................20

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*,
 790 F.3d 411 (2d Cir. 2015) ..............................................................................................8

*Cunningham v. Cornell Univ.*,
 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ..................................................................17

*Delgado v. ILWU-PMA Welfare Plan*,
 2018 WL 8014336 (C.D. Cal. Nov. 20, 2018) ..................................................................22

*Doe v. United Health Grp. Inc.*,
 2018 WL 3998022 (E.D.N.Y. Aug. 20, 2018) ..................................................................12

*Faber v. Metro. Life Ins. Co.*,
 648 F.3d 98 (2d Cir. 2011) ..................................................................................................9

*Fountain v. Karim*,
 838 F.3d 129 (2d Cir. 2016) ................................................................................................8

*Frommert v. Conkright*,
 433 F.3d 254 (2d Cir. 2006) ..............................................................................................14

*Great-West Life & Annuity Ins. Co. v. Knudson*,
 534 U.S. 204 (2002) ...........................................................................................................16

*Gregory v. Daly*,
 243 F.3d 687 (2d Cir. 2001) ............................................................................................8, 9

*Heimeshoff v. Hartford Life & Accident Ins. Co. et al.*,
 571 U.S. 99 (2013) .............................................................................................................11

*Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*,
 2017 WL 1658825 (E.D. Ky. May 1, 2017) .....................................................................11

*Holly v. Cunningham*,
 2016 WL 8711593 (S.D.N.Y. June 17, 2016) .................................................................8, 9

*Laurent v. PricewaterhouseCoopers LLP*,
 945 F.3d 739 (2d Cir. 2019) ..............................................................................................16

*Lockheed Corp. v. Spink*,
 517 U.S. 882 (1996) ...........................................................................................................20

*Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*,
 7 F. Supp. 2d 351 (S.D.N.Y. 1998) ...................................................................................19

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
    2016 WL 2939164 (S.D.N.Y. May 19, 2016) .......................................................................9

*McCabe v. Cap. Mercury Apparel*,
    752 F. Supp. 2d 396 (S.D.N.Y. 2010) ...........................................................................18

*McElwaney v. Becker*,
    394 F. Supp. 3d 342 (W.D.N.Y. 2019) ...........................................................................16

*Meidl v. Aetna*,
    2017 WL 1831916 (D. Conn. May 4, 2017) .............................................................21, 22

*Merryman v. Citigroup, Inc.*,
    2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) .................................................................21

*Michael E. Jones, M.D., P.C. v. Aetna, Inc.*,
    2020 WL 5659467 (S.D.N.Y. Sept. 23, 2020) ...............................................................14

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016) ........................................................................................................14

*Nerney v. Valente & Sons Repair Shop*,
    66 F.3d 25 (2d Cir. 1995) ................................................................................................19

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2015) ............................................................................................12

*Nobile v. Pension Comm. of Pension Plan for Emps. of New Rochelle Hosp.*,
    611 F. Supp. 725 (S.D.N.Y. 1985) ..................................................................................17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................................21

*Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*,
    2021 WL 665045 (S.D.N.Y. Feb. 19, 2021) ..............................................................12, 13

*Schnall v. Marine Midland Bank*,
    225 F.3d 263 (2d Cir. 2000) ..............................................................................................8

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) .......................................................................................21, 22

*Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater New York*,
    583 F. Supp. 380 (S.D.N.Y. 1984) ..................................................................................17

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc.*,
    27 F. Supp. 3d 371 (S.D.N.Y. 2014).................................................................................20

*Smart v. Goord,*
    441 F. Supp. 2d 631 (S.D.N.Y. 2006)..................................................................10

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)....................................................................................21

*Thole v. U.S. Bank,*
    140 S. Ct. 1615 (2020)................................................................................21

*Tischmann v. ITT/Sheraton Corp.,*
    145 F.3d 561 (2d Cir. 1998).........................................................................23

*Varity Corp v. Howe,*
    516 U.S. 489 (1996)....................................................................................14

*Wegmann v. Young Adult Inst., Inc.,*
    2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) .....................................................14

*Weiss v. CIGNA Healthcare, Inc.,*
    972 F. Supp. 748 (S.D.N.Y. 1997) ...............................................................18

*Wilkins v. Mason Tenders Dist. Council Pension Fund,*
    445 F.3d 572 (2d Cir. 2006).........................................................................14

*Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan,*
    2017 WL 2462675 (S.D.N.Y. June 7, 2017) ...................................................14

## STATUTES

29 U.S.C. § 1104(a)(1)(A)(ii) ............................................................................2, 18

29 U.S.C. § 1105(a) ..........................................................................................8

29 U.S.C. § 1109(a) .......................................................................................8, 20

29 U.S.C. § 1132(a)(1)(B) ................................................................................7, 8

29 U.S.C. § 1132(a)(2).......................................................................................8

29 U.S.C. § 1132(a)(3)..................................................................................7, 8, 14

## MEMORANDUM OF LAW

Defendants UnitedHealth Group Incorporated ("UHG"), UnitedHealthcare Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS Inc."), and United Healthcare Service LLC ("UHS LLC," and, together with UHS Inc., "UHS") move the Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing as stated herein Plaintiff Alexandra Popovchak's and Plaintiff Oscar Gonzalez's claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Specifically, Defendants respectfully request that the Court grant their Motion and dismiss the following claims: (1) Popovchak's claim under 29 U.S.C. § 1132(a)(1)(B), in Count I; (2) Gonzalez's claim for benefits for services provided by Dr. Frelinghuysen under 29 U.S.C. § 1132(a)(1)(B), in Count I; (3) all claims under 29 U.S.C. § 1132(a)(3) in Count II; (4) all claims under 29 U.S.C. § 1132(a)(3) in Count III; (5) all claims under 29 U.S.C. § 1105(a) in Count IV; (6) all claims against UHG and UHIC; and (7) Plaintiffs' claim for prospective injunctive relief for lack of Article III standing under Federal Rule 12(b)(1). Defendants' motion is based upon the Memorandum of Law set forth below, as well as the records, pleadings, and papers on file in this action, including the Declaration of Jane Stalinski and supporting exhibits, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

