UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALEXANDRA POPOVCHAK, OSCAR
GONZALEZ, and MELANIE WEBB, individually
and on behalf of all others similarly situated,

                 Plaintiffs,

    -against-                            Case No. 1:22-cv-10756-VEC

UNITEDHEALTH GROUP INCORPORATED,
UNITED HEALTHCARE INSURANCE
COMPANY, UNITED HEALTHCARE
SERVICES, INC., and UNITED HEALTHCARE
SERVICE LLC

                 Defendants.
------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

MEMORANDUM OF LAW ........................................................................................................... 1

I.    INTRODUCTION ................................................................................................................. 1

II.    BACKGROUND ................................................................................................................... 3

III.    LEGAL STANDARD ........................................................................................................... 7

IV.    ARGUMENT ........................................................................................................................ 9

    A.    Plaintiffs' Claims Are Procedurally Defective. ........................................................ 9

    B.    Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC. .................... 12

    C.    Plaintiffs Do Not State a Viable Claim Under Section 1132(a)(3). .......................... 14

    D.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under Section 1132(a)(2) and 1109(a) on Behalf of Their Plans. .................................................... 20

    E.    Plaintiffs Fail to State a Claim Based On Co-Fiduciary Liability ............................ 22

    F.    Plaintiffs Do Not Have Standing to Pursue Prospective Relief. ............................... 23

    G.    The Court Should Strike Plaintiffs' Jury Trial Demand. .......................................... 25

V.    CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alquahwagi v. Shelby Enterprises, Inc.*,
2016 WL 4771329 (E.D. Mich. Sept. 14, 2016).................................................................19

*Am. Med. Ass'n v. United Healthcare Corp.*,
2001 WL 863561 (S.D.N.Y. July 31, 2001) .....................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................7

*Bellanger v. Health Plan of Nevada, Inc.*,
814 F. Supp. 914 (D. Nev. 1992)......................................................................................24

*Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
775 F. Supp. 2d 730 (S.D.N.Y. 2011)..........................................................................16, 19

*Bushell v. UnitedHealth Grp. Inc.*,
2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018) .........................................................12, 13, 14

*Cavelli v. New York City Dist. Council of Carpenters*,
2011 WL 9155793 (E.D.N.Y. Mar. 7, 2011) .....................................................................12

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
771 F.3d 150 (2d Cir. 2014)...........................................................................................15, 16

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985)...........................................................................................................18

*In re Citigroup ERISA Litig.*,
2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *aff'd* 662 F.3d 128 (2d Cir. 2011) ..............23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).............................................................................................................25

*Conkright v. Frommert*,
559 U.S. 506 (2010)...........................................................................................................21

*Conroy v. High Peaks Dental Pro. P'ship*,
2019 WL 3997118 (N.D.N.Y. Aug. 23, 2019) ....................................................................22

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*,
    790 F.3d 411 (2d Cir. 2015)............................................................................8

*Cunningham v. Cornell Univ.*,
    2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017).........................................17

*Cunningham v. Cornell Univ.*,
    2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019).........................................20

*Delgado v. ILWU-PMA Welfare Plan*,
    2018 WL 8014336 (C.D. Cal. Nov. 20, 2018)...................................23, 24

*Doe v. United Health Grp. Inc.*,
    2018 WL 3998022 (E.D.N.Y. Aug. 20, 2018)..........................................13

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011)...........................................................................9

*Fountain v. Karim*,
    838 F.3d 129 (2d Cir. 2016).........................................................................8

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006).......................................................................15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)...................................................................................16

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001).........................................................................8

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    496 F. App'x 129 (2d Cir. 2012) ..............................................................10

*Heimeshoff v. Hartford Life & Accident Ins. Co. et al.*,
    571 U.S. 99 (2013)....................................................................................10

*Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*,
    2017 WL 1658825 (E.D. Ky. May 1, 2017) ............................................10

*Holly v. Cunningham*,
    2016 WL 8711593 (S.D.N.Y. June 17, 2016) ...........................................8

*Landry v. Metro. Life Ins. Co.*,
    2021 WL 848455 (S.D.N.Y. Mar. 5, 2021) .............................................11

*Laurent v. PricewaterhouseCoopers LLP*,
    945 F.3d 739 (2d Cir. 2019).......................................................................16

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..........................................................................................21

*Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*,
    7 F. Supp. 2d 351 (S.D.N.Y. 1998) ...................................................................21

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
    2016 WL 2939164 (S.D.N.Y. May 19, 2016) .......................................................9

*McCabe v. Cap. Mercury Apparel*,
    752 F. Supp. 2d 396 (S.D.N.Y. 2010)................................................................18

*McElwaney v. Becker*,
    394 F. Supp. 3d 342 (W.D.N.Y. 2019)...............................................................16

*Meidl v. Aetna*,
    2017 WL 1831916 (D. Conn. May 4, 2017)...................................................23, 24

*Merryman v. Citigroup, Inc.*,
    2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) ....................................................23

*Michael E. Jones, M.D., P.C. v. Aetna, Inc.*,
    2020 WL 5659467 (S.D.N.Y. Sept. 23, 2020)....................................................15

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016)...........................................................................................15

*Nerney v. Valente & Sons Repair Shop*,
    66 F.3d 25 (2d Cir. 1995)...................................................................................19

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2015)...............................................................................12

*Nobile v. Pension Comm. of Pension Plan for Emps. of New Rochelle Hosp.*,
    611 F. Supp. 725 (S.D.N.Y. 1985) ....................................................................18

*Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*,
    2021 WL 665045 (S.D.N.Y. Feb. 19, 2021)..................................................12, 13

*Prabhakar v. Life Ins. Co. of N. Am.*,
    996 F. Supp. 2d 124 (E.D.N.Y. 2013) ...............................................................11

*Schnall v. Marine Midland Bank*,
    225 F.3d 263 (2d Cir. 2000).................................................................................8

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)...........................................................................23, 24

*Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater New York*,
    583 F. Supp. 380 (S.D.N.Y. 1984) ........................................................................18

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc*,
    27 F. Supp. 3d 371 (S.D.N.Y. 2014)......................................................................22

*Smart v. Goord*,
    441 F. Supp. 2d 631 (S.D.N.Y. 2006)......................................................................9

*Soares v. United of Omaha Life Ins. Co.*,
    157 F. Supp. 3d 164 (D. Conn. 2016) ....................................................................11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)...............................................................................................23

*Thole v. U.S. Bank*,
    140 S. Ct. 1615 (2020) ..........................................................................................23

*Tischmann v. ITT/Sheraton Corp.*,
    145 F.3d 561 (2d Cir. 1998)...................................................................................25

*Varity Corp v. Howe*,
    516 U.S. 489 (1996).........................................................................................14, 15

