# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA POPOVCHAK, OSCAR GONZALEZ, and MELANIE WEBB individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 1:22-CV-10756-VEC |
| v. | |
| UNITEDHEALTH GROUP INCORPORATED, UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES, INC., and UNITEDHEALTHCARE SERVICE LLC, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT, IN PART

## <u>TABLE OF CONTENTS</u>

FACTS ALLEGED IN THE COMPLAINT ................................................................... 1

    1.  Plaintiffs' Plans Cover ONET Services ....................................................... 2

    2.  Plaintiffs' Plans Required United to Use "Competitive Fees" to Determine Eligible Expenses for Plaintiffs' Covered ONET Health Services ........................ 2

    3.  United Did Not Use Competitive Fees to Determine the  Eligible Expenses for Plaintiffs' Covered Health Services ..................................................... 3

    4.  United's "Shared Savings" Scheme Injured Plaintiffs and Their Plans ..................... 4

STANDARD OF REVIEW ...................................................................................... 5

ARGUMENT ......................................................................................................... 5

I.     United Concedes that Count I States a Claim for Wrongful Denial of Benefits. .......... 5

II.    The Complaint Plausibly Pleads that United Breached its Fiduciary Duties. ............... 6

    A.   Count II Plausibly Alleges United Breached its Fiduciary Duties to Plaintiffs. ......... 7

       1.  United Breached its Duty of Loyalty by Acting in its Own Interest When Determining Eligible Expenses for Plaintiffs' Covered Services ......................... 7

       2.  United Breached its Duty to Follow Plan Terms When it  Chose to Use Repricer Data Rather than Competitive Fees ......................................... 11

       3.  United Breached its Duty of Care by Failing to Ensure Consistency in its Application of the Competitive Fee Term ........................................... 12

    B.   Count III States a Plausible Claim for Breach of Fiduciary Duty on Behalf of the Plaintiffs' Plans ................................................................... 13

       1.  United Breached its Duty of Loyalty to the Plaintiffs' Plans by Charging Them Falsified and Unearned "Savings Fees" ..................................... 13

       2.  United Breached its Fiduciary Duties by Engaging  in Prohibited Transactions with the Plans ....................................................... 14

    C.   The Rules Permit Plaintiffs to Plead Claims and Remedies in the Alternative ......... 16

       1.  Plaintiffs' Fiduciary Breach Claims are Distinct from their Wrongful Denial of Benefits Claims ....................................................... 16

       2.  Plaintiffs Are Entitled to Assert Claims Under Both ERISA Sections (a)(1)(B) and (a)(3), Especially in the Alternative ................................ 17

D.      Plaintiffs Plausibly Allege that UHG and UHIC Are Co-Fiduciaries of Plaintiffs' Plans .................................................................................................... 20

E.Plaintiffs' Claim for Co-Fiduciary Liability Survives Because Plaintiffs' Breach of Fiduciary Duty Claims Survive ................................................................ 22

**III.   United's Affirmative Defenses Provide No Basis for Dismissing any Claims.............. 23**

A.      Plaintiffs Plausibly Allege that Mr. Gonzalez's Claim was Fully Exhausted. .......... 23

B.      Plaintiffs Plausibly Allege That Ms. Popovchak's Claims Are Timely .................... 25

1.   Ms. Popovchak's Count I Claims Are Not Subject to a Contractual Limitation Period that United Failed to Disclose in its Denial Letters ................ 25

2.   Ms. Popovchak's Breach of Fiduciary Duty Claims Are Subject to ERISA's Three-Year Statute of Limitations Period ............................................................ 27

**IV.   Plaintiffs Plausibly Allege Standing to Seek a Prospective Injunction. ...................... 27**

**V.   Plaintiffs Are Entitled to a Trial by Jury on Any Claims Seeking Legal Relief.......... 30**

**CONCLUSION ............................................................................................................................ 32**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aetna Health Inc. v. Davila*
542 U.S. 200 (2004)............................................................................................ 6, 25

*Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*
651 F.3d 218 (2d Cir. 2011)
*aff'd*, 570 U.S. 205 (2013) ................................................................................ 28, 29

*Anne A. v. United Healthcare Ins. Co.*
2022 WL 957199 (D. Utah Mar. 30, 2022) ............................................................ 26

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)............................................................................................ 5, 30

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)............................................................................................ 5, 22

*Bellanger v. Health Plan of Nev., Inc.*
814 F. Supp. 914 (D. Nev. 1992) ............................................................................ 30

*Biomed Pharms. v. Oxford Health Plans (N.Y.), Inc.*
775 F. Supp. 2d 730, 736-37 (S.D.N.Y. 2011) ....................................................... 19

*Bona v. Barasch*
2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ........................................................ 31

*Bushell v. UnitedHealth Grp. Inc.*
2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018) ........................................................ 22

*Central States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*
472 U.S. 559 (1985).................................................................................... 6, 10, 16

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*
494 U.S. 558 (1990) ............................................................................................... 30

*Cherochak v. Unum Life Ins. Co. of Am.*
586 F. Supp. 2d 522 (D.S.C. 2008)........................................................................ 27

*CIGNA Corp. v. Amara*
563 U.S. 421 (2011)............................................................................................ 18, 19

*City of Los Angeles v. Lyons*
461 U.S. 95, 108 (1983)..................................................................................... 27, 30

*Conkright v. Frommer*
559 U.S. 506 (2010) ................................................................................................. 9

*Cunningham v. Cornell Univ.*
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ................................................................. 7, 13

*Cunningham v. Cornell Univ.*
2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018) ............................................................. 19, 31, 32

*Cunningham v. Cornell Univ.*,
2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ..................................................................... 13

*de Coninck v. Provident Life & Accident Ins. Co.*
747 F. Supp. 627 (D. Kan. 1990) ........................................................................................ 27

*Delgado v. ILWU-PMA Welfare Plan*
2018 WL 8014336 (C.D. Cal. Nov. 20, 2018) .................................................................... 30

*Devlin v. Empire Blue Cross & Blue Shield*
274 F.3d 76 (2d Cir. 2001) ........................................................................................... 16, 18

*Disberry v. Emp. Rels. Comm. of Colgate-Palmolive Co.*
2022 WL 17807122 (S.D.N.Y. Dec. 19, 2022) .................................................................. 21

*Doe v. United Health Grp. Inc.*
2018 WL 3998022 (E.D.N.Y. Aug. 20, 2018) .................................................................... 22

*Drolet v. Healthsource, Inc.*
968 F. Supp. 757 (D.N.H. 1997) ........................................................................................ 21

*Falberg v. Goldman Sachs Grp.*
2020 WL 3893285 (S.D.N.Y. July 9, 2020) ....................................................................... 22

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*
783 F.3d 395 (2d Cir. 2015) ............................................................................................... 28

*Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.*
1996 WL 497085 (E.D.N.Y. Aug. 26, 1996) ...................................................................... 27

*Frommert v. Conkright*
433 F.3d 254 (2d Cir. 2006) ......................................................................................... 18, 19

*Gannon v. NYSA-ILA Pension Tr. Fund & Plan*
2011 WL 868713 (S.D.N.Y. Mar. 11, 2011) ...................................................................... 24

*Garthwait v. Eversource Energy Co.*
2021 WL 4441939 (D. Conn. Sept. 28, 2021) ............................................................... 21, 22

*Gates v. United Health Grp. Inc.*
2012 WL 2953050 (S.D.N.Y. July 16, 2012) ..................................................................... 16

*Granfinanciera, S.A. v. Nordberg*
492 U.S. 33 (1989)..................................................................................................... 30

*Great-West Life & Annuity Insurance v. Knudson*
534 U.S. 204 (2002)................................................................................................... 31

*Gregory v. Daly*
243 F.3d 687(2d Cir. 2001) ................................................................................. 2, 26

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*
2012 WL 162361 (D. Conn. Jan. 19, 2012).............................................................. 31

*Hitchens v. Bd. of Trs.*
2022 WL 4448195 (D. Del. Sep. 23, 2022)............................................................... 26

*In re Allianz*
2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021)............................................................. 7

*In re Omnicom ERISA Litig.*
2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)............................................................... 22

*John v. Whole Foods Mkt. Grp., Inc.*
858 F.3d 732 (2d Cir. 2017) ..................................................................................... 28

*Kennedy v. Empire Blue Cross & Blue Shield*
989 F.2d 588 (2d Cir. 1993) ..................................................................................... 23

*Kohari v. MetLife Grp., Inc.*
2022 WL 3029328 (S.D.N.Y. Aug. 1, 2022).............................................................. 23

*Lardo v. Bldg. Serv. 32BJ Pension Fund*
2021 WL 4198233 (S.D.N.Y. Sept. 14, 2021)...................................................... 6, 17

*Levitt v. Bear Stearns & Co.*,
340 F.3d 94 (2d Cir. 2003) ......................................................................................... 5

*Li Neuroscience Specialists v. Blue Cross Blue Shield of Massachusetts*
2019 WL 121673 (E.D.N.Y. Jan. 7, 2019) ......................................................... 25, 26

*Lockheed Corp. v. Spink*
517 U.S. 882 (1996)................................................................................................... 15

*Mason Tenders District Council Welfare Fund v. Logic Construction Corp.*
7 F. Supp. 2d 351 (S.D.N.Y. 1998) .................................................................... 10, 11

*Masten v. Metro. Life Ins. Co.*
543 F. Supp. 3d 25 (S.D.N.Y. 2021) ........................................................................ 23

*Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*
   2016 WL 4382709 (S.D.N.Y. Aug. 16, 2016) .......................................................... 17

*McCabe v. Capital Mercury Apparel*
   752 F. Supp. 2d 396, 406 (S.D.N.Y. 2010) ......................................................... 11, 12

*McCutcheon v. Colgate-Palmolive Co.*
   62 F.4th 674 (2d Cir. 2023) ................................................................................... 12

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*
   2017 WL 4023350 (S.D.N.Y. Sept. 11, 2017) .................................................... 23, 25

*Meidl v. Aetna, Inc.*
   2017 WL 1831916 (D. Conn. May 4, 2017) .......................................................... 29

*Merryman v. Citigroup, Inc.*
   2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) ....................................................... 30

*Michael E. Jones, M.D., P.C. v. Aetna, Inc.*
   2020 WL 565946 (S.D.N.Y. Sept. 23, 2020) ........................................................ 19

*Miles v. New York State Teamsters Conf. Pension Plan*
   698 F.2d 593 (2d Cir. 1983) .................................................................................. 26

*Mirza v. Ins. Adm'r of Am., Inc.*
   800 F.3d 129 (3d Cir. 2015) .............................................................................. 25, 26

*Moreno v. Deutsche Bank Americas Holding Corp.*
   2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ......................................................... 7

*Moyer v. Metro. Life Ins. Co.*
   762 F.3d 503 (6th Cir. 2014) ................................................................................. 26

*Murphy Med. Assocs., LLC v. United Med. Res. Inc.*
   2023 WL 2687466 (D. Conn. Mar. 29, 2023) ....................................................... 25

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*
   798 F.3d 125 (2d Cir. 2015) ........................................................................ 17, 18, 19