## I.      INTRODUCTION

Plaintiffs Alexandra Popovchak and Oscar Gonzalez are members of ERISA-governed health plans administered by UHS LLC and UHS Inc., respectively. Popovchak and Gonzalez each chose to receive services from health care providers outside of their plans' approved provider networks. Though the written terms of their respective plans each expressly caution that seeking out-of-network care may result in lower benefits levels and higher out-of-pocket costs, both Plaintiffs nevertheless sought those services. They now contend UHS was obligated to reimburse

their claims at a higher rate (i.e., to pay more for those claims than allowed under their plan).  They further contend that the reimbursement rates UHS used unfairly exposed them to the *possibility* that they would be "balance billed" (where a provider may bill the member for the difference between the amount the provider charges for its services and the amount paid by the member's plan).

More specifically, Plaintiffs take issue with the fact that UHS reimbursed their claims by using data from third-party vendors (which Plaintiffs call "repricers") who use paid-claims data in markets across the country to arrive at fair, market-driven reimbursement rates.  Plaintiffs contend that UHS should have instead used data collected by an organization called FAIR Health—even though that organization is referenced nowhere in Plaintiffs' plans.  Although using data from third-party vendors to calculate benefits preserves assets for their plans and members at large, Plaintiffs maintain that the decision by UHS to not use FAIR Health data to determine reimbursement amounts violated the terms of their plans and UHS's fiduciary duties to Plaintiffs and the plans.

Plaintiffs' contention misunderstands both the terms of their plans and, more fundamentally, the fiduciary duties of plan administrators like UHS.  Plaintiffs contend their plans require UHS to use the FAIR Health data to calculate reimbursement rates, even when lower rates using data from third-party vendors are available.  But ERISA obligates fiduciaries to preserve plan assets for *all* members and beneficiaries, not just those, like Plaintiffs, who choose to seek out-of-network care.  *See* 29 U.S.C. § 1104(a)(1)(A)(ii).  Using more expensive reimbursement methodologies, no matter the individual circumstances and where less expensive rates are available, depletes plan assets for the benefit of the few.  Such an inequitable result is simply not contemplated by the plans or ERISA.

Plaintiffs bring four causes of action on behalf of themselves and a putative class of beneficiaries of UHS-administered plans for whom UHS calculated reimbursement amounts without reference to FAIR Health data, notwithstanding allegedly contrary language in the plans. All four causes of action are premised on the same alleged injury—the purported underpayment of benefits. Plaintiffs' first cause of action, brought under Section 1132(a)(1)(B), is deficient in several respects, insofar as Popovchak's claim is untimely, and Gonzalez failed to exhaust all available administrative remedies with regard to his claim for services obtained from one of his healthcare providers. Plaintiffs' second, third, and fourth causes of action allege that UHS breached its fiduciary duties to the plans and their members, and that Plaintiffs are therefore entitled to an injunction and "other appropriate equitable relief." But because these claims are premised on the same alleged injury and seek the same relief (the recovery of benefits allegedly due), Plaintiffs have an adequate remedy under Section 1132(a)(1)(B) and thus may not bring their duplicative claims under Section 1132(a)(2) and (3). Moreover, Plaintiffs' claims against two of the defendants—UHG and UHIC—have no basis at all, as neither of those entities is a proper defendant for Plaintiffs' claims under binding Second Circuit precedent. Finally, Plaintiffs lack Article III standing to seek prospective relief, as their claims are based only upon past denials of benefits and their complaint contains no colorable allegations suggesting a risk of future injury.

All of Plaintiffs' claims discussed above should be dismissed with prejudice, so that the sole remaining claim—the portion of Count I asserting a claim for benefits under Section 1132(a)(1)(B) of ERISA against UHS Inc. by Gonzalez for services from one healthcare provider, Dr. McCance—can be litigated based on an appropriate evidentiary record.[1] The Court should

---

[1] Although Defendants are not moving to dismiss Gonzalez's claim for benefits for services from Dr. McCance through this motion, Defendants reserve all rights and defenses, and will demonstrate at an appropriate point that Gonzalez's benefits were properly paid for that claim under the terms of his Plan.

also strike Plaintiffs' demand for a jury trial, because no such right attaches to a claim for benefits under ERISA.

## II.    BACKGROUND

Plaintiff Popovchak is a member of the Morgan Stanley Health Benefits and Insurance Plan (the "Morgan Stanley Plan")—a self-funded, employer-sponsored health plan administered by UHS LLC.  Compl. ¶¶ 6, 89.  Plaintiff Gonzalez is a member of the Fresenius Medical Care Premium Medical Plan (the "Fresenius Plan")—a self-funded, employer-sponsored health plan administered by UHS Inc.  *Id.* ¶¶ 7, 105.  Both of these plans are governed by ERISA.  *Id.* ¶ 19.

Plaintiffs allege that they received medical services from health care providers who are outside UHS's network—meaning that the providers do not have direct contracts with UHS, and thus have not negotiated a rate agreement directly with UHS.  Compl. ¶¶ 31–32, 76, 91.  Popovchak alleges she received services from Specialty Physicians of New Jersey, *id.* ¶ 76, and Gonzalez alleges he received services from Dr. Sean McCance and Dr. Peter Frelinghuysen, *id.* ¶ 91.