*Wegmann v. Young Adult Inst., Inc.*,
    2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) ...........................................................15

*Weiss v. CIGNA Healthcare, Inc.*,
    972 F. Supp. 748 (S.D.N.Y. 1997) ........................................................................19

*Wilkins v. Mason Tenders Dist. Council Pension Fund*,
    445 F.3d 572 (2d Cir. 2006)...................................................................................14

*Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*,
    2017 WL 2462675 (S.D.N.Y. June 7, 2017) .........................................................15

**STATUTES**

29 U.S.C. § 1104(a)(1)(A)(ii) ............................................................................2, 18

29 U.S.C. § 1105(a) ................................................................................................7

29 U.S.C. § 1109(a) ...........................................................................................7, 22

29 U.S.C. § 1132(a)(1)(B) ......................................................................................7

29 U.S.C. § 1132(a)(2)............................................................................................7

29 U.S.C. § 1132(a)(3)........................................................................................7, 14

## MEMORANDUM OF LAW

Defendants UnitedHealth Group Incorporated ("UHG"), UnitedHealthcare Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS Inc."), and United Healthcare Service LLC ("UHS LLC," and, together with UHS Inc., "UHS") move the Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiff Alexandra Popovchak's, Plaintiff Oscar Gonzalez's, and Plaintiff Melanie Webb's claims under the Employee Retirement Income Security Act ("ERISA").   Specifically, Defendants respectfully request that the Court dismiss the following claims: (1) Popovchak's claim under 29 U.S.C. § 1132(a)(1)(B), in Count I; (2) Gonzalez's claim for benefits for services provided by Dr. Frelinghuysen under 29 U.S.C. § 1132(a)(1)(B), in Count I; (3) all claims under 29 U.S.C. § 1132(a)(3) in Count II; (4) all claims under 29 U.S.C. § 1132(a)(3) in Count III; (5) all claims under 29 U.S.C. § 1105(a) in Count IV; (6) all claims against UHG and UHIC; and (7) Plaintiffs' claim for prospective injunctive relief for lack of Article III standing under Federal Rule 12(b)(1).   Defendants' motion is based upon the Memorandum of Law set forth below, as well as the records, pleadings, and papers on file in this action, including the Declaration of Jane Stalinski and supporting exhibits, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

## I.    INTRODUCTION

Plaintiffs Alexandra Popovchak, Oscar Gonzalez, and Melanie Webb are members of ERISA-governed health plans administered by UHS LLC and UHS Inc.   All three Plaintiffs received services from health care providers outside of their plans' approved provider networks. Though the written terms of their respective plans caution that seeking out-of-network care may result in lower benefits levels and higher out-of-pocket costs, Plaintiffs nevertheless contend that UHS was obligated to reimburse their claims at a higher rate (i.e., to pay more for those claims than allowed under their plan).   They further contend that the reimbursement rates UHS used

unfairly exposed them to the *possibility* that they would be "balance billed" for the difference between the amount their provider charged for services and the amount paid by UHS.

Plaintiffs take issue with the fact that UHS reimbursed their claims by using data from third-party vendors (which Plaintiffs call "repricers") who use paid-claims data in markets across the country to arrive at fair, market-driven reimbursement rates. Plaintiffs contend that UHS should have instead used data collected by an organization called FAIR Health—even though that organization is referenced nowhere in Plaintiffs' plans. Although using data from third-party vendors to calculate benefits preserves assets for their plans and members at large, Plaintiffs maintain that UHS's decision to do so violated the terms of their plans and UHS's fiduciary duties.

Even after amending their complaint, Plaintiffs continue to misunderstand both the terms of their plans and, more fundamentally, the fiduciary duties of plan administrators like UHS. Though Plaintiffs have added further rhetoric around the claimed underpayment of benefits— including highlighting that their out-of-network providers did not agree to accept these third-party rates for their services, the fact remains that ERISA obligates fiduciaries to preserve plan assets for *all* members and beneficiaries, not just those, like Plaintiffs, who obtain out-of-network care. *See* 29 U.S.C. § 1104(a)(1)(A)(ii). And ERISA certainly does not command fiduciaries to elevate the interests of out-of-network providers over plan members.

Plaintiffs bring four causes of action on behalf of themselves and a putative class of beneficiaries of UHS-administered plans for whom UHS calculated reimbursement amounts without reference to FAIR Health data, notwithstanding allegedly contrary language in the plans. All four causes of action are premised on the same alleged injury—the purported underpayment of benefits. Plaintiffs' first cause of action, brought under Section 1132(a)(1)(B), is deficient in several respects, insofar as Popovchak's claim is untimely, and Gonzalez failed to exhaust all

available administrative remedies with regard to one of his benefits claims. Plaintiffs' second, third, and fourth causes of action allege that UHS breached its fiduciary duties to the plans and their members, and seek an injunction and "other appropriate equitable relief." But these claims are premised on the same alleged injury and seek the same relief (the recovery of benefits allegedly due) as their first cause of action, meaning Plaintiffs have an adequate remedy under Section 1132(a)(1)(B) and may not bring their duplicative claims under Section 1132(a)(2) and (3). Moreover, Plaintiffs' claims against two of the defendants—UHG and UHIC—have no basis at all, as neither of those entities is a proper defendant for Plaintiffs' claims under binding Second Circuit precedent. Finally, Plaintiffs lack Article III standing to seek prospective relief, as their claims are based only upon past denials of benefits and their complaint contains no colorable allegations suggesting a risk of future injury.

All of Plaintiffs' claims discussed above should be dismissed with prejudice, so that the remaining claims—the portions of Count I asserting a claim for benefits under Section 1132(a)(1)(B) of ERISA against UHS Inc. by Gonzalez for services from Dr. McCance, and by Webb, for services from American Surgical Arts PC—can be litigated based on an appropriate evidentiary record.[1] The Court should also strike Plaintiffs' demand for a jury trial, because no such right attaches to a claim for benefits under ERISA.

## II.    BACKGROUND

Plaintiff Popovchak is a member of the Morgan Stanley Health Benefits and Insurance Plan (the "Morgan Stanley Plan")—a self-funded, employer-sponsored health plan administered by UHS LLC. FAC ¶¶ 6. Plaintiffs Gonzalez and Webb are members of the Fresenius Medical Care

---

[1] Although Defendants are not moving to dismiss Gonzalez's claim for benefits for services from Dr. McCance or Webb's claim for benefits from American Surgical Arts PC through this motion, Defendants reserve all rights and defenses, and will demonstrate at an appropriate point that both Webb's and Gonzalez's benefits were properly paid for those respective claim under the terms of their Plans.