*Nerney v. Valente & Sons Repair Shop*
   66 F. 3d 25 (2d Cir. 1995) ..................................................................................... 12

*O'Shea v. Littleton*
   414 U.S. 488 (1974) .......................................................................................... 28, 30

*Paese v. Hartford Life & Acc. Ins. Co.*
   449 F.3d 435 (2d Cir. 2006) .................................................................................. 23

*Pearson Cap. Partners LLC v. James River Ins. Co.*,
    151 F. Supp. 3d 392 (S.D.N.Y. 2015). ................................................................. 5, 8

*Pegram v. Herdrich*
    530 U.S. 211 (2000) ........................................................................................... 6

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*
    712 F.3d 705 (2d Cir. 2013) ............................................................................. 21

*Pereira v. Farace*
    413 F.3d 330 (2d Cir. 2005). ............................................................................ 31

*Santana-Díaz v. Metro. Life Ins. Co.*
    816 F.3d 172 (1st Cir. 2016) ...................................................................... 25, 26

*Shain v. Ellison*
    356 F.3d 211 (2d Cir. 2004) ............................................................................. 30

*Silva v. Metro. Life Ins. Co.*
    762 F.3d 711 (8th Cir. 2014) ...................................................................... 17, 18

*Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater N.Y.*
    583 F. Supp. 380 (S.D.N.Y. 1984) ................................................................... 11

*Staehr v. Hartford Fin. Servs. Grp., Inc.*
    547 F.3d 406 (2d Cir. 2008) ............................................................................. 23

*Summers v. Earth Island Institute*
    555 U.S. 488 (2009) .......................................................................................... 30

*Taveras v. New York City, New York*
    2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023) ............................................. 28, 29

*Thole v. U.S. Bank N.A.*
    140 S. Ct. 1615, 1631 (2020) ........................................................................... 29

*Tischmann v. ITT/Sheraton Corp.*
    145 F.3d 561 (2d Cir. 1998) ............................................................................. 32

*Varity Corp. v. Howe*
    516 U.S. 489 (1996) ........................................................................... 6, 7, 10, 17

*Wegmann v. Young Adult Inst., Inc.*
    2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) ...................................................... 19

*Weiss v. CIGNA Healthcare Inc.*
    972 F. Supp. 748 (S.D.N.Y. 1997) ................................................................... 12

*Wilkins v. Mason Tenders Dist. Council Pension Fund*
    445 F.3d 572 (2d Cir. 2006) ....................................................................... 18

*Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*
    2017 WL 2462675 (S.D.N.Y. June 7, 2017) .......................................... 19

*Younger v. Zurich Am. Ins. Co.*
    2012 WL 1022326 (S.D.N.Y. Mar. 26, 2012) ........................................ 16

## STATUTES

29 U.S.C. § 1001(b) .................................................................................. 25

29 U.S.C. § 1002(14) ................................................................................ 14

29 U.S.C. § 1002(21) .................................................................................. 6

29 U.S.C. § 1104(a)(1) ................................................................. 6, 9, 11, 15

29 U.S.C. § 1105(a) .................................................................................. 22

29 U.S.C. § 1106 ................................................................................ 14, 15

29 U.S.C. § 1108 ...................................................................................... 15

29 U.S.C. § 1113(2) .................................................................................. 27

29 U.S.C. § 1132(a) .................................................................................. 20

29 U.S.C. § 1132(a)(1)(B) ................................................................ 16, 17, 18

29 U.S.C. § 1132(a)(2) .......................................................................... 13, 16

29 U.S.C. § 1132(a)(3) ..................................................................... 16, 17, 18, 19

## OTHER AUTHORITIES

N.Y. C.P.L.R. § 213(2) .............................................................................. 26

## RULES

Fed. R. Civ. P. 8(a)(3) .............................................................................. 17

United's[1] motion to dismiss is an overlong compendium of superficial and half-baked arguments that amount to nothing.[2] United ignores the governing notice pleading standard; mischaracterizes or disregards controlling Supreme Court and Second Circuit authority; pretends the Complaint's well-pleaded facts do not exist; and asks the Court to improperly rush to judgment not only on Plaintiffs' claims, but their requested remedies as well.

The Court should not take the bait. Plaintiffs' Amended Class Action Complaint, ECF No. 35 (Apr. 17, 2023) (the "Complaint" or "AC"), contains extensive, well-pleaded facts alleging that Plaintiffs are among the many victims of United's longstanding—and ongoing—scheme to enrich itself by deliberately underpaying Plaintiffs' benefits due, falsely portraying the underpayments as "savings," and then collecting unearned "savings fees." These allegations are more than sufficient to state plausible claims under the Employee Retirement Income Security Act of 1974 ("ERISA") that United unreasonably interpreted the written terms of Plaintiffs' plans, deprived Plaintiffs of benefits due, and breached its fiduciary duties to Plaintiffs and their plans. To redress United's wrongdoing, the Complaint seeks an appropriate combination of standard ERISA remedies, expressly enumerated in the statute, that flow directly from the misconduct alleged.

The Court should deny United's meritless motion in its entirety.

**<u>FACTS ALLEGED IN THE COMPLAINT</u>**

Plaintiffs Alexandra Popovchak, Oscar Gonzalez, and Melanie Webb are members of self-funded health benefit plans administered by United. AC ¶¶ 6-8, 23, 25. Each of the Plaintiffs

---

[1] In this Opposition, Plaintiffs refer to Defendants UnitedHealth Group Incorporated ("UHG"), United Healthcare Insurance Company ("UHIC"), United Healthcare Services, Inc. ("UHS, Inc."), and United Healthcare Service LLC ("UHS LLC"), collectively, as "United."

[2] Although United's motion requests dismissal of the Complaint in its entirety, *see* Notice of Defs.' Mot. to Dismiss Pls.' First Am. Compl., ECF No. 38 (May 15, 2023) at 1-2, United admits that it "[is] not moving" to dismiss Ms. Webb's Count I claims or Mr. Gonzalez's Count I claims related to services provided by his primary surgeon. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Am. Compl., ECF No. 40 (May 15, 2023) ("Mot.") at 3 n.1.

received surgery from surgeons who were not members of United's "network," and are therefore considered "out-of-network" (or "ONET"). AC ¶¶ 36-37, 91, 108, 140. United determined that the surgeries were covered under the terms of Plaintiffs' plans, AC ¶¶ 93, 109, 142, but then, driven by its self-serving scheme to maximize the so-called "savings fees" it charged to the plans, AC ¶¶ 75-90, United underpaid the benefits due under the plan terms. AC ¶¶ 94-98, 112-15, 125-27, 143-44, 157-59. The Complaint's extensive fact allegations are briefly summarized below.

1.     Plaintiffs' Plans Cover ONET Services

Plaintiffs' plans cover health care services received from both "in-network providers," *i.e.*, those who have agreed to accept certain discounted rates for their services, AC ¶ 36, and ONET providers, who bill their standard rates. AC ¶ 37. *See also* Ex. 1 at 33 (plan offers members "the freedom to choose in-network and out-of-network care"); Ex. 2 at 7; Ex. 3 at 7. [3]

2.     Plaintiffs' Plans Required United to Use "Competitive Fees" to Determine Eligible Expenses for Plaintiffs' Covered ONET Health Services

The written terms of the Plaintiffs' plans specify how United must determine Eligible Expenses for ONET services, AC ¶¶ 40-42, stating that "[i]f rates have not been negotiated" and "agreed to" by the ONET provider, then "Eligible Expenses are determined based on available data resources of competitive fees in that geographic area." Ex. 1 at 34. *See also* Ex. 2 at 9; Ex. 3 at 11; AC ¶ 40 (referring to this language as the "Competitive Fee Term").[4] The plans also describe

---

[3] Plaintiffs agree the Court may consider the Summary Plan Descriptions ("SPDs") for the Plaintiffs' plans because they are incorporated into the Complaint. Mot. 8 (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). However, United only submitted with its motion incomplete excerpts of two of the three relevant SPDs. *See* Decl. of Jane Stalinski in Supp. of Defs.' Mot. to Dismiss, ECF Nos. 42 & 43 (May 15, 2023) ("Stalinski Decl.") ¶¶ 4-5. Plaintiffs, therefore, submit as exhibits to this brief a complete version of the SPD for the Morgan Stanley Plan and excerpts of the 2020 and 2021 SPDs for the Fresenius Plan, which Plaintiffs received from United in the course of their administrative appeals. *See* Ex. 1 (2020 SPD for Morgan Stanley Plan); Ex. 2 (excerpts of 2020 SPD for Fresenius Plan); Ex. 3 (excerpts of 2021 SPD for Fresenius Plan). *See also* Decl. of Leslie Howard in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss (June 14, 2023) ("Howard Decl.") (filed herewith) ¶¶ 3-5. Despite multiple requests, United never provided a complete version of the Fresenius SPD to either Mr. Gonzalez or Ms. Webb. Howard Decl. ¶¶ 4-5.

[4] Contrary to United's assertions, Mot. 4, 7, the same rule applies to ONET services received on an emergency basis. The plans state that Eligible Expenses for emergency ONET services "are an amount negotiated by UHC or an amount

two alternative methodologies for Pharmaceutical Products, which are not at issue in this case. *See* Ex. 1 at 34; Ex. 2 at 9; Ex. 3 at 11.[5] Thus, the plans include one—and only one—basis for the Eligible Expenses for professional services received from ONET providers: competitive fees.

          3.     United Did Not Use Competitive Fees to Determine the
                    Eligible Expenses for Plaintiffs' Covered Health Services

United knows that an independent nonprofit called FAIR Health maintains a "comprehensive," publicly available database of competitive fees, searchable by providers' geographic area. AC ¶¶ 47-54. While United sometimes used FAIR Health to determine "competitive fees" for ONET rates, often it did not—including in the Plaintiffs' cases. AC ¶¶ 97, 113-14, 126, 147. Instead, United based its determinations on data supplied by Data iSight, a so-called "Repricer." AC ¶¶ 58-60. Data iSight's methodology explicitly is *not* based on the fees providers charge in the competitive market. AC ¶ 59. Rather, Data iSight recommends rates based on the deeply discounted amounts insurance companies have paid for a given service. AC ¶¶ 60-62. United's use of Repricer data, rather than competitive fees, meant that United set Eligible Expenses for Plaintiffs' claims significantly lower than the plan terms required. AC ¶¶ 62-63, 87, 175.[6] As a result, Plaintiffs remain financially and legally liable for the unpaid portion of the bills—

---

[5] permitted by law." Ex. 1 at 34; Ex. 2 at 9; Ex. 3 at 10; *see also* AC ¶ 41. At the time of Plaintiffs' surgeries, the "amount permitted by law" was dictated by the "greatest of three" rule codified in the ERISA regulations, which required self-funded plans to pay benefits for emergency ONET services at the **greatest** of: (1) the in-network rate for the service; (2) the amount calculated using the same method the plan uses to determine non-emergency ONET services; or (3) the Medicare rate. 29 C.F.R. § 2590.715-2719A(b)(3). Competitive fees charged by providers in the marketplace typically exceed both in-network and Medicare rates, meaning that the plans' usual method of determining ONET fees—i.e., using competitive fees—should have been applied.