Plaintiffs' plans expressly advise members that they may be exposed to greater out-of-pocket costs when they choose to receive care from a non-network provider and may be responsible for the difference between the charges billed by the provider and the amounts reimbursed by UHS.  Compl. ¶ 33.  Specifically, the Morgan Stanley Plan advises members they "will be responsible for any amount billed by the out-of-network provider that is greater than the amount [UHS] determines to be an Eligible Expense."  Stalinski Decl., Ex. 1 at 33.  And the Fresenius Plan explains that members are "responsible for paying . . . any difference between the amount the provider bills you and the amount [UHS] will pay for Eligible Expenses."  *Id.*, Ex. 2 at 10.  The Fresenius Plan further explains that the "amount in excess of the Eligible Expense could

be significant." *Id.*, Ex. 2 at 8; *see also id.*, Ex. 1 at 32 (Morgan Stanley Plan similarly explaining that plan members "may receive significant cost savings when using" in-network providers).

Plaintiffs' plans have different reimbursement methodologies for emergency and non-emergency non-network services, and further vest UHS with discretion to decide how "Eligible Expenses"—*i.e.*, expenses eligible for coverage—will be determined for non-network services:

### Morgan Stanley Plan (Plaintiff Popovchak)

When Covered Health Services are received from an out-of-network provider as a result of an Emergency or as arranged by UHC, Eligible Expenses are an amount negotiated by UHC or an amount permitted by law.

[…]

For out-of-network services, Eligible Expenses are covered as follows:

- When Covered Health Services are received from an out-of-network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the out-of-network provider and either UHC or one of UHC's vendors, affiliates or subcontractors, at UHC's discretion.

- If rates have not been negotiated, then one of the following applies based on claim type:

  - For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

  - When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.

  - When a rate is not published by CMS for the service or data resources of competitive fees in a geographic area are not available, UHC uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale or similar methodology.  The relative value scale is usually based on the difficulty, time, work, risk and resources of the service[.]

Stalinski Decl., Ex. 1 at 34.

**Fresenius Plan (Plaintiff Gonzalez)**

When Covered Health Services are received from a non-Network provider as a result of an Emergency or as arranged by UnitedHealthcare, Eligible Expenses are an amount negotiated by UnitedHealthcare or an amount permitted by law.

[…]

For Non-Network Benefits, Eligible Expenses are based on either of the following:

- When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

- If rates have not been negotiated, then one of the following amounts

  - For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

  - When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.

  - When a rate is not published by CMS for the service, UnitedHealthcare uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale. The relative value scale is usually based on the difficulty, time, work, risk and resources of the service. If the relative value scale currently in use becomes no longer available, UnitedHealthcare will use a comparable scale(s). UnitedHealthcare and OptumInsight are related companies through common ownership by UnitedHealth Group. Refer to UnitedHealthcare's website at www.myuhc.com for information regarding the vendor that provides the applicable gap fill relative value scale information.

  IMPORTANT NOTICE: Non-Network providers may bill you for any difference between the provider's billed charges and the Eligible Expense described here.

Stalinski Decl., Ex. 2 at 11.

The plans provide UHS discretion to choose which methodologies or "data resources" it will use to pay non-network providers like those used by Plaintiffs. Compl. ¶ 23. To that end, both plans confirm that UHS has "the discretion and authority to decide . . . how the Eligible Expenses will be determined and otherwise covered under the Plan." Stalinski Decl., Ex. 1 at 33; *id.*, Ex. 2 at 10. And both plans state that the amount paid to non-network providers is the "amount [UHS] determines that [UHS] will pay for benefits." *Id.*, Ex. 1 at 33; *id.*, Ex. 2 at 10. The plans also expressly provide UHS the flexibility to negotiate reimbursement rates or otherwise reimburse any amount allowable under the law for non-network services received for an emergency, recognizing that providers may and often do charge excessive rates for such services.

Notwithstanding the difference between emergent and non-emergent methodologies supported by the plans, as well as the broad discretion conferred to UHS by the plans, Plaintiffs assert UHS was obligated to use FAIR Health rates *exclusively*, even though "FAIR Health" is not mentioned once in the terms of their plans. *See, e.g.*, Compl. ¶¶ 131–32 (alleging FAIR Health is the only "accurate[] and objective[]" data resource for competitive fees used to determine Eligible Expenses under the plans). Because UHS used data resources other than FAIR Health to determine the "competitive fee" it would pay for certain claims, Plaintiffs contend UHS violated the terms of their plans. *Id.* Notably, Plaintiffs do not allege they have incurred any out-of-pocket expenses with respect to these claims, nor do they allege their providers have actually billed them for the difference between the amount UHS paid and the amount billed.

Based on these allegations, Plaintiffs bring four causes of action against all Defendants: (1) a claim for underpaid benefits (29 U.S.C. § 1132(a)(1)(B)); (2) a claim for breaches of fiduciary duty as to the Plaintiffs (29 U.S.C. § 1132(a)(3)); (3) a claim for breaches of fiduciary duty as to

the plans (29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1109(a)); and (4) a claim for "co-fiduciary liability"

under  29 U.S.C. §§ 1132(a)(1)(B), (a)(2), (a)(3) and  29 U.S.C. § 1105(a).  Compl. ¶¶ 129–46.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to

relief that is plausible on its face.'"  *Canouse v. Protext Mobility, Inc.*, 2019 WL 691732, at *3

(S.D.N.Y. Jan. 30, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, a complaint must contain

"well-pleaded factual allegations" that provide "more than a sheer possibility that a defendant has

acted unlawfully."  *Id.* at 678–79.

"A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of

subject matter jurisdiction if . . . the plaintiff lacks constitutional standing to bring the action."

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015).

Under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving, by a preponderance

of the evidence, that such jurisdiction exists.  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

It is a "well-established principle" in this Circuit that, in ruling on a motion to dismiss, a

court is not limited to "only the assertions made within the four corners of the complaint itself,"

and may properly consider documents attached to the pleadings or incorporated by reference.

*Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).  Thus, where a complaint makes "express

mention" of a document, a defendant may introduce that document in support of its motion to

dismiss. *Holly v. Cunningham*, 2016 WL 8711593, at *1 n.1 (S.D.N.Y. June 17, 2016).  And even

when certain outside documents are not attached to or expressly referenced in the complaint, a

court may nevertheless consult such documents where they are "integral" to the plaintiff's claims

and the plaintiff has notice of them.  *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir.

2000).

Here, in evaluating Defendants' motion to dismiss, the Court should take judicial notice of Exhibits 1 through 3 of the Stalinski Declaration, which are excerpts from the summary plan description for the 2020 Morgan Stanley Plan for Plaintiff Popovchak (Ex. 1); excerpts from the summary plan description for the 2021 Fresenius Plan for Plaintiff Gonzalez (Ex. 2); and the November 7, 2022 letter issued by United Healthcare Services, Inc. to Susan Urso, regarding a request submitted by Ms. Urso on Plaintiff Gonzalez's behalf (Ex. 3).

The complaint refers and relies at length on the Morgan Stanley Plan and the Fresenius Plan. *See, e.g.*, Compl. ¶ 6 (identifying Popovchak as a beneficiary of the Morgan Stanley Plan); *id.* ¶ 7 (identifying Gonzalez as a beneficiary of the Fresenius Plan); *id.* ¶ 23 (quoting language from both plans granting "discretionary authority" to administrator to determine reimbursement amounts); *id.* ¶¶ 52–54 (quoting and discussing language of "Competitive Fee Plans," defined to include both the Morgan Stanley and Fresenius plans). These "express mentions" make judicial notice of the plan documents proper. *Holly v. Cunningham*, 2016 WL 8711593, at *1 n.1; *see Gregory*, 243 F.3d at 691. Indeed, because ERISA claims so often "stand[] or fall[]" upon the terms of plan documents (just as here), "[c]ourts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016); *see also, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 100–01 (2d Cir. 2011).

The Court may also take judicial notice of the November 7, 2022 letter. Defendants offer the letter as evidence of Gonzalez's failure to exhaust his administrative remedies. Where exhaustion is a prerequisite to bringing suit, the issue is "an integral part" of the plaintiff's claim; in other words, the plaintiff "necessarily refers to and relies on documents exhibiting proof of

exhaustion." *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006).  Courts are therefore entitled to look to evidence beyond the complaint in determining whether a plaintiff exhausted administrative remedies.  *Id.*

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Are Procedurally Defective.

To bring a benefits claim under ERISA, Plaintiffs' plans require members to (i) exhaust all available administrative remedies, and (ii) file their claims within the prescribed time limits.  By their own admissions in their complaint, Popovchak and Gonzalez (with respect to his claim based on services received from Dr. Frelinghuysen) failed to satisfy these requirements.  Their claims are therefore procedurally defective and should be dismissed.

***Popovchak.***  The Morgan Stanley Plan provides that after members exhaust UHS LLC's administrative processes, they have "the right to file a lawsuit under ERISA, if it is within the earliest of:

- Six months following the date [their] appeal is denied,
- Three years following the date the services [they] are appealing are performed, or
- The end of any other applicable statutory limitation period."

Stalinski Decl., Ex. 1 at 175.  After Popovchak's provider received a Provider Remittance Advice ("PRA") on April 9, 2021 explaining how her claim was processed, she filed an administrative appeal on October 13, 2021.  Compl. ¶ 83.  The appeal was denied on December 4, 2021, and she filed a second-level administrative appeal on March 14, 2022.  Compl. ¶¶ 85, 88.  The second-level appeal was denied on March 28, 2022.  Compl. ¶ 89.  But her complaint was not filed until December 21, 2022—almost *nine months* after Popovchak's final internal appeal was denied, and well beyond the six-month deadline provided by the Plan.

The Supreme Court has enforced contractual limitations provisions that set forth "reasonable periods" within which members of ERISA-governed benefits plans may bring a civil

action under their plan. *Heimeshoff v. Hartford Life & Accident Ins. Co. et al.*, 571 U.S. 99, 106–07 (2013). And six-month filing periods, like that allowed by the Morgan Stanley Plan, have been routinely upheld by federal courts as "reasonable." *Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*, 2017 WL 1658825, at *3 (E.D. Ky. May 1, 2017) (collecting cases). *Cf. CLA Milton, LLC v. N. Am. Elite Ins. Co.*, 2022 WL 347621, at *3 (S.D.N.Y. Feb. 4, 2022) ("limitations periods of six months" "have consistently been held to be reasonable under New York law").

Because Popovchak filed this action more than six months after her second-level appeal was denied, her claim for benefits is untimely and should be dismissed.

***Gonzalez (Frelinghuysen Claim)***.   The Fresenius Plan requires members to avail themselves of UHS Inc.'s internal review processes before they may file suit in court. Stalinski Decl., Ex. 2 at 96 (a member "cannot bring any legal action" against UHS until "all required reviews of [a member's] claim have been completed"). Gonzalez generally alleges he filed both first- and second-level appeals challenging the processing of his claims. Compl. ¶¶ 100, 104, 112, 116. But with respect to his "Frelinghuysen Claim," Gonzalez notes that he received a "*new* [explanation of benefits ("EOB")] for Dr. Frelinghuysen's surgical services" on September 23, 2022. Compl. ¶ 118 (emphasis added). And though the complaint details his disagreement with the explanation provided in that new EOB, nowhere does Gonzalez allege that he lodged any formal appeal contesting the revised benefits determination, let alone that he exhausted the internal appeals process following receipt of the new EOB.