Premium Medical Plan (the "Fresenius Plan")—a self-funded, employer-sponsored health plan administered by UHS Inc.  *Id.* ¶¶ 7, 8.  Both plans are governed by ERISA.  *Id.* ¶ 20.

Plaintiffs allege that they received medical services from health care providers who are outside UHS's network—meaning that the providers do not have direct contracts with UHS, and thus have not negotiated a rate agreement directly with UHS.  FAC ¶¶ 36–37, 91, 108, 140. Popovchak alleges she received services from Specialty Physicians of New Jersey, *id.* ¶ 91, Gonzalez alleges he received services from Dr. Sean McCance and Dr. Peter Frelinghuysen, *id.* ¶ 108, and Webb alleges she received services from American Surgical Arts PC, *id.* ¶ 140.

Plaintiffs' plans expressly advise members that they may be exposed to greater out-of-pocket costs when they receive care from a non-network provider and may be responsible for the difference between the charges billed by the provider and the amounts reimbursed by UHS. Specifically, the Morgan Stanley Plan advises members they "will be responsible for any amount billed by the out-of-network provider that is greater than the amount [UHS] determines to be an Eligible Expense."  Stalinski Decl., Ex. 1 at 33.  And the Fresenius Plan explains that members are "responsible for paying . . . any difference between the amount the provider bills you and the amount [UHS] will pay for Eligible Expenses."  *Id.*, Ex. 2 at 10.  The Fresenius Plan further explains that the "amount in excess of the Eligible Expense could be significant."  *Id.*, Ex. 2 at 8; *see also id.*, Ex. 1 at 32 (Morgan Stanley Plan similarly explaining that plan members "may receive significant cost savings when using" in-network providers).

Plaintiffs' plans have different reimbursement methodologies for emergency and non-emergency non-network services, and further vest UHS with discretion to decide how "Eligible Expenses"—*i.e.*, expenses eligible for coverage—will be determined for non-network services:

**Morgan Stanley Plan (Plaintiff Popovchak)**

When Covered Health Services are received from an out-of-network provider as a result of an Emergency or as arranged by UHC, Eligible Expenses are an amount negotiated by UHC or an amount permitted by law.

[…]

For out-of-network services, Eligible Expenses are covered as follows:

- When Covered Health Services are received from an out-of-network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the out-of-network provider and either UHC or one of UHC's vendors, affiliates or subcontractors, at UHC's discretion.

- If rates have not been negotiated, then one of the following applies based on claim type:

  o For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

  o When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.

  o When a rate is not published by CMS for the service or data resources of competitive fees in a geographic area are not available, UHC uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale or similar methodology. The relative value scale is usually based on the difficulty, time, work, risk and resources of the service[.]

Stalinski Decl., Ex. 1 at 34.

**Fresenius Plan (Plaintiffs Gonzalez and Webb)**

When Covered Health Services are received from a non-Network provider as a result of an Emergency or as arranged by UnitedHealthcare, Eligible Expenses are an amount negotiated by UnitedHealthcare or an amount permitted by law.

[…]

For Non-Network Benefits, Eligible Expenses are based on either of the following:

- When Covered Health Services are received from a non-Network provider,

Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

- If rates have not been negotiated, then one of the following amounts

  o For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

  o When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.

  o When a rate is not published by CMS for the service, UnitedHealthcare uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale. The relative value scale is usually based on the difficulty, time, work, risk and resources of the service. If the relative value scale currently in use becomes no longer available, UnitedHealthcare will use a comparable scale(s). UnitedHealthcare and OptumInsight are related companies through common ownership by UnitedHealth Group. Refer to UnitedHealthcare's website at www.myuhc.com for information regarding the vendor that provides the applicable gap fill relative value scale information.

IMPORTANT NOTICE: Non-Network providers may bill you for any difference between the provider's billed charges and the Eligible Expense described here.

Stalinski Decl., Ex. 2 at 11.

The plans provide UHS discretion to choose which methodologies or "data resources" it will use to pay non-network providers like those used by Plaintiffs. FAC ¶¶ 39–40. To that end, both plans confirm that UHS has "the discretion and authority to decide . . . how the Eligible Expenses will be determined and otherwise covered under the Plan." Stalinski Decl., Ex. 1 at 33; *id.*, Ex. 2 at 10. And both plans state that the amount paid to non-network providers is the "amount [UHS] determines that [UHS] will pay for benefits." *Id.*, Ex. 1 at 33; *id.*, Ex. 2 at 10. The plans also expressly provide UHS the flexibility to negotiate reimbursement rates or otherwise reimburse

any amount allowable under the law for non-network services received for an emergency, recognizing that providers may and often do charge excessive rates for such services.

Notwithstanding the difference between emergent and non-emergent methodologies supported by the plans, as well as the broad discretion conferred to UHS by the plans, Plaintiffs assert UHS was obligated to use FAIR Health rates *exclusively*, even though "FAIR Health" is not mentioned once in the terms of their plans. *See, e.g.*, FAC ¶ 73 (alleging FAIR Health is "the only reasonable" data resource for competitive fees used to determine Eligible Expenses under the plans). Because UHS used data resources other than FAIR Health to determine the "competitive fee" it would pay for certain claims, Plaintiffs contend UHS violated the terms of their plans. *E.g. id.* ¶ 191. Notably, Plaintiffs do not allege they have incurred any out-of-pocket expenses with respect to these claims, nor do they allege their providers have actually billed them for the difference between the amount UHS paid and the amount billed.

Based on these allegations, Plaintiffs bring four causes of action against all Defendants: (1) a claim for underpaid benefits (29 U.S.C. § 1132(a)(1)(B)); (2) a claim for breaches of fiduciary duty as to the Plaintiffs (29 U.S.C. § 1132(a)(3)); (3) a claim for breaches of fiduciary duty as to the plans (29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1109(a)); and (4) a claim for "co-fiduciary liability" under 29 U.S.C. §§ 1132(a)(1)(B), (a)(2), (a)(3) and 29 U.S.C. § 1105(a). FAC ¶¶ 173–97.

### III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a complaint must contain "well-pleaded factual allegations" that provide "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678–79.

"A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction if . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). Under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving, by a preponderance of the evidence, that such jurisdiction exists. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

It is a "well-established principle" in this Circuit that, in ruling on a motion to dismiss, a court is not limited to "only the assertions made within the four corners of the complaint itself," and may properly consider documents attached to the pleadings or incorporated by reference. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Thus, where a complaint makes "express mention" of a document, a defendant may introduce that document in support of its motion to dismiss. *Holly v. Cunningham*, 2016 WL 8711593, at *1 n.1 (S.D.N.Y. June 17, 2016). And even when documents are not attached to or expressly referenced in the complaint, a court may nevertheless consult such documents where they are "integral" to the plaintiff's claims and the plaintiff has notice of them. *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000).