[5] Even if those alternative methodologies applied to the non-Pharmaceutical services at issue here, the plans specify that they can only be used if "data resources of competitive fees in a geographic area are not available." AC ¶ 42.

[6] These allegations put the lie to United's repeated assertions that Plaintiffs seek to require United to "overpay" their benefit claims. *See*, *e.g.*, Mot. 18 (asserting, e.g., that Plaintiffs are calling for United to "reflexively pay[] more expensive rates" for ONET services and to "reimburse full billed charges no matter how inflated…."). To the contrary, Plaintiffs allege that United set Eligible Expenses **lower than the plan terms required**, causing United to **underpay** Plaintiffs' benefit claims. *See*, *e.g.*, AC ¶ 175.

thousands of dollars their plans promised to cover. AC ¶¶ 43-44, 103, 121, 133, 154.[7]

4.  United's "Shared Savings" Scheme Injured Plaintiffs and Their Plans

The whole reason United uses Repricers is to justify steep discounts from providers' "competitive fees." AC ¶¶ 58-59. Indeed, in its motion, United admits as much, repeatedly congratulating itself for "preserv[ing] assets for [Plaintiffs'] plans and members at large" by using Repricer data to reduce benefit payments to ONET providers. *See*, *e.g.*, Mot. 2, 18, 21. The real reason for United's actions, however, was to serve its ***own*** financial self-interest. AC ¶ 74.

For years, United has been operating a self-serving scheme to divert health plan assets away from benefit payments and into its own coffers. AC ¶¶ 75-90.[8] Under its so-called "Shared Savings Program," United charges self-funded plans fees in exchange for securing "savings" on benefits otherwise due by negotiating discounts on ONET providers' billed charges. AC ¶ 76. While falsely characterizing these savings as resulting from providers' ***agreement*** to accept discounted rates, AC ¶¶ 76-77, United actually awards itself "savings fees" even after it unilaterally imposes a discount without the provider's agreement. AC ¶¶ 78, 84. Because United calculates its savings fees as a percentage of the difference between the billed charge and the Eligible Expense as determined by United, AC ¶ 79, it is directly in United's financial self-interest to set Eligible Expenses as low as possible—which it does by using Repricer data rather than Competitive Fees. AC ¶¶ 79-81. Over the years, United has raked in billions of dollars in "savings fees" through this scheme, all at the expense of plans and plan participants. AC ¶ 86.

---

[7] *See also* AC ¶¶ 92, 94, 98 (Eligible Expense for Ms. Popovchak's claim undervalued by almost $29,000); *id*. ¶¶ 112, 115 (over $52,000 discount for Mr. Gonzalez's first claim); *id*. ¶¶ 125, 127 (nearly $27,000 discount for Mr. Gonzalez's second claim); *id*. ¶¶ 143, 157-59 (over $3,000 discount for Ms. Webb's claim).

[8] The facts concerning United's "Shared Savings" scheme were revealed through the trial testimony of United's own employees in a case in Nevada that resulted in a $62 million jury verdict against United. AC ¶ 89.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), meaning sufficient facts to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See also Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof"). As such, "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015).

## ARGUMENT

**I.      United Concedes that Count I States a Claim for Wrongful Denial of Benefits.**

In Count I, Plaintiffs challenge United's wrongful underpayment of the ONET benefits due under the terms of their plans. AC ¶¶ 174-79 (Count I). Count I embraces three alternative theories. First, Plaintiffs allege that United violated their plans' express terms by using Repricer data to set Eligible Expenses for their claims, rather than using competitive fees as the plans unambiguously required. *Id*. ¶¶ 175-76; *see also supra* pp. 3-4. Second, Plaintiffs allege that, to the extent the plan language is ambiguous, United's interpretation of the Competitive Fee Term as allowing it to use Repricer data was unreasonable, making its benefit determinations pursuant to that unreasonable plan interpretation arbitrary and capricious. AC ¶ 176; *id.* ¶¶ 40-42, 45, 58-63. Third, Plaintiffs allege that United's inconsistent interpretations of the Competitive Fee Term rendered its underpayment of Plaintiffs' claims, based on Repricer data rather than competitive fees, arbitrary and capricious in violation of ERISA. AC ¶ 64-74, 177. United did not move to dismiss Count I for failure to state a claim. Mot. 2-3 & n.1.

**II.       The Complaint Plausibly Pleads that United Breached its Fiduciary Duties.**

ERISA imposes "strict standards" of conduct on plan fiduciaries, "most prominently, a standard of loyalty and a standard of care." *Central States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). An ERISA fiduciary's duty of loyalty requires it to "discharge [its] duties with respect to a plan **solely** in the interest of the participants and beneficiaries and . . . for the **exclusive purpose** of providing benefits to participants and their beneficiaries . . . ." *Id.* at 571 (quoting 29 U.S.C. § 1104(a)(1)(A)) (emphasis added). In doing so, the fiduciary must act with "care, skill, prudence, and diligence," 29 U.S.C. § 1104(a)(1)(B), and "in accordance with" the plan terms and ERISA itself. 29 U.S.C. § 1104(a)(1)(D). To state a claim for breach of ERISA fiduciary duties, a plaintiff must plausibly allege: "(1) the defendant is a fiduciary of the plan, (2) the defendant acted in its capacity as a fiduciary, and (3) the defendant breached a fiduciary duty." *Lardo v. Bldg. Serv. 32BJ Pension Fund*, 2021 WL 4198233, at *6 (S.D.N.Y. Sept. 14, 2021).

United does not (and could not) dispute that it was acting as a fiduciary when taking the actions subject to the Complaint.[9] Nor does it dispute that UHS, Inc. and UHS, LLC were ERISA fiduciaries. *See* Mot. 12-14. Instead, United argues: (a) that Plaintiffs failed adequately to allege fiduciary breaches, Mot. 17-22; (b) that, even if they had, their claims should be dismissed as "duplicative" of Count I, Mot. 14-16; and (c) that even if the fiduciary duty claims survive, UHG and UHIC are not "proper defendants" for any such claim and should be excused from this lawsuit, Mot. 12-14. None of these arguments has merit.

---

[9] Under ERISA, a person is a plan fiduciary "to the extent" he exercises **any** "authority or control" over "management or disposition of [plan] assets" or he "has" or "exercises any discretionary authority, responsibility, or control over plan management or administration." 29 U.S.C. §§ 1002(21)(A)(i) & (iii). For that reason, "[a] benefit determination under ERISA . . . is generally a fiduciary act." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 218 (2004); *see also Pegram v. Herdrich*, 530 U.S. 211, 231 (2000) ("At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries."); *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (relevant plan fiduciaries owe a "fiduciary duty with respect to the interpretation of plan documents and the payment of claims").

6

A.       **Count II Plausibly Alleges United Breached its Fiduciary Duties to Plaintiffs.**

1.       United Breached its Duty of Loyalty by Acting in its Own Interest
When Determining Eligible Expenses for Plaintiffs' Covered Services

United first contends that Plaintiffs' allegations are insufficient to support an inference that

United acted "*for the purpose*" of benefitting itself. Mot. 17 (original emphasis) (citing

*Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) ("*Cornell I*")

But United wholly ignores Plaintiffs' detailed factual allegations as to United's self-serving drive

to increase its own "Shared Savings" fees, which caused it to improperly undervalue Eligible

Expenses for covered ONET services and lie to plan members about the legal effect of its actions.

*See supra* p. 4; AC ¶¶ 1-5, 75-90, 103, 121, 133, 154; *compare* Mot. 17-18 (no discussion of or

citation to any of these facts). United's head-in-the-sand approach cannot make Plaintiffs' well-

pleaded factual allegations disappear, and taken as true, those allegations paint the quintessential

picture of a faithless fiduciary. *See*, *e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996)

("deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries'

expense" is a breach of the duty of loyalty); *In re Allianz*, 2021 WL 4481215, at *25 (S.D.N.Y.

Sept. 30, 2021) (allegations that defendant managed pension funds "against Plaintiffs' interests in

order to preserve its own ability to profit from managing the Funds" sufficient to state a claim);

*Moreno v. Deutsche Bank Americas Holding Corp.*, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13,

2016) ("allegations regarding excessive fees from which [d]efendants stood to gain" held sufficient

to state a claim for breach of fiduciary duty).

United suggests that its actions merely had the "incidental effect" of benefitting United at

Plaintiffs' expense, Mot. 17, but the Plaintiffs' allegations make it plausible (to say the least) that

United deliberately acted in its own interest when it underpaid benefits due and then collected

savings fees for doing so. *See*, *e.g.*, AC ¶ 74 (alleging that "United's reason for . . . using Repricer

data to set ONET reimbursement rates" was that doing so "directly serves United's financial self-interest"). For example, Plaintiffs allege that: United pushed self-funded plans to participate in its "Shared Savings" program specifically so that United could generate "savings" fees for itself, AC ¶¶ 75-76; United knew that because it calculates its savings fee as a percentage of the difference between billed charges and Eligible Expenses, "the greater the difference" between those two amounts, "the more money United 'earns' through its savings fees," AC ¶ 79; United "realized" that using Repricer data rather than competitive rates would result in greater "savings" fees for itself, AC ¶ 80, because Repricer data is heavily discounted and not intended to reflect competitive fees, AC ¶¶ 57-63, as United also well knows, AC ¶¶ 70, 74, 80; and that United's scheme has generated billions of dollars in such purported "savings" fees. AC ¶¶ 5, 86. Plaintiffs' allegations, which must be taken as true, more than plausibly support the inference that United acted "for the purpose" of benefiting itself and that it did not merely "incidentally" stumble into those billions.

Ignoring all those allegations, United instead urges the Court to draw inferences in *United's* favor and conclude that because United *sometimes* applied the Competitive Fee Term correctly, it must not have intended to maximize profits through its Shared Savings scheme. Mot. 17-18. That argument, of course, turns the Rule 12(b)(6) legal standard on its head. *Pearson*, 151 F. Supp. 3d at 399 ("court **must** . . . draw all reasonable inferences in the plaintiff's favor") (emphasis added). Even if United sometimes paid proper benefits, that does not preclude the reasonable inference that United acted in its own interests in the *Plaintiffs'* cases, when it did *not* do so, and then used its own material underpayment of benefits to justify collecting hefty savings fees from the Plaintiffs' plans.

United's next argument for dismissing Plaintiffs' disloyalty claim reveals United's twisted view of its ERISA fiduciary duties. United argues that setting Eligible Expenses for ONET services

using Competitive Fees—that is, determining them in accordance with the plan terms—would

have *violated* United's purported fiduciary duty to "preserve and maintain [plan] assets." Mot. 18.

According to United, it supposedly owes a duty to "the plans and *other* participants" to avoid

"overpaying for certain kinds of claims" that supersedes any duty it owes to the *Plaintiffs* when

determining *their* claims for benefits due under their plans. Mot. 18 (emphasis added). This

argument is wholly untethered from any legal basis and itself violates ERISA.