Having failed to exhaust his administrative remedies as to the Frelinghuysen Claim, or to plead any basis why such exhaustion would be futile, *see* Stalinski Decl., Ex. 3, the plain terms of the Fresenius Plan bar Gonzalez's attempt to recoup benefits for that claim through this action.

**B.**   **Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC.**

The only proper defendants in an action to enforce the terms of an ERISA plan are "(1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits." *Bushell v. UnitedHealth Grp. Inc.*, 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (citing *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 133 (2d Cir. 2015)).   "[C]onclusory allegation[s]" regarding a potential defendant's involvement in the claims process "do[] not suffice" to establish liability.   *Id.*; *see also Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, 2021 WL 665045, at *9 (S.D.N.Y. Feb. 19, 2021) (dismissing claims against a named defendant where "the plaintiff has failed to allege sufficient facts to show that [the named entity] is a proper defendant in this case").

Plaintiffs assert all their claims, including their claims for benefits, against "United," *see* Compl. ¶¶ 129–46, a term they define to encompass four distinct entities:   UnitedHealth Group Inc. ("UHG"), UnitedHealthcare Insurance Company ("UHIC"), UnitedHealthcare Services, Inc. ("UHS Inc."), and United Healthcare Service LLC ("UHS LLC"), *see id.* ¶ 14.   But such group pleading is no substitute for proper allegations against *specific* defendants, *see Cavelli v. New York City Dist. Council of Carpenters*, 2011 WL 9155793, at *12 (E.D.N.Y. Mar. 7, 2011), and here, Plaintiffs do not allege sufficient facts to support their claims against UHG or UHIC.

For UHG, all the complaint alleges is that UHG is the parent company of the other Defendants, *see* Compl. ¶ 8, and that UHG's "subsidiaries" act as "claims administrator for the Morgan Stanley Plan and the Fresenius Plan," *id.* ¶ 22.   But "[t]here is no precedent for the proposition that subsection (a)(1)(B) permits beneficiaries of a plan to sue the parent company of a proper defendant." *Bushell*, 2018 WL 1578167, at *8.   In fact, in *Bushell*, the court dismissed claims against this same defendant (UHG) premised on the same deficient allegations.   *See id.* at *9; *see also Doe v. United Health Grp. Inc.*, 2018 WL 3998022, at *4 (E.D.N.Y. Aug. 20, 2018)

(dismissing claims against UHG and UHIC because they were "not proper defendants for the plaintiff's ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3)").  The result should be the same here.

Plaintiffs' claims against UHIC fare no better.  The complaint contains only two specific allegations regarding UHIC.  *First*, the complaint alleges that UHIC's address is listed in one section of Popovchak's (but not Gonzalez's) plan.  Compl. ¶ 24.  Courts have consistently rejected attempts to hold a defendant liable based on such a tenuous link.  For example, in *Park Avenue Aesthetic Surgery*, the plaintiff alleged that an entity could be made a defendant merely because communications were sent on the entity's "stationery."  2021 WL 665045, at *9.  Unsurprisingly, the court deemed this insufficient to show that the entity excised "total control over the benefits denial process," as is required under binding Second Circuit precedent.  *Id*.  The same holds true here—that UHIC's address was listed somewhere in the plan documents in no way establishes that UHIC administered either of the plans or otherwise exercised total control over benefit claims.  *Second*, the complaint alleges UHIC "was the entity that pre-authorized Mr. Gonzalez's surgery as medically necessary."  Compl. ¶ 25.  Again, this allegation concerning pre-authorization does not support an inference that UHIC had any role in determining the *ultimate* benefits award that is at the center of Gonzalez's claim.  And of course, that UHIC may have pre-authorized Gonzalez's surgery does not permit an inference that it is a proper defendant for *Popovchak's* ERISA claims.

Because the complaint does not allege facts permitting an inference that UHG or UHIC served as "the plan administrator," "the plan trustee," or "a claims administrator who exercises total control over claims for benefits"—and because such an inference would be inconsistent with the plan language, which identifies *other* entities as plan administrators—all claims against UHG and UHIC should be dismissed.  *Bushell*, 2018 WL 1578167, at *8.

C.     **Plaintiffs Do Not State a Viable Claim Under Section 1132(a)(3).**

1.     **Plaintiffs' Section 1132(a)(3) Claims Seek a Remedy—Payment of Benefits—Already Available Through Their Section 1132(a)(1)(B) Claims.**

Section 1132(a)(3) allows claimants to obtain "appropriate equitable relief" for certain ERISA violations. 29 U.S.C. § 1132(a)(3)(B). As a "'catch-all' provision," Section 1132(a)(3) may be "invoked only when relief is not available under § [1132](a)(1)(B)." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006) (citing *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996)). Thus, where "adequate relief is available under [§ 1132(a)(1)(B),] there is no need . . . to also allow equitable relief under § [1132](a)(3)." *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006). Further, to qualify as a claim for equitable relief, both "(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought" must be "equitable in nature." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (alterations omitted).

For these reasons, the Supreme Court has made clear that a plaintiff may not use Section 1132(a)(3) to obtain a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," since Section 1132(a)(1)(B) "specifically provides" for such a remedy. *Varity*, 516 U.S. at 512. Accordingly, "courts in this Circuit have repeatedly rejected attempts to repackage claims for wrongful denial of benefits under Section [1132](a)(1) as claims for breaches of fiduciary duties under Section [1132](a)(3)." *Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017) (internal quotation marks omitted) (collecting cases); *see also, e.g.*, *Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, 2020 WL 5659467, at *4 (S.D.N.Y. Sept. 23, 2020) (concluding that because the complaint seeks "to enforce the terms of the [p]lans," the plaintiff's "§ [1132](a)(3) claim is duplicative of its § [1132](a)(1) claim and must be dismissed"); *Wegmann v. Young Adult Inst., Inc.*, 2016 WL

14

827780, at *6 (S.D.N.Y. Mar. 2, 2016) ("Plaintiff's claim under § [1132](a)(3) seeks wrongfully denied benefits 'due and owing' to her under the [p]lan, and accordingly duplicates her claim under § [1132](a)(1)(B). Her § [1132](a)(3) claim is therefore dismissed."). To hold otherwise by "reading into the statute additional causes of action" would upset the product of Congress's "long and careful study and compromise" in crafting ERISA's remedial scheme. *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 154 (2d Cir. 2014).