Here, in evaluating Defendants' motion to dismiss, the Court should take judicial notice of Exhibits 1 through 3 of the Stalinski Declaration, which are excerpts from the summary plan description for the 2020 Morgan Stanley Plan for Plaintiff Popovchak (Ex. 1); excerpts from the summary plan description for the 2021 Fresenius Plan for Plaintiffs Gonzalez and Webb (Ex. 2); and the November 7, 2022 letter issued by United Healthcare Services, Inc. to Susan Urso, regarding a request submitted by Ms. Urso on Plaintiff Gonzalez's behalf (Ex. 3).

The complaint refers and relies at length on the Morgan Stanley Plan and the Fresenius Plan. *See, e.g.*, FAC ¶¶ 26, 39–42, 65. These "express mentions" make judicial notice of the plan documents proper. *Holly*, 2016 WL 8711593, at *1 n.1; *see Gregory*, 243 F.3d at 691. Indeed,

because ERISA claims so often "stand[] or "fall[]" upon the terms of plan documents (just as here), "[c]ourts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016); *see also*, *e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 100–01 (2d Cir. 2011).

The Court may also take judicial notice of the November 7, 2022 letter offered as evidence of Gonzalez's failure to exhaust his administrative remedies.  Where exhaustion is a prerequisite to bringing suit, the issue is "an integral part" of the plaintiff's claim; in other words, the plaintiff "necessarily refers to and relies on documents exhibiting proof of exhaustion."  *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006).  Courts are therefore entitled to look to evidence beyond the complaint in determining whether a plaintiff exhausted administrative remedies.  *Id.*

## IV.    ARGUMENT

### A.    <u>Plaintiffs' Claims Are Procedurally Defective.</u>

To bring a benefits claim under ERISA, Plaintiffs' plans require members to (i) exhaust all available administrative remedies, and (ii) file their claims within the prescribed time limits.  By their own admissions in their complaint, Popovchak and Gonzalez (with respect to his claim based on services received from Dr. Frelinghuysen) failed to satisfy these requirements.  Their claims are therefore procedurally defective and should be dismissed.

***Popovchak.***  The Morgan Stanley Plan provides that after members exhaust UHS LLC's administrative processes, they have "the right to file a lawsuit under ERISA, if it is within the earliest of:

- Six months following the date [their] appeal is denied,
- Three years following the date the services [they] are appealing are performed, or
- The end of any other applicable statutory limitation period."

Stalinski Decl., Ex. 1 at 175.  After Popovchak's provider received a Provider Remittance Advice ("PRA") on April 9, 2021 explaining how her claim was processed, her provider filed an administrative appeal on her behalf on October 13, 2021, arguing that the determination of Eligible Expenses for the claim was inconsistent with the terms of her plan.  FAC ¶¶ 94, 99.  The appeal was denied on December 4, 2021, and a second-level administrative appeal was filed on March 14, 2022.  FAC ¶¶ 101, 104.  The second-level appeal was denied on March 28, 2022.  *Id.* ¶ 105.  But her complaint was not filed until December 21, 2022—almost *nine months* after Popovchak's final internal appeal was denied, and well beyond the six-month deadline provided by the Plan.

The Supreme Court has enforced contractual limitations provisions that set forth "reasonable periods" within which members of ERISA-governed benefits plans may bring a civil action under their plan.  *Heimeshoff v. Hartford Life & Accident Ins. Co. et al.*, 571 U.S. 99, 106–07 (2013).  And six-month filing periods, like that allowed by the Morgan Stanley Plan, have been routinely upheld by federal courts as "reasonable."  *Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*, 2017 WL 1658825, at *3 (E.D. Ky. May 1, 2017) (collecting cases).

Popovchak nevertheless complains that "[n]one of United's letters to [her] notified her that her plan imposed a truncated six-month limitations period for her to sue for benefits due."  FAC ¶ 107.  But she does not contend, nor could she, that she did not have a copy of the plan documents that contained the limitations period.  In fact, her appeals were premised on what she claims to be violations of the terms of her plan.  *Id.* ¶¶ 99, 104.  Any equitable tolling of the plan's limitations period is therefore unavailable to her.  *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 496 F. App'x 129, 130–31 (2d Cir. 2012) (summary order) (declining to address whether denial of benefits letter needed to disclose limitations period where "Appellant's counsel conceded in the district court and at oral argument that he had received a copy of the plan containing the

unambiguous limitations provision long before the three-year period for Appellant to bring the claim had expired"); *see also Landry v. Metro. Life Ins. Co.*, 2021 WL 848455, at *9 (S.D.N.Y. Mar. 5, 2021); *Soares v. United of Omaha Life Ins. Co.*, 157 F. Supp. 3d 164, 171 (D. Conn. 2016); *Prabhakar v. Life Ins. Co. of N. Am.*, 996 F. Supp. 2d 124, 140 (E.D.N.Y. 2013).

Because Popovchak filed this action more than six months after her second-level appeal was denied, her claim for benefits is untimely and should be dismissed.

*Gonzalez (Frelinghuysen Claim)*.   The Fresenius Plan requires members to avail themselves of UHS Inc.'s internal review processes before they may file suit in court.  Stalinski Decl., Ex. 2 at 96 (a member "cannot bring any legal action" against UHS until "all required reviews of [a member's] claim have been completed").  Gonzalez generally alleges that first- and second-level appeals were filed to challenge the processing of his claims.  FAC ¶¶ 118, 122, 130, 134.  But with respect to his "Frelinghuysen Claim," Gonzalez notes that he received a "*new* [explanation of benefits ("EOB")] for Dr. Frelinghuysen's surgical services" on September 23, 2022.  *Id.* ¶ 136 (emphasis added).  The new EOB adjusted Gonzalez's co-insurance obligation, issuing him another $106.34 in benefits.  *Id.*  Dr. Frelinghuysen, through counsel, submitted an administrative appeal challenging the benefits determination in the new EOB, but the appeal was not processed as it was missing a Designated Authorized Representative form (used to ensure that the members have granted authorization to individuals purporting to file claims on their behalf).  *Id.* ¶ 138.  Neither Dr. Frelinghuysen or his counsel is alleged to have taken further action after receiving notice of the deficiency.  And Gonzalez offers no explanation as to why this failure to conclude the appeals process should be excused.  Instead, he simply claims, without reference to any authority, that UHS's processing of his appeals as to the *earlier* EOB sufficiently exhausted

his claim.  But nowhere in those earlier communications did UHS indicate that Gonzalez (or his provider) had exhausted all available internal remedies.