As a threshold matter, Plaintiffs' claim is that United *underpaid* benefits due under their

plans—*not* that United should have paid *more than* their plans required, as United repeatedly

suggests. Mot. 1, 18.[10] In approving Plaintiffs' claims for benefits, United necessarily conceded

that Plaintiffs received services that were covered under their plans, AC ¶¶ 93, 109, 142, which

also explicitly provide ONET benefits. AC ¶ 37; Ex. 1 at 33; Ex. 2 at 7; Ex. 3 at 7. Plaintiffs did

nothing wrong by obtaining covered services from ONET providers, and there is absolutely no

indication in their plans (or in ERISA) that United has any authority or discretion to disfavor some

participants' otherwise-proper claims for benefits due under their plans—for *any reason*, including

a purported desire somehow to benefit other plan participants or the plans themselves.

Accepting United's argument that it not only had the authority to underpay "certain"

covered claims, but that it owed a fiduciary *duty* to do so, would require the Court to ignore

ERISA's unambiguous mandate that United, as a fiduciary, must discharge its duties "solely in the

interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing

benefits . . . and . . . defraying reasonable expenses of administering the plan." 29 U.S.C.

---

[10] For that reason, the Supreme Court's observation in *Conkright* that ERISA fiduciaries' "duty to all beneficiaries to preserve limited plan assets" helps to prevent "windfalls for particular employees" is irrelevant here. *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) (*see* Mot. 21). Plaintiffs do not seek a "windfall" as United implies.

§ 1104(a)(1)(A).[11] United's argument would allow it to ignore plan terms and underpay benefits otherwise due to Participant A, in order to preserve assets for Participant B; but doing so would violate its fiduciary duties to Participant A, even if it somehow benefited Participant B. United cites no caselaw to support such an absurd interpretation of ERISA.

In any event, for this argument to have any legs, United would require the Court to draw an inference *in United's favor* that only by underpaying Plaintiffs would their plans have enough assets to pay the other participants' benefits.[12] There is absolutely no support in the Complaint (or anywhere else) for that unreasonable inference. And as for the employer-sponsored health plans themselves, they exist *solely* for the purpose of providing benefits to employees, and "one of ERISA's principal purposes" is to make sure that if a worker has been promised a benefit, "he actually will receive it." *Central States*, 472 U.S. at 569.

None of the cases on which United relies supports its argument, either. In *Central States*, for example, the Supreme Court found it proper for the trustee of a multi-employer pension plan to audit a participating employer to verify the employer's required contribution to the plan. 472 U.S. at 572. In so holding, the Court reasoned that the common-law duty of trustees to "to preserve and maintain trust assets" included the obligation to "use reasonable diligence to discover the location of the trust property and to take control of it without unnecessary delay." *Id*. at 572. But the reason trustees have this duty at all is so they can "ensure that a plan receives all funds to which it is entitled" specifically "so that those funds **can be used on behalf of participants and**

---

[11] The fiduciary duty to defray administrative expenses does not suggest any duty to avoid *benefit payments*, as United's argument implies. The statute plainly distinguishes between benefits, which a fiduciary has a duty to "provide," and administrative expenses, which the fiduciary must "defray." 29 U.S.C. § 1104(a)(1)(A).

[12] *See, e.g.*, *Varity*, 516 U.S. at 514 (the reason fiduciary must "take impartial account of the interests of all beneficiaries" is because "[t]he common law of trusts recognizes the need to preserve assets to satisfy future, as well as present, claims."). In *Varity*, moreover, far from holding that a fiduciary has some sort of overriding duty to "preserve plan assets," the Court instead easily found a breach of loyalty where an ERISA fiduciary lied "to save the employer money at the beneficiaries' expense." *Id*. at 506.

**beneficiaries**." *Id.* at 571 (emphasis added).[13] There is absolutely no support in *Central States* for United's perversion of this clear purpose into a duty to hoard plan assets *by underpaying covered claims*.[14]

The facts alleged in the Complaint demonstrate that United has long abused its "Shared Savings" scheme to enrich itself at the expense of plan participants, including Plaintiffs. *See supra* p. 4; *see also*, *e.g.*, AC ¶¶ 74-90. Instead of acting solely in the Plaintiffs' interests and for the exclusive purpose of providing benefits to Plaintiffs when administering their plans, United acted in its own interests by deliberately depressing Eligible Expenses by using a methodology that conflicted with plan terms, for the purpose of maximizing its own "savings fees." *Id.* These well-pleaded factual allegations are more than sufficient to state a claim for breach of loyalty.

     2.     United Breached its Duty to Follow Plan Terms When it
<u>Chose to Use Repricer Data Rather than Competitive Fees</u>

The Complaint also states a plausible claim that United breached its fiduciary duty to adhere to the terms of Plaintiffs' plans. 29 U.S.C. § 1104(a)(1)(D); *see also*, *e.g.*, *McCabe*, 752 F. Supp. 2d at 406 (ERISA "plan fiduciaries are required to perform their duties in accordance with the documents and instruments governing the plan" as "part of the prudent person standard of care imposed by the statute") (quotations omitted). United's first argument—that Plaintiffs seek to hold

---

[13] *Mason Tenders District Council Welfare Fund v. Logic Construction Corp.*, 7 F. Supp. 2d 351, 358 (S.D.N.Y. 1998), which United also cites, Mot. 21, is inapposite for the same reason. The case mentions the "obligation to preserve and maintain trust assets" only in explaining why plan fiduciaries should have access to employer books and records in a creditor's possession. *Mason Tenders*, 7 F. Supp. at 358.

[14] The *McCabe* case, on which United also relies, Mot. 18, is wholly inapposite to this issue. The case contains no discussion whatsoever of any fiduciary duty to preserve plan assets. *See generally*, *McCabe v. Capital Mercury Apparel*, 752 F. Supp. 2d 396 (S.D.N.Y. 2010). Its discussion of a fiduciary's duty to defray reasonable administrative expenses does not suggest any duty to avoid *benefit payments*, as United's argument implies. *Sixty-Five Security Plan* is similarly irrelevant. *Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater N.Y.*, 583 F. Supp. 380, 388 (S.D.N.Y. 1984). There, the court found an impermissible conflict of interest arose from the fact that the plan administrator's fee was calculated as a percentage of all paid claims, creating a perverse incentive to "overspend" plan funds. *Id.* The court did not, however, recognize any freestanding duty to "preserve" plan assets by underpaying benefits otherwise due under the plan terms. The implication, instead, was that Blue Cross had an improper incentive to approve claims that should not have been approved under the plan terms, in order to maximize its fees.

United to "a plan provision that does not exist," Mot. 19—borders on frivolous. Of course the Competitive Fee Term exists; United itself quotes the term in its brief. Mot. 5-6. *See also* AC ¶ 40; Ex. 1 at 34; Ex. 2 at 9; Ex. 3 at 11. The fact that the plans do not specifically reference FAIR Health data is irrelevant. Plaintiffs allege that the plans expressly require United to use "available data resources of competitive fees," AC ¶¶ 40-42, 45; that FAIR Health maintains just such a resource, AC ¶¶ 46-52; that *United* has identified FAIR Health data as an appropriate source of competitive fees, AC ¶¶ 53-56, 69, 73-74; and that United deliberately chose not to use competitive fees in Plaintiffs' cases, disregarding the methodology mandated by their plans. AC ¶¶ 73-74.[15] These allegations easily state a plausible claim that United breached its fiduciary duty. *See, e.g.*, *McCabe*, 752 F. Supp. 2d at 407-08, (ERISA fiduciary would violate duty to follow plan terms if it "were to ignore the mandates set forth" in the plan "and instead use its broad discretion" to carry out its duties).[16]

### 3.   United Breached its Duty of Care by Failing to Ensure Consistency in its Application of the Competitive Fee Term

Plaintiffs further plausibly allege that United breached its duty of care by failing to ensure and verify that it used a consistent approach to determining Eligible Expenses for ONET claims. AC ¶ 186; *see also id.* ¶¶ 64-74. Under ERISA regulations, a plan's claims administration procedures are not "reasonable" unless they ensure that "plan provisions have been applied

---

[15] *Weiss* and *Nerney*, on which United relies, Mot. 19, are inapposite because in both of those cases, the plaintiffs failed to allege a violation of "any express or implied terms" of the plans. *Weiss v. CIGNA Healthcare Inc.*, 972 F. Supp. 748, 755 (S.D.N.Y. 1997); *see also Nerney v. Valente & Sons Repair Shop*, 66 F. 3d 25, 28 (2d Cir. 1995). Unlike those cases, Plaintiffs here do allege that United violated their plans' express terms. These allegations also disprove United's mischaracterization that Plaintiffs contend United has an "obligation independent of the plans to always use FAIR Health rates." Mot. 18.

[16] Contrary to United's argument, Mot. 21, the Court owes no deference to United's tortured attempt to read the unambiguous Competitive Fee Term out of the plans. "If a plan's terms are unambiguous, they must be enforced according to those terms without regard for how the plan administrator has otherwise interpreted the language . . . ." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 687 (2d Cir. 2023). Even if the Competitive Fee Term were ambiguous (it is not), Plaintiffs plausibly allege that United's interpretation was both unreasonable and self-serving.

consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). Yet United regularly gives the very same plan language—the Competitive Fee Term—two different, mutually exclusive meanings for different claims (and sometimes even different portions of the *same* claim). AC ¶¶ 67, 71-72. United's failure to take any steps to prevent these inconsistencies shows the lack of care it devoted to its administration duties.[17] While United absurdly argues that the allegations fail to show that the claimants United treats inconsistently are "similarly situated," Mot. 20, when the question is whether United is interpreting the Competitive Fee Term consistently, *all* claimants whose plans contain the same term are necessarily "similarly situated."

### B.   Count III States a Plausible Claim for Breach of Fiduciary Duty on Behalf of the Plaintiffs' Plans.

#### 1.   United Breached its Duty of Loyalty to the Plaintiffs' Plans by Charging Them Falsified and Unearned "Savings Fees"

United's self-serving "Shared Savings" scheme also breached the fiduciary duties United owes to the Plaintiffs' plans. As described above, United acted in its own interest when it underpaid benefits due to plan participants for the express purpose of generating the "savings fees" that it charged to the plans. *See supra* p. 4. The purported "savings," therefore, rested on a lie: the benefit amounts due to Plaintiffs were governed by the plan terms, AC ¶¶ 40-42, but United did not pay the amount it was supposed to, AC ¶¶ 63, 98, 117, 127, 159, even though it did not obtain any agreement from Plaintiffs' providers to accept a lesser amount in full payment for their services. AC ¶¶ 78, 84, 96, 103, 146.[18] United's failure to pay the benefits due, however, did not erase the

---

[17] United also incorrectly asserts that Plaintiffs must plead a loss to the *plans* in order to assert *their own* duty-of-care claim, but it cites only a case in which the plaintiffs asserted claims under 29 U.S.C. § 1132(a)(2), **on behalf of their plan**. Mot. at 20 (citing *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *6 (S.D.N.Y. Sept. 27, 2019) ("*Cornell III*"); *compare Cornell I*, 2017 WL 4358769, at *2 (noting that plaintiffs bring the action "on behalf of the Plans pursuant to 29 U.S.C. § 1132(a)(2)"). United does not dispute that Plaintiffs adequately alleged that its careless plan administration injured *Plaintiffs*.