Plaintiffs' Section 1132(a)(3) claims are premised on the same allegations and same injury as their primary Section 1132(a)(1)(B) claim. Plaintiffs' claim of fiduciary breach rests on UHS's "decision not to apply FAIR Health Charge Data" to their claims, Compl. ¶ 136, which is indistinguishable from their contention that they were wrongfully denied benefits due to UHS's choice to use less expensive third-party data "rather than using FAIR Health Charge Data to make those determinations," *id.* ¶ 131. The only injury Plaintiffs allege in their entire complaint is the purported underpayment of benefits. *E.g.*, Compl. ¶¶ 132, 136, 141–42. Because the "gravamen" of Plaintiffs' ERISA claims is that UHS "failed to follow proper procedures in denying the [Plaintiffs'] claim for benefits, which resulted in an improper denial of benefits owed to the [Plaintiffs] under the terms of the Plan, adequate relief for these claims is plainly available under Section [1132](a)(1)(B)." *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011).

The supposedly "equitable" relief sought by Plaintiffs reinforces the impropriety of their Section 1132(a)(3) claims. Plaintiffs ask the Court to enjoin Defendants "from engaging in the misconduct alleged above," and for disgorgement, restitution, and/or "payment of an appropriate surcharge." Compl. Prayer for Relief. As discussed *infra*, Plaintiffs do not have Article III standing to seek prospective injunctive relief. As for the other remedies, those are little more than

15

equitable "repackaging" of their core claim for relief in this case:  a lump sum of money, which is "not available under §[1132](a)(3)."  *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).  For that reason, the use of an "equitable label" cannot transform claims that "are, in essence, legal ones for money damages" into viable 1132(a)(3) claims.  *Central States*, 771 F.3d at 154; *see also McElwaney v. Becker*, 394 F. Supp. 3d 342, 345 (W.D.N.Y. 2019) ("This claim is little more than a repackaging of plaintiff's claim for benefits, in the guise of a claim for equitable relief.  What plaintiff seeks is additional, increased benefits.").  Because Section 1132(a)(1)(B) provides Plaintiffs an adequate remedy for the underlying harm they claim in this case, their claims under Section 1132(a)(3) should be dismissed as duplicative.

> **2.      Plaintiffs Do Not Allege Facts Supporting Their Claim for Breach of Fiduciary Duty.**

As just outlined above, Plaintiffs' fiduciary breach claims are premised on the same conduct and seek the same relief as their benefits claim and should be dismissed on that basis.  To the extent Plaintiffs purport to advance a distinct basis for their claim of fiduciary breach—that UHS had an obligation separate and apart from the plans to always use FAIR Health Data to calculate Eligible Expenses and failed to do fulfill that obligation—they offer no credible or particularized facts in support of such a theory.

In Plaintiffs' view, the duty of loyalty ERISA fiduciaries owe to their beneficiaries required UHS to use only FAIR Health-based reimbursement rates in for out-of-network claims, which Plaintiffs concede were more expensive than other available rates.  Compl. ¶ 136.  Because using a lower reimbursement rate based on third-party data could entitle UHS to a "savings fee," Plaintiffs complain that the practice of sometimes (but not always) using that data necessarily

pitted UHS's interests against those of plan members.  This claim of "conflict" is not enough to state a claim for breach of the duty of loyalty for two reasons.

*First*, to establish a breach of the duty of loyalty, a plaintiff must show the claims administrator's actions were undertaken "*for the purpose* of providing benefits to themselves or someone else" at the expense of the plaintiff.  *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017).  In other words, it is not enough that an administrator's actions "simply have that incidental effect."  *Id.*  Here, the complained-of practices that supposedly give rise to a breach of fiduciary duty are (1) on occasion, UHS reimburses out-of-network services at lower rates than Plaintiffs would like, and (2) UHS may receive a "savings fee" from plan sponsors when it uses those rates to save plan assets.  Neither of these practices support an inference that UHS "acted for the purpose" of generating benefits for itself (as opposed to plan members more broadly).  In fact, the allegation that UHS processed only *some* claims using lower rates, *see* Compl. ¶¶ 35, 53, 55–56, 59, actually undermines any inference of fiduciary breach.  If UHS's interpretation of the "competitive fee" plan language (assuming applicable at all to the non-network services at issue in this litigation) and use of third party data to determine reimbursement rates were intended to maximize profits, UHS would be expected to use those lower rates wherever possible.  Yet, as Plaintiffs concede, that is not what happens.