Having failed to exhaust his administrative remedies as to the Frelinghuysen Claim, or to plead any basis why such exhaustion would be futile, *see* Stalinski Decl., Ex. 3, the plain terms of the Fresenius Plan bar Gonzalez's attempt to recoup benefits for that claim through this action.

**B.     Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC.**

The only proper defendants in an action to enforce the terms of an ERISA plan are "(1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits."  *Bushell v. UnitedHealth Grp. Inc.*, 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (citing *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 133 (2d Cir. 2015)).  "[C]onclusory allegation[s]" regarding a potential defendant's involvement in the claims process "do[] not suffice" to establish liability.  *Id.*; *see also Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, 2021 WL 665045, at *9 (S.D.N.Y. Feb. 19, 2021) (dismissing claims against a named defendant where "the plaintiff has failed to allege sufficient facts to show that [the named entity] is a proper defendant in this case").  These limitations help ensure that claims are brought against only those entities "capable of providing direct relief" for the plaintiff's claims.  *New York State Psychiatric Ass'n*, 798 F.3d at 132.

Plaintiffs assert all their claims, including their claims for benefits, against "United," *see* FAC ¶¶ 173–97, a term they define to encompass four distinct entities:  UHG, UHIC, UHS Inc., and UHS LLC, *see id.* ¶ 15.  But such group pleading is no substitute for proper allegations against *specific* defendants, *see Cavelli v. New York City Dist. Council of Carpenters*, 2011 WL 9155793, at *12 (E.D.N.Y. Mar. 7, 2011), and here, Plaintiffs do not allege sufficient facts to support their claims against UHG or UHIC.

For UHG, all the complaint alleges is that UHG is the parent company of the other

Defendants, *see* FAC ¶ 9, and that UHG's "subsidiaries" act as "Claims Administrator for each of the Plaintiffs plans," *id.* ¶ 23.   But "[t]here is no precedent for the proposition that subsection (a)(1)(B) permits beneficiaries of a plan to sue the parent company of a proper defendant." *Bushell*, 2018 WL 1578167, at *8.   In fact, in *Bushell*, the court dismissed claims against this same defendant (UHG) premised on the same deficient allegations. *See id.* at *9; *see also Doe v. United Health Grp. Inc.*, 2018 WL 3998022, at *4 (E.D.N.Y. Aug. 20, 2018) (dismissing claims against UHG and UHIC because they were "not proper defendants for the plaintiff's ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3)").   The result should be the same here.

Plaintiffs' claims against UHIC fare no better.   The complaint contains only two specific allegations regarding UHIC.   *First*, the complaint alleges that UHIC's address is listed in one section of Popovchak's (but not Gonzalez's or Webb's) plan.   FAC ¶ 29.   Courts have consistently rejected attempts to hold a defendant liable based on such a tenuous link.   For example, in *Park Avenue Aesthetic Surgery*, the plaintiff alleged that an entity could be made a defendant because communications were sent on the entity's "stationery."   2021 WL 665045, at *9.   The court deemed this insufficient to show that the entity excised "total control over the benefits denial process," as is required under Second Circuit precedent. *Id*.   The same holds true here—that UHIC's address was listed somewhere in the plan documents in no way establishes that UHIC administered either of the plans or otherwise exercised total control over benefit claims.   *Second*, the complaint alleges UHIC "was the entity that pre-authorized Mr. Gonzalez's surgery as medically necessary." FAC ¶ 30.   Again, this allegation concerning pre-authorization does not support an inference that UHIC had any role in determining the *ultimate* benefits award that is at the center of Gonzalez's claim.   And of course, that UHIC may have pre-authorized Gonzalez's surgery does not permit an inference that it is a proper defendant for *Popovchak's* or *Webb's* claims.

None of this is changed by Plaintiffs' newly-added allegation that Defendants have "deliberately obscure[d]" the claims administrator for their plans.  FAC ¶ 24.  This allegation is directly contradicted by Plaintiffs' own complaint, which concedes that "UHS, Inc. and UHS LLC [are] the 'legal entities' that made the benefit determinations on Plaintiffs' claims." *Id.* ¶ 31.  And contrary to what Plaintiffs now allege, *id.* ¶ 24, Defendants did not argue in their first motion that *no* named entity was a proper defendant; instead, Defendants explained (as they do again here) only that UHG and UHIC are not proper defendants.  *See* Dkt. 23 at 12–13.[2]

Because the complaint does not allege facts permitting an inference that UHG or UHIC served as "the plan administrator," "the plan trustee," or "a claims administrator who exercises total control over claims for benefits"—and because such an inference would be inconsistent with the plan language and Plaintiffs' complaint, which identifies *other* entities as plan administrators—all claims against UHG and UHIC should be dismissed.  *Bushell*, 2018 WL 1578167, at *8.

**C.      Plaintiffs Do Not State a Viable Claim Under Section 1132(a)(3).**

**1.      Plaintiffs' Section 1132(a)(3) Claims Seek a Remedy—Payment of Benefits—Already Available Through Their Section 1132(a)(1)(B) Claims.**

Section 1132(a)(3) allows claimants to obtain "appropriate equitable relief" for certain ERISA violations.  29 U.S.C. § 1132(a)(3)(B).  As a "'catch-all' provision," Section 1132(a)(3) may be "invoked only when relief is not available under § [1132](a)(1)(B)."  *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006) (citing *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996)).   Thus, where "adequate relief is available under [§ 1132(a)(1)(B),] there is no need . . . to also allow equitable relief under § [1132](a)(3)."

---

[2] Even after amending their complaint, Plaintiffs still provide no rationale for *why* UHG or UHIC need to be in this case.  The complaint does not, for example, allege that Plaintiffs have any doubt UHS Inc. or UHS LLC would be able to satisfy any judgment related to this action.  Plaintiffs' choice to continue to bring UHG and UHIC into the fold thus does nothing to advance to the resolution of this case.

*Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006).  Further, to qualify as a claim for equitable relief, both "(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought" must be "equitable in nature."  *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (alterations omitted).

As such, the Supreme Court has made clear that a plaintiff may not use Section 1132(a)(3) to obtain a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," since Section 1132(a)(1)(B) "specifically provides" for such a remedy.  *Varity*, 516 U.S. at 512.  Accordingly, even at the pleadings stage, "courts in this Circuit have repeatedly rejected attempts to repackage claims for wrongful denial of benefits under Section [1132](a)(1) as claims for breaches of fiduciary duties under Section [1132](a)(3)." *Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017) (internal quotation marks omitted) (collecting cases); *see also, e.g.*, *Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, 2020 WL 5659467, at *4 (S.D.N.Y. Sept. 23, 2020) (where the complaint merely seeks "to enforce the terms of the [p]lans," the plaintiff's "§ [1132](a)(3) claim is duplicative of its § [1132](a)(1) claim and must be dismissed"); *Wegmann v. Young Adult Inst., Inc.*, 2016 WL 827780, at *6 (S.D.N.Y. Mar. 2, 2016) (same).  To hold otherwise by "reading into the statute additional causes of action" would upset the product of Congress's "long and careful study and compromise" in crafting ERISA's remedial scheme.  *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 154 (2d Cir. 2014).