[18] United urges the Court to disregard these well-pleaded facts demonstrating that United did not achieve any real savings, arguing that the allegations somehow "put[] out-of-network providers, not plan members, at the center of Plaintiffs' plans." Mot. at 22. Not true. The fact that the providers did not agree to United's unilateral discounts is the

plans' obligations to the Plaintiffs (just as it did not erase the Plaintiffs' obligations to their providers). The plans still owe Plaintiffs the full amount of benefits due under the plan terms. Because there were, in fact, no savings, the plans did not (and do not) owe United any "savings fee" at all. AC ¶¶ 78, 84, 88, 117, 129. By nevertheless charging the plans for unearned "fees," United misappropriated plan assets and caused losses to the plans. AC ¶¶ 4, 88, 116, 128. These facts more than plausibly state a claim that United breached its fiduciary duties to the plans.

United ignores these factual allegations, and instead congratulates itself for "preserving plan assets." Mot. 21. As explained above, United has no authority, let alone a "duty," to "preserve" plan assets by underpaying benefits due. Here, Plaintiffs allege that United took plan assets for itself by charging fees it was not owed for services it did not perform.[19] Siphoning assets out of the plans by charging them unearned fees is the opposite of "preserving plan assets."

2.    United Breached its Fiduciary Duties by Engaging
        in Prohibited Transactions with the Plans

United also argues that Plaintiffs failed to plausibly allege that United engaged in self-interested transactions with the plans in violation of ERISA, 29 U.S.C. § 1106. Mot. 21. Once again, however, United simply ignores Plaintiffs' factual allegations. ERISA prohibits a plan fiduciary from causing a plan to engage in a transaction that "constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," 29 U.S.C. § 1106(a)(1)(D), and also prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).  But that is exactly what Plaintiffs

---

reason United could not charge a fee to the plans; it is what makes the "savings" illusory. Acknowledging that fact does not privilege ONET providers over plan members. The people still on the hook to the providers—because United failed to secure any savings—*are* the plan members.

[19] Plaintiffs do not seek to recover the unearned "savings fees" for themselves, as United suggests. Mot. 22. Rather, Plaintiffs seek an order requiring United to restore its unearned "savings fees" **to the plans**. AC 43 ¶ F.

allege: that United, a party in interest,[20] caused the plans to transfer plan assets to United as a "fee" in exchange for purported "savings" United falsely claimed to have achieved for the plans, *see*, *e.g.*, AC ¶¶ 4, 75-76, 79, 88, and that when United determined the amount of benefits due under the plans (which it used plan assets to pay), United was acting in its own interest by underpaying benefits in order to generate purported "savings fees." *See supra* pp. 4, 7-8.

United's only argument in favor of dismissing the prohibited-transaction claims is that the entirety of Section 1106 "simply is of no relevance" here because "the conduct at issue resulted in preserving plan assets and increasing savings to the plans." Mot. 21.[21] According to United, Section 1106 applies only to "arrangements 'that present a special risk of plan *underfunding*.'" Mot. 21 (original emphasis) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)). But that is not what the statute says. The only exceptions to the prohibitions laid out Section 1106(a)(1)(D) are explicitly enumerated in 29 U.S.C. § 1108. United does not (and cannot) argue that any of those exceptions apply to the conduct alleged here. As for Section 1106(b)(1), the statute does not contemplate any exceptions at all. *See generally* 29 U.S.C. § 1106(b).

Nor did the Supreme Court in *Lockheed* carve any such loophole into ERISA's prohibited transaction provisions. In fact, the sentence United quotes from that decision does not even refer to § 1106(a)(1)(D)—rather, the Court was describing the types of transactions referenced in the *other* subsections of § 1106(a)(1). 517 U.S. at 893 (transactions described in 29 U.S.C. §§ 1106(A), (B), (C), and (E) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length"). What

---

[20] United does not dispute that, as the Claims Administrator for Plaintiffs' plans, United is a "party in interest" for purposes of Section 1106. *See* 29 U.S.C. § 1002(14)(A) (defining "party in interest" with respect to a plan to include "any fiduciary (including, but not limited to, any administrator . . . )").

[21] The quoted sentence refers to "Section 1136," Mot. 21, but Plaintiffs presume that is a typographical error.

those transactions have in common with the transactions prohibited in § 1106(a)(1)(D) is that "they generally involve uses of plan assets that are potentially harmful to the plan." *Id*. Diverting plan assets from their intended use (payment of benefits) to a prohibited use (padding United's profits with unearned and excessive fees) is harmful to the plans and explicitly prohibited by ERISA.

### C.    The Rules Permit Plaintiffs to Plead Claims and Remedies in the Alternative.

United's next argument—that most of Plaintiffs' claims should be dismissed *with prejudice* because they are purportedly "duplicative" of other claims, Mot. 14-16—is also unavailing.

#### 1.    Plaintiffs' Fiduciary Breach Claims are Distinct from their Wrongful Denial of Benefits Claims

United's suggestion that Plaintiffs' substantive claims for wrongful denial of benefits (Count I) and breach of fiduciary duty (Counts II-IV) are impermissibly duplicative, *e.g.*, Mot. 17, 19, is simply incorrect. The two legal theories are distinct; so are the facts underlying the claims. Whereas Plaintiffs' wrongful denial of benefits claim (Count I) seeks to enforce the terms of Plaintiffs' plans, their breach of fiduciary duty claims (Counts II-IV) seek to hold United to ERISA's "strict standards of [fiduciary] conduct," derived from the common law of trusts, which reflect Congress's "policy of assuring the equitable character" of employee benefit plans. *Central States*, 472 U.S. at 570 (cleaned up).[22] And while Count I centers on the written plan language and facts concerning "available data resources of competitive fees," *e.g.*, AC ¶¶ 175-79, the gravamen of the fiduciary breach claims is United's Shared Savings scheme and how it motivated United to manipulate Eligible Expenses and falsify its entitlement to "savings fees" from plans. *See*, *e.g.*,

---

[22] *See*, *e.g.*, *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 84 n.4 (2d Cir. 2001) (characterizing denial of benefits claim as "[e]ssentially" asserting "a contractual right under a benefit plan") (quotation omitted); *Younger v. Zurich Am. Ins. Co.*, 2012 WL 1022326, at *3 (S.D.N.Y. Mar. 26, 2012) ("*Devlin* makes clear that a claim for breach of fiduciary duty is not duplicative of a claim for benefits"); *Gates v. United Health Grp. Inc.*, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012) (holding that a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2) is distinct from other ERISA claims under 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3)).

AC ¶¶ 183-87, 191-93. Accordingly, the four Counts are not mere duplicates of one another, and each of Plaintiffs' distinct legal claims must stand.

2. Plaintiffs Are Entitled to Assert Claims Under Both ERISA
   Sections (a)(1)(B) and (a)(3), Especially in the Alternative

United primarily takes issue with the fact that Plaintiffs pleaded both Counts I and II under two of ERISA's remedial provisions in the alternative. Mot. 14-16; *see also* AC ¶ 174, (invoking both 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3), explicitly in the alternative). Plaintiffs did so because, while the substantive claims asserted in those Counts are cognizable under both sections of ERISA's remedial provision, it is not clear at this early stage whether all remedies necessary and appropriate to provide complete and adequate relief to Plaintiffs are available under both sections. Recognizing that neither the parties nor the Court can fairly determine at the outset of a case exactly what remedies should be awarded if a plaintiff ultimately prevails, Rule 8 explicitly entitles Plaintiffs to plead in the alternative as to the relief they seek. Fed. R. Civ. P. 8(a)(3).

Indeed, this is precisely why the Second Circuit in *NYSPA* explicitly rejected the very argument United makes here, holding that, at the motion to dismiss stage, "it is too early to tell if [plaintiff's] claims under [§ (a)(3)] are in effect repackaged claims under [§ (a)(1)(B)]." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) ("*NYSPA*").[23] United ignores *NYSPA* entirely and fundamentally misrepresents the Supreme Court's holding in *Varity* when it contends that *Varity* "made clear" that plaintiffs could not obtain remedies under § (a)(3) for breaches of fiduciary duty "'with respect to the interpretation of plan documents and

---

[23] *See also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (case cited with approval in *NYSPA*, 798 F.3d at 135) ("To dismiss an ERISA plaintiff's § 1132(a)(3) claim as duplicative at the pleading stage . . . would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate [the Federal Rules of Civil Procedure]."); *Lardo*, 2021 WL 4198233, at *7 (declining to dismiss the plaintiff's breach of fiduciary duty claim under § 1132(a)(3) as duplicative because "at this stage, the Court cannot speculate about what relief, if any, ultimately will be ordered."); *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, 2016 WL 4382709, at *9 (S.D.N.Y. Aug. 16, 2016) (same).

the payment of claims'" because § (a)(1)(B) "'specifically provides'" a remedy for such claims. Mot. 15 (quoting *Varity*, 516 U.S. at 512).[24] Contrary to United's reading of that language as foreclosing § (a)(3) claims any time a plaintiff also asserts a claim under § (a)(1)(B), the Second Circuit instructed more than 20 years ago that *Varity* "did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available." *Devlin*, 274 F.3d at 89–90. All *Varity* did was make clear that, "if a plaintiff 'succeed[s] on both claims. . . the district court's *remedy*" under § (a)(3) "'is limited to such equitable relief as is considered appropriate.'" *NYSPA*, 798 F.3d at 134 (original emphasis) (quoting *Devlin*, 274 F.3d at 89-90).

The Supreme Court's subsequent opinion in *Amara* removed all doubt as to whether ERISA plaintiffs are entitled to plead claims under both § (a)(1)(B) and § (a)(3). *CIGNA Corp. v. Amara,* 563 U.S. 421 (2011). There, the Court found that plan reformation was not an available remedy under § (a)(1)(B), but that it *was* available under § (a)(3)— and the Court had no difficulty issuing that ruling, even though the plaintiffs had also sought an award of benefits due under § (a)(1)(B). 563 U.S. at 440–41; *see also Silva,* 762 F.3d at 727 (*Amara* "addressed the issue in terms of available relief and did not say that plaintiffs would be barred from initially bringing a claim under the [§ (a)(3)] catchall provision simply because they had already brought a claim under the more specific portion of the statute"). It is impossible to square the Court's holding in *Amara* with any rule that would preclude pleading, in the alternative, under both § (a)(1)(B) and § (a)(3).

United also ignores *Amara* entirely and instead relies heavily on Second Circuit cases that pre-date it. Mot. 14-15 (citing, *inter alia*, *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006) and *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)).

---

[24] Furthermore, *Varity* did *not* hold or imply that pleading a claim under § (a)(1)(B) precludes pleading claims under any other provisions. Rather, in the very next sentence, the Court cautioned against reading ERISA too narrowly, explaining that in § (a)(3), "Congress provided yet other remedies for yet other breaches of other sorts of fiduciary obligation in another, 'catchall' remedial section." *Varity*, 516 U.S. at 512.