*Second*, Plaintiffs' focus on reimbursement for their own out-of-network claims ignores the reality that UHS's efforts to protect plan assets by not overpaying for certain kinds of claims benefits the plans and other participants more broadly.  This is not a case where the administrator is charged with "overspend[ing]" plan assets. *Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater New York*, 583 F. Supp. 380, 388 (S.D.N.Y. 1984) (the fiduciary's "incentive should have been to save Security Plan money, not to overspend it"), *disavowed on other grounds by Nobile v.*

*Pension Comm. of Pension Plan for Emps. of New Rochelle Hosp.*, 611 F. Supp. 725, 727 (S.D.N.Y. 1985).  Quite the opposite.  By not reflexively paying more expensive rates to reimburse members who venture out-of-network for treatment, UHS is able to fulfill one of the "fundamental common-law duties" imposed on ERISA fiduciaries—"to preserve and maintain trust assets." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985); *McCabe v. Cap. Mercury Apparel*, 752 F. Supp. 2d 396, 410–11 (S.D.N.Y. 2010) ("[I]n order to promote ERISA's goal of protecting employee benefits, the statute explicitly charges fiduciaries with 'defraying reasonable expenses of administration' as part of the duty of loyalty." (quoting 29 U.S.C. § 1104(a)(1)(A)(ii))).  In short, there can be no plausible allegation that UHS breached its duty of loyalty to plan members simply because it does not solely use what Plaintiffs acknowledge are higher FAIR Health rates to pay claims from out-of-network providers.

Plaintiffs also complain that UHS's use of data from third-party vendors violated its fiduciary duty to adhere to the terms of the Plans.  Compl. ¶ 137.  This theory is also without merit. For one, this claim of fiduciary breach is duplicative of Plaintiffs' benefit claim under section 1132(a)(1)(B), as both are premised on what Plaintiffs allege was "an improper denial of benefits owed to [them] under the terms of the Plan[s]"—an injury for which adequate relief "is plainly available under Section [1132](a)(1)(B)." *Biomed Pharms.*, 775 F. Supp. 2d at 738; pp. 14–16, *supra*.  Further, nothing in the plans expressly requires UHS to use FAIR Health data, which is never referenced in Plaintiffs' plans, to calculate reimbursement for Plaintiffs' claims.  UHS cannot plausibly have breached the plan terms by failing to adhere to a plan provision that does not exist.  *See Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 755–56 (S.D.N.Y. 1997) (dismissing claim of violation of plan terms based on insurer's practice of requiring physician to

obtain pre-authorization for certain services where plan did not expressly prohibit practice); *see also Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir. 1995).

**D.**    **Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under Section 1132(a)(2) and 1109(a) on Behalf of Their Plans.**

Plaintiffs' third cause of action effectively restates their claim for fiduciary breach, but this time the alleged injury is not to Plaintiffs themselves, but rather to their plans.  Compl. ¶¶ 138–142.  As with their second cause of action (Count II), the basis for Count III hinges on the use of data from third-party vendors and the fact that UHS may receive a "savings fees" when those lower third-party rates are used.  *Id.* ¶ 141.  Plaintiffs also assert that these practices violate 29 U.S.C. § 1106(a)(1)(d) and (b)(1) as "party-in-interest" or "fiduciary self-dealing" transactions.  *Id.* ¶ 142. None of these theories has merit, either.

First, as described above, Plaintiffs have not plausibly alleged any self-dealing or conflict of interest between UHS and plan members.  *See* pp. 16–19, *supra*.  Far from it—by using lower reimbursement rates based on data from third-party vendors, UHS preserved assets for the plan, to the benefit of all members.   In so acting, UHS's decisions with respect to its choice of reimbursement methodology is entitled to deference.  *Conkright v. Frommert*, 559 U.S. 506, 517 (2010).   Longstanding ERISA jurisprudence makes clear that such deference is essential so fiduciaries can carry out their "duty to all beneficiaries to preserve limited plan assets."  *Id.* at 520; *see also Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*, 7 F. Supp. 2d 351, 358 (S.D.N.Y. 1998) (recognizing fiduciaries' "common law-derived ERISA obligation to preserve and maintain trust assets").  Plaintiffs' claims that UHS violated Sections 1132(a)(2) and 1109(a) by using data from third-party vendors are equally misplaced, for the reasons detailed above.  *See* pp. 16–19, *supra*.

Plaintiffs' assertion that UHS engaged in self-interested transactions in violation of Sections 1106(a)(1)(D) and (b)(1) through its receipt of a "savings fee" (Compl. ¶ 142) also fails to allege a plausible claim.  Section 1106 was designed to protect against arrangements "that present a special risk of plan *underfunding*."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (emphasis added).  Where, as here, the conduct at issue resulted in preserving plan assets and increasing savings to the plans, Section 1136 simply is of no relevance.[2]

The savings to the plans generated from the challenged practices also doom Plaintiffs' 1132(a)(2) claims on a more fundamental level.  Section 1132(a)(2) (vis-à-vis Section 1109) "makes ERISA fiduciaries liable for a fiduciary breach resulting in 'any *losses* to the plan.'"  *Am. Med. Ass'n v. United Healthcare Corp.*, 2001 WL 863561, at *6 (S.D.N.Y. July 31, 2001) (quoting 29 U.S.C. § 1109(a)(2)) (emphasis added).  For that reason, a plaintiff who "has not alleged any 'losses to the plan' as a result of" the alleged breach, but instead just "seeks monetary relief for himself," fails to state an (a)(2) claim.  *Conroy v. High Peaks Dental Pro. P'ship*, 2019 WL 3997118, at *5 n.6 (N.D.N.Y. Aug. 23, 2019) (noting that, at best, such a claim would be covered by section 1132(a)(1)).

## E.      Plaintiffs Fail to State a Claim Based On Co-Fiduciary Liability

Plaintiffs' last cause of action seeks to impose co-fiduciary liability on all four Defendants pursuant to Section 1105(a).  But, as detailed above, not only are UHG and UHIC improper defendants, *see supra* at 12–14, Plaintiffs' underlying claims of fiduciary breach fail for multiple, independent reasons, *see supra* at 16–20.  As a result, their claim of co-fiduciary liability

---

[2]  In addition to being an entirely appropriate means of preserving plan assets, the Shared Savings Program was fully disclosed to plan members—a fact that Plaintiffs do not dispute.  The plans describe the Shared Savings Program in detail, including that it may result in the out-of-network provider "bill[ing] you for the difference between the billed amount and the rate determined by [UHS]."  Stalinski Decl., Ex. 1 at 10; *see id.*, Ex. 2 at 13. *Cf. Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc*, 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Fee-sharing arrangements or kickbacks do not in-and-of themselves create a violation [of ERISA's prohibited transactions rules], but their non-disclosure does.").

necessarily fails too.  *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *2 (S.D.N.Y. Aug. 31, 2009), *aff'd* 662 F.3d 128 (2d Cir. 2011).