Plaintiffs' Section 1132(a)(3) claims are premised on the same allegations and same injury as their primary Section 1132(a)(1)(B) claim.  Plaintiffs' claim of fiduciary breach rests on UHS's "decision to use Repricer data to set the Eligible Expense for Plaintiffs'" claims, FAC ¶ 184, which is indistinguishable from their contention that they were wrongfully denied benefits due to UHS's

"use of Repricer data" to calculate "Eligible Expenses for Plaintiffs'" claims, *id.* ¶ 178.  The only injury Plaintiffs allege in their entire complaint is the purported underpayment of benefits.  *E.g.,* *id.* ¶¶ 179, 187, 193.  Because the "gravamen" of Plaintiffs' ERISA claims is that UHS "failed to follow proper procedures in denying the [Plaintiffs'] claim for benefits, which resulted in an improper denial of benefits owed to the [Plaintiffs] under the terms of the Plan, adequate relief for these claims is plainly available under Section [1132](a)(1)(B)."  *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011).

The supposedly "equitable" relief sought by Plaintiffs reinforces the impropriety of their Section 1132(a)(3) claims.  Plaintiffs ask the Court to enjoin Defendants "from engaging in the misconduct alleged above," and for disgorgement, restitution, and/or "payment of an appropriate surcharge."  FAC, Prayer for Relief.  As discussed *infra*, Plaintiffs do not have Article III standing to seek prospective injunctive relief.  As for the other remedies, those are little more than equitable "repackaging" of their core claim for relief in this case:  a lump sum of money, which is "not available under §[1132](a)(3)."  *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).  For that reason, the use of an "equitable label" cannot transform claims that "are, in essence, legal ones for money damages" into viable 1132(a)(3) claims.  *Central States*, 771 F.3d at 154; *see also McElwaney v. Becker*, 394 F. Supp. 3d 342, 345 (W.D.N.Y. 2019) ("This claim is little more than a repackaging of plaintiff's claim for benefits, in the guise of a claim for equitable relief.  What plaintiff seeks is additional, increased benefits.").  Because Section 1132(a)(1)(B) provides Plaintiffs an adequate remedy for the underlying harm they claim in this case, their claims under Section 1132(a)(3) should be dismissed as duplicative.

16

### 2.    Plaintiffs Do Not Allege Facts Supporting Their Claim for Breach of Fiduciary Duty.

As just outlined above, Plaintiffs' fiduciary breach claims are premised on the same conduct and seek the same relief as their benefits claim and should be dismissed on that basis. To the extent Plaintiffs purport to advance a distinct basis for their claim of fiduciary breach—that UHS had an obligation independent of the plans to always use FAIR Health rates and failed to fulfill that obligation—they offer no credible or particularized facts in support of such a theory.

In Plaintiffs' view, the duty of loyalty ERISA fiduciaries owe to their beneficiaries required UHS to use only FAIR Health-based reimbursement rates for out-of-network claims, which Plaintiffs concede were more expensive than other available rates. FAC ¶ 183. Because using a lower reimbursement rate based on third-party data could entitle UHS to a "savings fee," Plaintiffs complain that the practice of sometimes (but not always) using that data necessarily pitted UHS's interests against those of plan members. This claim of "conflict" is not enough to state a claim for breach of the duty of loyalty for two reasons.

*First*, to establish a breach of the duty of loyalty, a plaintiff must show the claims administrator's actions were undertaken "*for the purpose* of providing benefits to themselves or someone else" at the expense of the plaintiff. *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017). Even at the pleadings stage, a plaintiff must allege facts sufficient to infer that an administrator's actions did not "simply have that incidental effect." *Id.* Here, the complained-of practices that supposedly give rise to a breach of fiduciary duty are (1) on occasion, UHS reimburses out-of-network services at lower rates than Plaintiffs would like, and (2) UHS may receive a "savings fee" from plan sponsors when it uses those rates to save plan assets. Neither of these practices support an inference that UHS "acted for the purpose" of generating benefits for itself. In fact, the allegation that UHS processed only *some* claims using lower rates,

*see, e.g.*, FAC ¶¶ 66–67, undermines any such inference.   If UHS's interpretation of the "competitive fee" plan language (assuming applicable at all to the non-network services at issue in this litigation) and use of third party data to determine reimbursement rates were intended to maximize profits, UHS would be expected to use those lower rates wherever possible.   Yet, as Plaintiffs concede, that is not what happens.

*Second*, Plaintiffs' focus on reimbursement for their own out-of-network claims ignores that UHS's efforts to protect plan assets by not overpaying for certain kinds of claims benefits the plans and other participants more broadly.   This is not a case where the administrator is charged with "overspend[ing]" plan assets.  *Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater New York*, 583 F. Supp. 380, 388 (S.D.N.Y. 1984) (the fiduciary's "incentive should have been to save Security Plan money, not to overspend it"), *disavowed on other grounds by Nobile v. Pension Comm. of Pension Plan for Emps. of New Rochelle Hosp.*, 611 F. Supp. 725, 727 (S.D.N.Y. 1985). Quite the opposite.   By not reflexively paying more expensive rates to reimburse members who venture out-of-network for treatment, UHS is able to fulfill one of the "fundamental common-law duties" imposed on ERISA fiduciaries—"to preserve and maintain trust assets."  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985); *McCabe v. Cap. Mercury Apparel*, 752 F. Supp. 2d 396, 410–11 (S.D.N.Y. 2010) (ERISA "explicitly charges fiduciaries with 'defraying reasonable expenses of administration' as part of the duty of loyalty" (quoting 29 U.S.C. § 1104(a)(1)(A)(ii))).   Plaintiffs nevertheless contend that any savings to their plans were "illusory" because their out-of-network providers did not agree to be reimbursed at the lower rates.  FAC ¶ 78.  But that betrays their misunderstanding of ERISA's duty of loyalty.   As Plaintiffs would have it, the duty of loyalty would compel UHS to reimburse full billed charges no matter how inflated those charges may be.  *Id.* ¶ 184.   To the contrary, the duty of loyalty requires

UHS to exercise its discretion in adjudicating claims for the benefit of *all* plan members—and not for the benefit of out-of-network providers and only those members who seek their services.