But those cases do not support United's argument either. *Wilkins* observes that plaintiffs "normally" invoke § (a)(3) "only when relief is not available under" § (a)(1)(B), 445 F.3d at 578, but (contrary to United's misleading assertion, Mot. 14) *Wilkins* does not hold that § (a)(3) claims are *only* proper in those circumstances. As for *Frommert*, the Second Circuit explained that decision in *NYSPA*, making clear that it does not support premature dismissal of § (a)(3) claims:

> . . . we **vacated the district court's dismissal** of the plaintiffs' [§ (a)(3)] breach of fiduciary duty claim on the basis that **dismissal was premature**, and. . . affirmed the dismissal of the plaintiffs' other [§ (a)(3)] claim only after holding that the defendants had violated ERISA, that most plaintiffs were therefore entitled to relief under [§ (a)(1)(B)], and that the remaining plaintiffs' [§ (a)(3)] claim failed on the merits.

*NYSPA*, 798 F.3d at 134 (citing *Frommert*, 433 F.3d at 268–70, 272) (emphasis added).

Nor do the handful of district court cases on which United relies purport to prohibit pleading in the alternative under ERISA.[25] Those cases stand for the unremarkable proposition that because legal relief is not available under § (a)(3), if a plaintiff seeks **only** money damages, and not equitable relief, her claims should ordinarily be asserted under § (a)(1)(B).[26] Because Plaintiffs here seek a combination of legal and equitable remedies, those cases are inapposite.[27]

---

[25] Of course, even if they did so, this Court would still be bound by the directly controlling authority of *NYSPA* and *Amara*. *See*, *e.g.*, *Cunningham v. Cornell Univ.*, 2018 WL 4279466, at *4 (S.D.N.Y. Sept. 6, 2018) ("*Cornell II*") ("Lower courts are constrained to follow directly controlling precedent . . . .") (quotation omitted).

[26] *See Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, 2017 WL 2462675, at *5 (S.D.N.Y. June 7, 2017) (denying pro se plaintiff leave to amend to add § (a)(3) claim where plaintiff conceded that payment of benefits due pursuant to existing § (a)(1)(B) claim would "make her whole" and render her § (a)(3) claim "moot."); *Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, 2020 WL 5659467, at *4 (S.D.N.Y. Sept. 23, 2020) (dismissing § (a)(3) claim seeking "relief to enforce the terms of the Plan/s and to clarify Plaintiff's right to future benefits under such plans"—*i.e.*, "precisely the relief available under" § (a)(1)(B)); *Wegmann v. Young Adult Inst., Inc.*, 2016 WL 827780, at *5 (S.D.N.Y. Mar. 2, 2016) (dismissing § (a)(3) claims where both § (a)(1)(B) and § (a)(3) claims "request money damages in the form of benefits 'due and owing' under the terms of the Plan" and plaintiff did not even "allege any breach of fiduciary duty."); *Biomed Pharms. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 736-37 (S.D.N.Y. 2011) (dismissing § (a)(3) claims where provider plaintiffs' assignments conferred only standing to pursue actions to "recover benefits," "there is no ongoing practice that the Court could possibly enjoin," and the "gravamen" of the claims was "that Oxford improperly denied the Patient benefits").

[27] United's contention that Plaintiffs *only* seek money damages, and *no* equitable relief, Mot. 16, is flat wrong. For one thing, even United concedes that its assertion depends on the Court prematurely dismissing Plaintiffs' prayer for prospective injunctive relief, which the Court should not do, as shown below. *See infra* pp. 27-30. It also ignores the fact that *most* of the remedies available under ERISA—even many forms of monetary relief, like surcharge and some

Finally, United makes the nonsensical argument that permitting Plaintiffs to assert their claims under both § (a)(1)(B) and § (a)(3) would somehow "read[] into the statute additional causes of action." Mot. 15 (quotation omitted). But these sections are obviously already in the statute—which, on its face, does not require a plaintiff to elect just one remedy. *See generally* 29 U.S.C. § 1132(a). Plaintiffs do not seek to read anything into ERISA—but Defendants would have this court read a cause of action *out* of the statute. The Court must not do so.

### D.      Plaintiffs Plausibly Allege that UHG and UHIC Are Co-Fiduciaries of Plaintiffs' Plans.

United concedes that UHS, Inc. and UHS LLC are fiduciaries with respect to Plaintiffs' plans, but contends that Plaintiffs' allegations are insufficient to support the same inference with respect to UHG or UHIC. Mot. 14. Again, United is wrong. The facts alleged in the Complaint are more than enough to support a plausible inference that both UHG and UHIC were fiduciaries with respect to Plaintiffs' plans (and therefore, at a minimum, co-fiduciaries with responsibility for the other fiduciaries' misconduct, *see infra* pp. 22-23).

As alleged, the Plaintiffs' plans appoint "UnitedHealthcare," and not any specific legal entity, as the Claims Administrator with the discretion to make final and binding benefit determinations. AC ¶¶ 25-26; *see also* Ex. 1 at 33; Ex. 2 at 9; Ex. 3 at 10. UnitedHealthcare is a fictitious name under which UHG does business. AC ¶¶ 9-10, 23. Since UHG operates solely through its subsidiaries, AC ¶ 9, and its wholly-owned and controlled subsidiaries exist solely to fulfill UGH's purposes, AC ¶ 14, it is reasonable to infer that UHG subsidiary, UHIC, *also* operates under the name "UnitedHealthcare" and, therefore, was appointed as the Claims Administrator for Plaintiffs' plans. The SPDs, moreover, bear this out. For example, the address

---

forms of restitution—are equitable in nature. *See Amara*, 563 U.S. at 441-42. Nothing in ERISA precludes a Plaintiff from seeking a combination of legal and equitable relief, as Plaintiffs do here.

the Morgan Stanley SPD provides for Claims Administrator "UnitedHealthcare" is the same as

UHIC's business address. AC ¶ 29. The Fresenius Plan, just above the "UnitedHealthcare" logo

on its front page, states that with few exceptions, the plan's provider network "is established by

UnitedHealthcare Insurance Company." Ex. 2 at 1; Ex. 3 at 1. And—in a quintessential exercise

of fiduciary authority and discretion—UHIC was the entity that pre-authorized Mr. Gonzalez's

surgery under the terms of his plan. AC ¶ 30. It is reasonable to infer from these facts that the UHG

subsidiary actually appointed as the Claims Administrator for Plaintiffs' plans was UHIC, and that

UHIC then delegated some of its fiduciary responsibilities to UHS, Inc. and UHS LLC.

United seeks to escape this reasonable inference by raising the pleading standard for

ERISA claims, suggesting that Plaintiffs must be able to allege with particularity which Defendant

carried out which portions of the scheme Plaintiffs allege. Mot. 12-13. But there is no such

heightened pleading standard for ERISA. Quite the contrary, "[w]ith respect to ERISA claims, the

Second Circuit has recognized that 'ERISA plaintiffs generally lack the inside information

necessary to make out their claims in detail unless and until discovery commences.'" *Garthwait v.

Eversource Energy Co.*, 2021 WL 4441939, at *4 (D. Conn. Sept. 28, 2021) (quoting *Pension

Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)). The

lack of information "solely within the knowledge" of the plan administrators is therefore "precisely

the sort of issue that, in an ERISA case, allows a Complaint to survive a motion to dismiss."

*Disberry v. Emp. Rels. Comm. of Colgate-Palmolive Co.,* 2022 WL 17807122, at *14 (S.D.N.Y.

Dec. 19, 2022) (holding that such information "must abide discovery"). That rule is all the more

applicable here, where Plaintiffs plausibly allege that UHG and its subsidiaries deliberately

obscure which entity is appointed as the Claims Administrator and which entities participate in the

administration of plans and claims, precisely for the purpose of avoiding litigation. AC ¶¶ 24-26.

Nor does the mere fact that UHG is the parent of the other Defendants mean it should be immune from discovery into its role in the plans' administration. *See*, *e.g.*, *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757, 760 (D.N.H. 1997) (holding that parent company is a fiduciary under ERISA because its wholly-owned subsidiary had the power to grant or deny health care benefits offered to plans); *compare* AC ¶¶ 9-10, 14, 23, 27-28 (plausibly alleging that UHG, acting through its subsidiaries, participated in administering the Plaintiffs' benefits and exercised complete control over the plans' assets).[28]

### E.   Plaintiffs' Claim for Co-Fiduciary Liability Survives Because Plaintiffs' Breach of Fiduciary Duty Claims Survive.

ERISA not only imposes strict fiduciary duties on the entities that administer ERISA plans, it also makes them responsible for the breaches of their co-fiduciaries if they either knowingly participate in the breach; enable the breach through their own failure to comply with their fiduciary obligations; or know of the breach but fail to remedy it. 29 U.S.C. § 1105(a). The Complaint's factual allegations, and the inferences they create, make it at least plausible that all of the Defendants were fiduciaries who played a role in the administration of Plaintiffs' benefits. *See supra* pp. 20-21. These allegations are more than sufficient to state a claim for co-fiduciary liability. *See*, *e.g.*, *Garthwait*, 2021 WL 4441939, at *10 ("Given the early stage of this litigation and that the Plaintiffs have appropriately alleged an underlying breach of duty, Plaintiffs' allegations are sufficiently plausible to state their [co-fiduciary] recordkeeping claims."); *Falberg v. Goldman Sachs Grp.*, 2020 WL 3893285, at *15 (S.D.N.Y. July 9, 2020) ("Because [p]laintiff's

---

[28] Neither *Bushell* nor *Doe*, cited by United, Mot. 13, analyzed whether the allegations plausibly stated a claim against UHG or UHIC, as co-fiduciaries, under 29 U.S.C. § 1105(a). *Bushell v. UnitedHealth Grp. Inc.,* 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (analyzing sufficiency of allegations against UHG solely with respect to a claim for benefits under § (a)(1)(B)); *Doe v. United Health Grp. Inc.,* 2018 WL 3998022, at *3 (E.D.N.Y. Aug. 20, 2018) (analyzing only "recovery of benefits" claim); *id.* at *4 (not reaching question as to which defendants could be sued for breach of fiduciary duty because misconduct in question was not a fiduciary act). Both cases are inapposite.

other ERISA claims survive [d]efendants' motion . . . [p]laintiff's [co-fiduciary] monitoring claim survives as well."); *see also In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *16 (S.D.N.Y. Aug. 2, 2021). After all, a proper complaint need only allege a claim for relief that is "plausible." *Twombly,* 550 U.S. at 570. Plaintiff's Complaint has certainly met this standard. United, moreover, agrees that Count IV must survive if the breach of fiduciary duty claims survive; it rests its entire argument for dismissal of Count IV solely on its contentions as to Counts II and III. Mot. 22-23.