F.     **Plaintiffs Do Not Have Standing to Pursue Prospective Relief.**

To have Article III standing to seek prospective relief, a plaintiff must face a threat of injury that is "actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Past injury, in and of itself, is not enough to establish that the plaintiff is likely to suffer future injury.  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).  Nor is it sufficient for a plaintiff to point to any sort of "official policy" to confer standing—even if the plaintiff was previously subjected to that very policy as the basis of a past injury.  *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *15–16 (S.D.N.Y. Mar. 22, 2018) (citing *Shain*, 356 F.3d at 216).  Rather, "a plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent."  *Id.* at *16.

ERISA cases are no different.  *See Thole v. U.S. Bank*, 140 S. Ct. 1615, 1622 (2020).  As a result, district courts across the country dismiss claims for forward-looking injunctive relief where beneficiaries of ERISA plans allege only injury from past denial of benefits.  In *Meidl v. Aetna*, 2017 WL 1831916 (D. Conn. May 4, 2017), for example, the plaintiff challenged his insurer's denial of coverage for a certain therapy as a treatment for major depressive disorder, under his plan's coverage exclusion for "experimental, investigational, or unproven" treatments. *Id.* at *1.  Among other forms of relief, the plaintiff sought a permanent injunction barring the insurer from classifying the therapy as experimental or investigational.  *Id.* at *4.  Relying on *Shain* and other binding Second Circuit and Supreme Court precedent, the district court ruled that the plaintiff lacked standing to pursue an injunction because, even though he alleged he continued to suffer from the underlying health condition for which he originally sought treatment, he failed to

21

establish that his insurer would deny coverage for the same therapy in the future.  *Id.* at \*5.  As such, any future harm based on a denial of coverage was "too speculative and conjectural to supply a predicate for *prospective* injunctive relief."  *Id.* at \*4 (quoting *Shain*, 356 F.3d at 216).

Similarly, in *Delgado v. ILWU-PMA Welfare Plan*, 2018 WL 8014336 (C.D. Cal. Nov. 20, 2018), the plaintiffs' request to enjoin the administrator from using allegedly "unlawful practices" in administering future benefits was deemed too "hypothetical or speculative."  *Id.* at \*3.  Though the plaintiffs alleged that they would seek medical services from providers in the future, the court reasoned that "[a]ny future denial of a claim by the [p]lan is by definition hypothetical, as those claims have not—indeed, cannot—be filed until the medical services are rendered."  *Id.*; *see also, e.g.*, *Bellanger v. Health Plan of Nevada, Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (plaintiff could not show immediate irreparable harm based on "unlikely" series of events that he would "submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law").

Here, Plaintiffs seek *forward-looking* relief in the form of a permanent injunction.  Compl. Prayer for Relief.  Yet the only injury they allege is premised on UHS's reimbursement of *past* claims from several years ago.  *See* Compl. ¶¶ 76–90 (challenging reimbursement of claims stemming from Popovchak's December 29, 2020 surgery); *id.* ¶¶ 91–119 (same as to Gonzalez's May 19, 2021 surgery)  As in *Meidl*, Plaintiffs do not claim they intend to return to these providers for future services.  And, as a result, they do not (and cannot) assert that UHS, in processing these hypothetical future claims, would interpret the "competitive fee" term in their plans contrary to Plaintiffs' proffered reading.  In fact, the complaint details instances in which UHS's interpretation of the term comported with the meaning that Plaintiffs advance here.  *See* Compl. ¶¶ 35, 53, 55–56, 59.  Thus, even if Plaintiffs were to allege that they plan to seek future treatments from the

providers at issue—an assertion that would be "no more than speculation"—they still could not establish any "real and immediate" risk of future harm.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 108 (1983).  Their claim for prospective injunctive relief should accordingly be dismissed for lack of Article III standing.

## G.    The Court Should Strike Plaintiffs' Jury Trial Demand.

In their complaint, Plaintiffs request a jury trial "on all counts so triable."  Compl., Jury Trial Demand.  Second Circuit precedent is clear, however, that "cases involving ERISA benefits are inherently equitable in nature, not contractual," and as a result, "no right to jury trial attaches to such claims."  *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998).  Because this entire action is premised the alleged wrongful denial of benefits and raises causes of action arising exclusively under ERISA, the Court should strike Plaintiffs' demand for a jury trial.

## V.    CONCLUSION

Defendants respectfully request that the Court grant their Motion and dismiss the following claims: (1) Popovchak's claim under Section 1132(a)(1)(B), on the ground that it is untimely; (2) Gonzalez's claim for benefits for services provided by Dr. Frelinghuysen under Section 1132(a)(1)(B), on the ground that he failed to exhaust administrative remedies; (3) all claims under ERISA Section 1132(a)(3) in Count II, for failure to state a claim; (4) all claims under ERISA Section 1132(a)(2) in Count III, for failure to state a claim; (5) all claims under ERISA Section 1105(a) in Count IV, for failure to state a claim; (6) all claims against UHG and UHIC; and (7) Plaintiffs' claim for prospective injunctive relief.  Defendants also respectfully request that the Court strike Plaintiffs' demand for a jury trial.

Dated:  March 24, 2023

By: */s/ James L. Hallowell*

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice pending*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*