Plaintiffs also complain that UHS's use of data from third-party vendors violated its fiduciary duty to adhere to the terms of the Plans.  FAC ¶ 185.  This theory is also without merit. For one, this claim is duplicative of Plaintiffs' benefit claim under section 1132(a)(1)(B), as both are premised on what Plaintiffs allege was "an improper denial of benefits owed to [them] under the terms of the Plan[s]."  *Biomed Pharms.*, 775 F. Supp. 2d at 738; pp. 14–16, *supra*.  Further, nothing in the plans references, let alone expressly requires UHS to use, FAIR Health data in reimbursing claims.  UHS cannot plausibly have breached the plan terms by failing to adhere to a plan provision that does not exist.  *See Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 755– 56 (S.D.N.Y. 1997) (dismissing claim of violation of plan terms based on insurer's practice of requiring physician to obtain pre-authorization for certain services where plan did not expressly prohibit practice); *see also Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir. 1995).

All Plaintiffs point to is a provision in their plans that allows UHS to use certain "gap methodologies" to set Eligible Expenses "if 'data resources of competitive fees in a geographic area are not available.'"  FAC ¶ 42.  Plaintiffs turn that provision on its head in claiming that "if there are 'available data resources' of competitive fees," UHS is prohibited from using alternate methodologies  *Id.*  But that confuses a sufficient condition (the availability of competitive fee data) with a necessary one, and reads into the plans a limitation that simply does not exist.  *See Alquahwagi v. Shelby Enterprises, Inc.*, 2016 WL 4771329, at *5 (E.D. Mich. Sept. 14, 2016) (where a plan provided that if a member elected an amount of insurance that surpassed a certain limit, the member was required to submit evidence of insurability, it was not the case that the

insurer could not require submission of such evidence unless the limit was surpassed; that interpretation "confus[ed] necessary and sufficient conditions").

Finally, Plaintiffs contend that UHS violated the duties of care and prudence through its "inconsistent approach" to interpreting the language in their plans regarding the use of competitive fee data in calculating reimbursement amounts.  FAC ¶ 186.  In Plaintiffs' view, UHS's decision to sometimes use FAIR Health data, while using alternative rates in other instances, failed to treat "similarly-situated claims" consistently.  *Id.*  Not only does this assume that Plaintiffs' claims were "similarly-situated," Plaintiffs' plans grant UHS "the discretion and authority to decide . . . how the Eligible Expenses will be determined and otherwise covered under the Plan," thereby implying that UHS is not obligated to take a categorical approach to a particular group of claims.  Stalinski Decl., Ex. 1 at 33; *id.*, Ex. 2 at 10.  And UHS's exercise of its discretion with respect to any given claim depends on variety of claim-specific factors, including terms of the plan and the relative reasonableness of the provider's billed charges.  Moreover, a duty-of-prudence claim requires a showing that the imprudence resulted in a monetary loss to the plan.  *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *6 (S.D.N.Y. Sept. 27, 2019).  But UHS's decision to adjudicate a benefits claim according to the individual circumstances presented by that claim, rather than automatically paying FAIR Health rates, preserved plan funds.  Plaintiffs' allegations do not suggest otherwise.

In short, there can be no plausible allegation that UHS breached its duty of loyalty to plan members simply because it does not solely use what Plaintiffs acknowledge are higher FAIR Health rates to pay claims from out-of-network providers.

**D.**     **Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under Section 1132(a)(2) and 1109(a) on Behalf of Their Plans.**

Plaintiffs' third cause of action effectively restates their claim for fiduciary breach, but this time the alleged injury is not to Plaintiffs themselves, but rather to their plans.  FAC ¶¶ 188–193.

As with their second cause of action (Count II), the basis for Count III hinges on the use of data from third-party vendors and the fact that UHS may receive a "savings fees" when those lower third-party rates are used. *Id.* ¶ 191. Plaintiffs also assert that these practices violate 29 U.S.C. § 1106(a)(1)(d) and (b)(1) as "party-in-interest" or "fiduciary self-dealing" transactions. *Id.* ¶ 193. None of these theories has merit, either.

First, as described above, Plaintiffs have not plausibly alleged any self-dealing or conflict of interest between UHS and plan members. *See* pp. 17–20, *supra*. Far from it—by using lower reimbursement rates based on data from third-party vendors, UHS preserved assets for the plan, to the benefit of all members. In so acting, UHS's choice of reimbursement methodology is entitled to deference. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). Longstanding ERISA jurisprudence makes clear that such deference is essential so fiduciaries can carry out their "duty to all beneficiaries to preserve limited plan assets." *Id.* at 520; *see also Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*, 7 F. Supp. 2d 351, 358 (S.D.N.Y. 1998) (recognizing fiduciaries' "common law-derived ERISA obligation to preserve and maintain trust assets"). Plaintiffs' claims that UHS violated Sections 1132(a)(2) and 1109(a) by using data from third-party vendors are equally misplaced, for the reasons detailed above. *See* pp. 17–20, *supra*.

Plaintiffs' assertion that UHS engaged in self-interested transactions in violation of Sections 1106(a)(1)(D) and (b)(1) through its receipt of a "savings fee" (FAC ¶ 191) also fails to allege a plausible claim. Section 1106 was designed to protect against arrangements "that present a special risk of plan *underfunding*." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (emphasis added). Where, as here, the conduct at issue resulted in preserving plan assets and increasing savings to the plans, Section 1136 simply is of no relevance.[3]

---

[3]  In addition to being an entirely appropriate means of preserving plan assets, the Shared Savings Program was fully

The savings to the plans generated from the challenged practices also doom Plaintiffs' 1132(a)(2) claims on a more fundamental level.   Section 1132(a)(2) (vis-à-vis Section 1109) "makes ERISA fiduciaries liable for a fiduciary breach resulting in 'any *losses to the plan*.'"   *Am. Med. Ass'n v. United Healthcare Corp.*, 2001 WL 863561, at *6 (S.D.N.Y. July 31, 2001) (quoting 29 U.S.C. § 1109(a)(2)) (emphasis added).   For that reason, a plaintiff who "has not alleged any 'losses to the plan' as a result of" the alleged breach, but instead just "seeks monetary relief for himself," fails to state an (a)(2) claim.   *Conroy v. High Peaks Dental Pro. P'ship*, 2019 WL 3997118, at *5 n.6 (N.D.N.Y. Aug. 23, 2019) (noting that, at best, such a claim would be covered by section 1132(a)(1)).   Plaintiffs' protestation that the "savings fee" received by UHS constitutes "losses to the plans" is unavailing.   FAC ¶ 192.   The only basis for that strained characterization is the claim that the savings obtained by UHS were "illusory" because the out-of-network providers never agreed to accept lower rates as payment in full for their services.   *Id.* ¶¶ 78, 192. But as already explained, *see* pp. 17–20, *supra*, that misguided framing puts out-of-network providers, not plan members, at the center of Plaintiffs' plans.   And, in any event, by not automatically using FAIR Health rates, UHS is able to conserve plan funds.