## III.   United's Affirmative Defenses Provide No Basis for Dismissing any Claims.

United next raises two affirmative defenses as grounds for dismissing portions of Count I: failure to exhaust (as to part of Mr. Gonzalez's claim) and untimeliness (as to Ms. Popovchak's claim).[29] Mot. 9-12. "A complaint may be dismissed on the grounds of an affirmative defense only if the defense appears on the face of the complaint." *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 2017 WL 4023350, at *5 (S.D.N.Y. Sept. 11, 2017) (quotations omitted). In light of the Complaint's allegations, United does not—and cannot—meet its burden as to either defense.

### A.   Plaintiffs Plausibly Allege that Mr. Gonzalez's Claim was Fully Exhausted.

United asks the Court to dismiss Mr. Gonzalez's wrongful denial of benefits claim relating to services provided by his assistant surgeon, based on a purported failure to exhaust administrative remedies. Mot. 11-12; AC ¶¶ 125-39. The Complaint, however, plainly alleges that the claim *was* exhausted. Dr. Frelinghuysen, on Mr. Gonzalez's behalf, filed two administrative appeals challenging United's benefit determination. *See* AC ¶ 130 (first-level appeal submitted on December 30, 2021); *id.* ¶ 134 (second-level appeal submitted on August 16, 2022). No more is

---

[29] *See, e.g., Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006) ("[F]ailure to exhaust ERISA administrative remedies under [§ (a)(1)(B)] is an affirmative defense."); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."); *Kohari v. MetLife Grp., Inc.*, 2022 WL 3029328, at *4 (S.D.N.Y. Aug. 1, 2022) (applying *Staehr* in denying motion to dismiss in ERISA context).

required. *See* 29 C.F.R. § 2560.503-1(c)(2) (plans prohibited from requiring more than two internal appeals of an adverse benefit determination prior to bringing a civil action).[30]

Contrary to United's argument, Mot. 11, the "new EOB" Mr. Gonzalez received *in response* to his second appeal did not change how United determined ONET benefits or otherwise address the central component of the appeal. AC ¶¶ 135-36. The allowed amount for the claim remained fixed at $531.72. AC ¶¶ 136-137. It cannot, therefore, reasonably be considered a new *benefit determination*.[31] As such, it did not re-set the appeals counter at zero, creating a new obligation for Mr. Gonzalez to file still more appeals as to the same benefit claim. If it did, United could easily evade the ERISA claims procedure regulation's two-appeal limit by revising some irrelevant portion of its initial benefit determinations and endlessly forcing participants to start the appeals process anew (in other words, exactly what United is trying to do here). But the regulation specifically forbids "administering" the appeals process "in a way that requires a claimant to file more than two appeals of an adverse benefit determination." 29 C.F.R. § 2560.503-1(c)(2). The rules could not be more clear: United's "new EOB" gambit did not prevent exhaustion of Mr. Gonzalez's claim by his doctor's two appeals.

Because Mr. Gonzalez's administrative remedies had already been exhausted, it is irrelevant that his doctor also attempted to file a third, voluntary, appeal and was thwarted by

---

[30] United also did not cite, describe, or attach the portions of the Fresenius SPD that describe what appeals, if any, the plan requires. *See* Stalinski Decl. at Ex. 2. Nor did United produce those portions of the SPD to Mr. Gonzalez, despite numerous requests. Howard Decl. ¶ 5. Since "exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy," *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993), United's failure even to reference the plan requirements further dooms its motion. *See, e.g.*, *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 38 (S.D.N.Y. 2021) (defendants who "point to no provision of the Plan with which Plaintiffs failed to comply" do not "meet their burden of establishing a failure to exhaust.").

[31] It is of no matter that United slightly reduced Mr. Gonzalez's co-insurance obligation. Mot. 11; AC ¶ 136. Even if that change in Mr. Gonzalez's favor somehow created an additional appealable issue, it did not resolve the issue on which Mr. Gonzalez had already exhausted. And in any event, he was not required to exhaust every issue related to United's determination of the claim. "Courts throughout the nation have uniformly adopted the rule that ERISA requires only claim/remedy exhaustion, not issue exhaustion." *Gannon v. NYSA-ILA Pension Tr. Fund & Plan*, 2011 WL 868713 at *6 (S.D.N.Y. Mar. 11, 2011) (collecting cases).

United's unjustifiable refusal to process the appeal. AC ¶ 138; *see also* Mot. 11. Since the third

appeal was voluntary in any event, Dr. Frelinghuysen had no obligation to keep pursuing it.[32]

Plaintiffs have sufficiently alleged that Mr. Gonzalez's claim was fully exhausted. United's

motion, therefore, has no merit. *See*, *e.g.*, *Med. Soc'y of New York*, 2017 WL 4023350, at *5.

### B.    Plaintiffs Plausibly Allege That Ms. Popovchak's Claims Are Timely.

1.    Ms. Popovchak's Count I Claims Are Not Subject to a Contractual
Limitation Period that United Failed to Disclose in its Denial Letters

ERISA is a remedial statute intended to protect "the interests of participants in employee

benefit plans and their beneficiaries by setting out substantive regulatory requirements for

employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to

the Federal courts.'" *Davila*, 542 U.S. at 208 (alterations in original) (quoting 29 U.S.C.

§ 1001(b)). In furtherance of this purpose, ERISA's implementing regulations provide that when

a claims administrator denies a request for benefits, it must set forth in the EOB a "description of

the plan's review procedures and the time limits applicable to such procedures." *See* 29 C.F.R.

§ 2560.503-1(g)(1)(iv). This is to protect the rights of beneficiaries, such as Ms. Popovchak.

Claims administrators, like United, "are in the best position to know what plan-imposed time limits

apply to the very plans they are charged with administering, and [] the requirement to include such

information in their denial letters imposes upon them the most minimal of burdens." *Santana-Díaz*

*v. Metro. Life Ins. Co.*, 816 F.3d 172, 184 (1st Cir. 2016). As a sister court observed, these

requirements also reflect a practical reality: "plan administrators would have no reason at all to

---

[32] Similarly, because Plaintiffs plausibly pled that Mr. Gonzalez exhausted his appeals, there was no need for them to plead that exhaustion should be excused, as United suggests. Mot. 11. United's rejection of all three Plaintiffs' appeals, however, does demonstrate the futility of asking United to properly apply the Competitive Fee Term; all three Plaintiffs specifically asked for that relief in each of their appeals, and United consistently refused to change its methodology. AC ¶¶ 99-102, 104-105, 118-120, 122-123, 130-132, 134-135, 136-137, 149-153, 155-158, 160-162. When exhaustion is futile, it no longer serves any purpose, and courts "will release the claimant from the requirement." *Murphy Med. Assocs., LLC v. United Med. Res. Inc.*, 2023 WL 2687466, at *6 (D. Conn. Mar. 29, 2023) (quotation omitted) (finding exhaustion futile where claimant received repeated automatic denials).

comply with their obligation to include contractual time limits for judicial review in benefit denial letters" if they were allowed to time-bar claimants without providing the notice ERISA demands. *Li Neuroscience Specialists v. Blue Cross Blue Shield of Massachusetts*, 2019 WL 121673, at \*4 (E.D.N.Y. Jan. 7, 2019) (citing *Mirza v. Ins. Adm'r of Am., Inc.,* 800 F.3d 129, 137 (3d Cir. 2015)). And as the Third Circuit put it, "[w]hich is a claimant more likely to read—a ninety-one page description of the entire plan or a five-page letter that just denied thousands of dollars in requested benefits?" *Mirza,* 800 F.3d at 135.

Here, when United denied Ms. Popovchak's request for benefits, it made no mention of her right to file a civil action and did not disclose the Morgan Stanley Plan's six-month time limit for doing so. AC ¶ 107; Exs. 4-5 (appeal denial letters to Popovchak); *see also* Howard Decl. ¶¶ 6-7.[33] Courts regularly hold that the failure to disclose the time limit ***in the denial letter*** so frustrates ERISA's commitment to effective judicial review that a claims administrator who does not include that information cannot be in "substantial compliance" with ERISA. *See, e.g.*, *Li Neuroscience*, 2019 WL 121673, at \*4.[34] Because United failed to disclose it, the truncated six-month limitations period does not apply; instead, New York's six-year statute of limitations governs. *See* N.Y. C.P.L.R. § 213(2); *Miles v. New York State Teamsters Conf. Pension Plan,* 698 F.2d 593, 598 (2d Cir. 1983) (applying "the six-year limitations period prescribed by New York's C.P.L.R. § 213" to an ERISA benefit claim). United denied Plaintiff's second-level appeal on March 28, 2022, AC ¶ 106, and Plaintiffs filed this lawsuit less than nine months later, on December 21, 2022. ECF No.

---

[33] The Court may consider the denial letters because they are referenced in the Complaint. *See* AC ¶ 101-102, 106. *See Gregory*, 243 F.3d at 691 (cited in Mot. 8).

[34] Although the Second Circuit has not ruled on this issue, appellate and trial courts in other circuits are in consensus. *See, e.g.*, *Santana-Diaz*, 816 F.3d at 184–85 ("[A]s a consequence of MetLife's failure to include the time limit for filing suit in its final denial letter, the limitations period in this case was rendered inapplicable."); *Mirza*, 800 F.3d at 135-36; *Moyer v. Metro. Life Ins. Co*., 762 F.3d 503, 505 (6th Cir. 2014); *Anne A. v. United Healthcare Ins. Co.*, 2022 U.S. Dist. LEXIS 60347, at \*17 (D. Utah Mar. 30, 2022); *Hitchens v. Bd. of Trs.*, 2022 U.S. Dist. LEXIS 172376, at \*23 (D. Del. Sep. 23, 2022).

1. Ms. Popovchak's claim for wrongful denial of benefits is timely.

      2.        **Ms. Popovchak's Breach of Fiduciary Duty Claims Are Subject
to ERISA's Three-Year Statute of Limitations Period**

Even if United could enforce the Morgan Stanley plan's truncated limitations period, it would not affect Ms. Popovchak's statutory breach of fiduciary duty claims, for which ERISA establishes an explicit three-year limitations period that cannot be shortened by contract. *See* 29 U.S.C. § 1113(2). *See Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.,* 1996 WL 497085, at *5 (E.D.N.Y. Aug. 26, 1996) ("Where a limitations period of a group health benefits policy is different from ERISA's, the period established by Congress and ERISA controls."); *Cherochak v. Unum Life Ins. Co. of Am.*, 586 F. Supp. 2d 522, 530 (D.S.C. 2008) ("§ 1113 applies to all claims for a breach of fiduciary duty pursuant to ERISA."); *de Coninck v. Provident Life & Accident Ins. Co.*, 747 F. Supp. 627, 633 (D. Kan. 1990) (same). In any event, the Morgan Stanley Plan does ***not*** shorten ERISA's three-year limitations period for statutory claims. Rather, the SPD states that the six-month contractual limitations period only applies to "a lawsuit to ***recover benefits***." Ex. 1 at 178 (emphasis added). On its face, therefore, the provision excludes Ms. Popovchak's claims for injunctive and other equitable relief for United's fiduciary duty breaches. *See supra* p. 16.