## E.   Plaintiffs Fail to State a Claim Based On Co-Fiduciary Liability

Plaintiffs' last cause of action seeks to impose co-fiduciary liability on all four Defendants pursuant to Section 1105(a).   But, as detailed above, not only are UHG and UHIC improper defendants, *see* pp. 12–14, *supra*, Plaintiffs' underlying claims of fiduciary breach fail for multiple, independent reasons, *see* pp. 14–22, *supra*.   As a result, their claim of co-fiduciary liability

---

disclosed to plan members—a fact that Plaintiffs do not dispute.   The plans describe the Shared Savings Program in detail, including that it may result in the out-of-network provider "bill[ing] you for the difference between the billed amount and the rate determined by [UHS]."   Stalinski Decl., Ex. 1 at 10; *see id.*, Ex. 2 at 13.  *Cf. Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc*, 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Fee-sharing arrangements or kickbacks do not in-and-of themselves create a violation [of ERISA's prohibited transactions rules], but their non-disclosure does.").

necessarily fails too.  *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *2 (S.D.N.Y. Aug. 31, 2009), *aff'd* 662 F.3d 128 (2d Cir. 2011).

F.    **Plaintiffs Do Not Have Standing to Pursue Prospective Relief.**

To have Article III standing to seek prospective relief, a plaintiff must face a threat of injury that is "actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Past injury, in and of itself, is not enough to establish a likelihood of future injury.  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  Neither is the existence of any "official policy"—even if the plaintiff was previously subjected to that policy as the basis of a past injury. *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *15–16 (S.D.N.Y. Mar. 22, 2018) (citing *Shain*, 356 F.3d at 216).  Rather, "a plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Id.* at *16.

ERISA cases are no different.  *See Thole v. U.S. Bank*, 140 S. Ct. 1615, 1622 (2020).  As a result, district courts across the country dismiss claims for forward-looking injunctive relief where beneficiaries of ERISA plans allege only injury from past denial of benefits— notwithstanding continued membership in the plans at issue.  While ERISA generally "permits participants to seek declaratory or injunctive relief related to violations of the ERISA plan" through Sections 1132(a)(1)(B) and (a)(3), "those must be related to an actual injury."  *Delgado v. ILWU-PMA Welfare Plan*, 2018 WL 8014336, at *3 (C.D. Cal. Nov. 20, 2018) ("[T]he act does not mitigate the requirements of standing and ripeness.").

In *Meidl v. Aetna*, 2017 WL 1831916 (D. Conn. May 4, 2017), for example, the plaintiff challenged his insurer's denial of coverage for a certain therapy as a treatment for major depressive disorder, under his plan's coverage exclusion for "experimental, investigational, or unproven" treatments.  *Id.* at *1.  Relying on *Shain* and other binding Second Circuit and Supreme Court precedent, the district court ruled that the plaintiff lacked standing to pursue an injunction barring

the insurer from classifying the therapy as experimental or investigational. *Id.* at *4. Though the plaintiff alleged that he continued to suffer from the same underlying health condition, he failed to establish that his insurer would deny coverage for the same therapy in the future. *Id.* at *5. Any future harm based on a denial of coverage was "too speculative and conjectural to supply a predicate for *prospective* injunctive relief." *Id.* at *4 (quoting *Shain*, 356 F.3d at 216).

Similarly, in *Delgado*, the plaintiffs' request to enjoin the administrator from using allegedly "unlawful practices" in administering future benefits was deemed too "hypothetical or speculative." 2018 WL 8014336, at *3. Though the plaintiffs alleged that they would seek medical services from their providers in the future, the court reasoned that "[a]ny future denial of a claim by the [p]lan is by definition hypothetical, as those claims have not—indeed, cannot—be filed until the medical services are rendered." *Id.*; *see also, e.g.*, *Bellanger v. Health Plan of Nevada, Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (plaintiff could not show immediate irreparable harm based on "unlikely" series of events that he would "submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law").

Here, Plaintiffs seek *forward-looking* relief in the form of a permanent injunction. FAC, Prayer for Relief. Yet the only injury they allege is premised on UHS's reimbursement of *past* claims from several years ago. *See* FAC ¶¶ 91–107 (challenging reimbursement of claims stemming from Popovchak's December 29, 2020 surgery); *id.* ¶¶ 108–139 (same as to Gonzalez's May 19, 2021 surgery); *id.* ¶¶ 140–163 (same as to Webb's March 14, 2020 surgery). As in *Meidl*, Plaintiffs do not claim they intend to return to these providers for future services. And, as a result, they do not (and cannot) assert that UHS, in processing these hypothetical future claims, would interpret the "competitive fee" term in their plans contrary to Plaintiffs' proffered reading. In fact,

the complaint details instances in which UHS's interpretation of the term comported with the meaning that Plaintiffs advance here. *See, e.g.*, FAC ¶¶ 66, 69. Thus, even if Plaintiffs were to allege that they plan to seek future treatments from the providers at issue—an assertion that would be "no more than speculation"—they still could not establish any "real and immediate" risk of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 108 (1983). Their claim for prospective injunctive relief should accordingly be dismissed for lack of Article III standing.

**G.   The Court Should Strike Plaintiffs' Jury Trial Demand.**

In their complaint, Plaintiffs request a jury trial "on all counts so triable." FAC, Jury Trial Demand. Second Circuit precedent is clear, however, that "cases involving ERISA benefits are inherently equitable in nature, not contractual," and as a result, "no right to jury trial attaches to such claims." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998). Because this entire action is premised the alleged wrongful denial of benefits and raises causes of action arising exclusively under ERISA, the Court should strike Plaintiffs' demand for a jury trial.

## V.   CONCLUSION

Defendants respectfully request that the Court grant their Motion and dismiss the following claims: (1) Popovchak's claim under Section 1132(a)(1)(B), on the ground that it is untimely; (2) Gonzalez's claim for benefits for services provided by Dr. Frelinghuysen under Section 1132(a)(1)(B), on the ground that he failed to exhaust administrative remedies; (3) all claims under ERISA Section 1132(a)(3) in Count II, for failure to state a claim; (4) all claims under ERISA Section 1132(a)(2) in Count III, for failure to state a claim; (5) all claims under ERISA Section 1105(a) in Count IV, for failure to state a claim; (6) all claims against UHG and UHIC; and (7) Plaintiffs' claim for prospective injunctive relief. Defendants also respectfully request that the Court strike Plaintiffs' demand for a jury trial.

Dated:  May 15, 2023                          By: */s/ James L. Hallowell*
New York, NY

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*