## IV.    **Plaintiffs Plausibly Allege Standing to Seek a Prospective Injunction.**

United next moves, under Rule 12(b)(1), to dismiss Plaintiffs' "claim" for prospective injunctive relief. Mot. 23-25.[35] United argues that Plaintiffs lack Article III standing to seek such

---

[35] Plaintiffs do not assert a standalone "claim" for a permanent injunction, but rather include injunctive relief among several remedies Plaintiffs seek for their substantive ERISA claims, "in such combination as the Court deems most appropriate to fully and adequately remedy United's misconduct." AC 42-43 (Prayer for Relief). What United is really asking the Court to do, therefore, is strike paragraph C of the Prayer for Relief from the Complaint. United does not (and could not) argue that Plaintiffs lack Article III standing to assert their substantive claims for wrongful denial of benefits and breach of fiduciary duty, but seeks only to prematurely curtail the equitable remedies available to the Court in the event those claims are ultimately successful.

relief because they "allege only injury from past denial of benefits," and have not sufficiently alleged "any 'real and immediate' risk of future harm." Mot. 25 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). United is wrong.

When "standing is challenged [] on the basis of the pleadings," the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of Plaintiffs." *Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 227 (2d Cir. 2011) (cleaned up), *aff'd*, 570 U.S. 205 (2013). "[S]tanding allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 401-02 (2d Cir. 2015) (cleaned up). Rather, "general factual allegations . . . may suffice." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (cleaned up). Further, "to establish standing to obtain prospective relief, a plaintiff must show a likelihood that he will be injured in the future." *Taveras v. New York City, New York*, 2023 WL 3026871, at *4 (S.D.N.Y. Apr. 20, 2023) (cleaned up). While allegations as to past injury may not suffice *on their own* to make this showing, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Plaintiffs allege that United injured them by underpaying the benefits due to Plaintiffs under the terms of their plans, shifting to Plaintiffs far greater financial liability to their providers, and making it more difficult for Plaintiffs to satisfy their cost-sharing obligations. *See*, *e.g.*, AC ¶¶ 87, 178, 187. Plaintiffs further allege that their injuries resulted from United's choice to use "Repricer" data to set Eligible Expenses for ONET services under Plaintiffs' plans, *see*, *e.g.*, AC ¶¶ 74, 80, 87, and that United was driven to do so to further its "Shared Savings" scheme, through which it has raked in billions since 2016, *see* AC ¶¶ 5, 75-76, 86, 90, while causing losses to their plans by charging them unearned and unreasonable "savings fees." *See*, *e.g.*, AC ¶¶ 4, 78-80, 84,

88, 98, 116-17, 128-29, 165-66, 171, 192. Plaintiffs are still participants in their plans, AC ¶¶ 6-8, and United's self-serving and unlawful scheme is still ongoing. AC ¶¶ 1, 90. These allegations are more than sufficient to support the plausible inference that Plaintiffs (and their plans) are likely to be harmed in the future by United's continuing misconduct.

To avoid this reasonable inference, United urges the Court to construe the Complaint *against Plaintiffs* and view the alleged misconduct as myopically as possible—ignoring entirely Plaintiffs' allegations about the "Shared Savings" scheme and suggesting Plaintiffs could only be injured again if United underpaid benefits for the very same services from the very same providers in the future. Mot. 22. But the Court must construe the Complaint in *Plaintiffs'* favor, not the other way around. *Alliance for Open Society*, 651 F.3d at 227. The misconduct alleged in the Complaint is in no way limited to Plaintiff's specific services or providers. Instead, Plaintiffs allege a wide-ranging scheme, active for years, through which United regularly manipulates Eligible Expenses to its own advantage. Indeed, the Complaint alleges that United's underpayments pursuant to the scheme are so prevalent that United's "savings" fees—representing roughly one-third of the underpayments—total in the billions of dollars.[36] These well-pleaded facts make it *at least* plausible that there is a "likelihood" that any ONET claims Plaintiffs submit in the future will similarly be subjected to United's ongoing self-serving misconduct.

None of the cases on which United relies supports excising Plaintiffs' claim for injunctive relief from the Complaint. United cites just three ERISA cases analyzing standing to seek prospective injunctions, Mot. 22-23,[37] but none of them considers the sufficiency of allegations

---

[36] These allegations also support the reasonable inference that, notwithstanding United's inconsistent approach to applying the Competitive Fee Term, *see* Mot. 24-25, it is at least plausibly "likely" that Plaintiffs are at risk of future harm. *See*, *e.g.*, *Taveras*, 2023 WL 3026871, at *4 (required showing is "a likelihood" of future injury).

[37] United also cites the Supreme Court's decision in *Thole*, Mot. 23, but that case is inapposite here because the majority did not analyze whether the plaintiffs had standing to seek prospective injunctive relief. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1631 (2020) (Sotomayor, J., dissenting).

comparable to those here. *Meidl* was not even decided on a motion to dismiss, and found a lack of standing based on the plaintiff's ***testimony*** that he had "no plans to seek" the treatment at issue "again in the future." *Meidl v. Aetna, Inc.*, 2017 WL 1831916, at *5 (D. Conn. May 4, 2017). *Bellanger* and *Delgado*, meanwhile, turned on the apparent absence of well-pleaded factual allegations of any ongoing wrongdoing to which the plaintiffs could be subjected. *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (plaintiff failed to allege facts to support allegation that the ERISA violations he alleged were "reasonably likely to continue" and cause additional harm); *Delgado v. ILWU-PMA Welfare Plan*, 2018 WL 8014336, at *3 (C.D. Cal. Nov. 20, 2018) (declining to "assume" that the defendant would "use unlawful practices in denying" plaintiffs' future benefit claims and quoting *Iqbal*, 556 U.S. at 679, for the proposition that a complaint is insufficient if "the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct").[38] Unlike those cases, Plaintiffs here have alleged a clear pattern of misconduct by United that dates back years, is still ongoing, and is still applicable to Plaintiffs. These allegations are sufficient at the pleading stage.

## V.     Plaintiffs Are Entitled to a Trial by Jury on Any Claims Seeking Legal Relief.

The Seventh Amendment right to a jury trial applies to all suits in which ***legal*** (as opposed

---

[38] United's non-ERISA cases are equally distinguishable because they all concerned plaintiffs who were no longer subject to the misconduct they alleged. *See* Mot. 23 (citing cases); *Summers v. Earth Island Institute*, 555 U.S. 488, 494-95 (2009) (no standing to continue challenging regulations after the parties settled their dispute as to the regulatory action that originally gave rise to the threat of future injury); *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *16 (S.D.N.Y. Mar. 22, 2018) (*former* owners of financial instruments subject to defendants' alleged manipulation did not demonstrate future injury, "[b]ut there can be no doubt that *current* [] holders [of the instruments] could assert classwide claims for injunctive relief") (original emphasis).

The law enforcement cases United cites are particularly inapposite. There, the plaintiffs' arguments as to future injury would require the courts to accept a highly speculative chain of inferences that ended with the plaintiffs not only being arrested or charged with a crime, but also subjected to the same unconstitutional misconduct. *See O'Shea*, 414 U.S. at 497 (finding lack of standing to enjoin judges' allegedly illegal bond-setting, sentencing, and jury-fee practices because "attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture."); *Lyons*, 461 U.S. at 105-06 (describing the chain of "incredible assertion[s]" on which the plaintiff's argument as to future injury rested); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (same).

to equitable) rights are at stake, and "extends to causes of action created by Congress." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990). The Supreme Court, accordingly, "has carefully preserved the right to trial by jury where legal rights are at stake." *Id*. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (Court examines "whether [the remedy sought] is legal or equitable in nature" to decide whether there is a right to jury trial).

Although many of ERISA's rights and remedies sound in equity, the Supreme Court's decision in *Great-West Life & Annuity Insurance v. Knudson*, 534 U.S. 204 (2002), "has been interpreted to permit jury trials on ERISA claims when such claims are legal rather than equitable in nature." *See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, 2012 WL 162361, at *5 (D. Conn. Jan. 19, 2012) (discussing *Knudson's* holding that some forms of restitution are legal, rather than equitable, in nature). Following *Knudson*, the Second Circuit later held that the defendants in an ERISA case "were entitled to a jury trial" because the remedy sought against them was legal rather than equitable. *Pereira v. Farace*, 413 F.3d 330, 337-38 (2d Cir. 2005).

When a party demands a jury trial, therefore, courts in this Circuit "must now examine the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Healthcare Strategies,* 2012 WL 162361, at *5 (cleaned up). Applying that standard, several of this Court's sister courts have held that ERISA claims seeking "money damages" are legal in nature, giving rise to a jury trial right. *See*, *e.g.*, *id.* (denying motion to strike jury demand as to request to restore losses to plan from breach of fiduciary duty); *Cornell II*, 2018 WL 4279466, at *4 (same as to "beneficiaries' claim for money damages against the fiduciaries—a legal claim"); *Bona v. Barasch*, 2003 WL 1395932 at *33–34 (S.D.N.Y. Mar. 20, 2003) (same).[39]

---

[39] The *Cornell II* court acknowledged that there is a split within this Circuit on this issue, but nevertheless followed *Pereira*. *Cornell II*, 2018 WL 4279466, at *4 (citing cases).

As in those cases, at least some of the relief Plaintiffs seek in this case would be construed as "legal" under the reasoning of *Knudson* and *Pereira*. *See* AC 42-43 (Prayer for Relief) (seeking, inter alia, "restitution for the losses suffered" as a result of United's misconduct and other forms of money damages). Indeed, United itself even argues that some of Plaintiffs' requested remedies are legal, in its misguided attempt to preclude Plaintiffs' pleading in the alternative. Mot. 16 (arguing that "the use of an equitable label cannot transform claims that are, in essence, legal ones for money damages" into claims for equitable relief) (quotations omitted). Accordingly, Plaintiffs are entitled to a jury trial on those claims. United's argument to the contrary rests solely on a single case, which pre-dates both *Knudson* and *Pereira*. Mot. 25 (citing *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998)). As the *Cornell II* court reasoned, however, "[l]ower courts are constrained" to follow "directly controlling precedent," including, on this issue, the Second Circuit's decision in *Pereira*. 2018 WL 4279466, at *4 (quotation omitted).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny United's Motion to Dismiss.

Date: June 14, 2023                    Respectfully submitted,

                                               */s/ D. Brian Hufford*
                                               D. Brian Hufford, Esq.
                                               Jason S. Cowart, Esq.
                                               **ZUCKERMAN SPAEDER LLP**
                                               485 Madison Avenue, 10th Floor New York, NY 10022
                                               Tel. (212) 704-9600
                                               dbhufford@zuckerman.com
                                               jcowart@zuckerman.com

                                               Caroline E. Reynolds, Esq. (pro hac vice)
                                               Trillium Chang, Esq. (pro hac vice)
                                               **ZUCKERMAN SPAEDER LLP**
                                               1800 M Street, NW, Suite 1000
                                               Washington, DC 20036
                                               Tel. (202) 778-1800

creynolds@zuckerman.com
tchang@zuckerman.com

*Counsel for Plaintiffs*