UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ALEXANDRA POPOVCHAK, OSCAR
GONZALEZ, and MELANIE WEBB, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

   -against-

UNITEDHEALTH GROUP INCORPORATED,
UNITED HEALTHCARE INSURANCE
COMPANY, UNITED HEALTHCARE
SERVICES, INC., and UNITED HEALTHCARE
SERVICE LLC

                   Defendants.
--------------------------------------------------------------x

Case No. 1:22-cv-10756-VEC

**ORAL ARGUMENT REQUESTED**

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  ARGUMENT .......................................................................................................................3

    A.    Plaintiffs Do Not State a Viable Claim for Breach of Fiduciary Duty. ..................3

        1.    Plaintiffs' Fiduciary-Duty Claims in Counts II and III Are Duplicative of Their Benefits Claims in Count I. ......................................3

        2.    Plaintiffs Do Not Allege a Viable Theory of Breach of Fiduciary Duty on Behalf of Themselves or Their Plans. .........................................5

        3.    Plaintiffs Do Not State a Claim for Co-Fiduciary Liability. .......................9

    B.    Plaintiffs' Claims Are Procedurally Defective. .....................................................9

        1.    Popovchak's Claim Is Untimely. ...............................................................9

        2.    Gonzalez Did Not Exhaust His Administrative Remedies. ......................10

    C.    Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC. ...............10

    D.    Plaintiffs Have No Standing to Pursue Prospective Relief. .................................12

    E.    The Court Should Strike Plaintiffs' Jury-Trial Demand. .....................................13

III. CONCLUSION ..................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Benson v. Tiffany & Co.*,
   2021 WL 1864035 (S.D.N.Y. May 10, 2021) ...................................................................... 5

*Bushell v. UnitedHealth Grp. Inc.*,
   2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018) ......................................................... 10, 11, 12

*Cavelli v. New York City Dist. Council of Carpenters*,
   2011 WL 9155793 (E.D.N.Y. Mar. 7, 2011) .................................................................... 11

*In re Citigroup ERISA Litig.*,
   2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ..................................................................... 9

*Disberry v. Emp. Rels. Comm. of Colgate-Palmolive Co.*,
   2022 WL 17807122 (S.D.N.Y. Dec. 19, 2022) ................................................................. 12

*Doe v. United Health Grp. Inc.*,
   2018 WL 3998022 (E.D.N.Y. Aug. 20, 2018) .................................................................. 12

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   496 F. App'x 129 (2d Cir. 2012) ....................................................................................... 10

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ............................................................................................................ 7

*Meidl v. Aetna, Inc.*,
   2017 WL 1831916 (D. Conn. May 4, 2017) .................................................................... 12

*Merryman v. Citigroup, Inc.*,
   2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) .................................................................. 13

*Michael E. Jones, M.D., P.C. v. Aetna, Inc.*,
   2020 WL 5659467 (S.D.N.Y. Sept. 23, 2020) ............................................................... 3, 5

*Nechis v. Oxford Health Plans, Inc.*,
   421 F.3d 96 (2d Cir. 2005) .................................................................................................. 4

*New York State Psychiatric Association, Inc. v. UnitedHealth Group*,
   798 F.3d 125 (2d Cir. 2015) ............................................................................................ 4, 5

*Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*,
   2021 WL 665045 (S.D.N.Y. Feb. 19, 2021) ............................................................... 11, 12

*Patrico v. Voya Fin., Inc.*,
　2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) ................................................................... 8

*Shain v. Ellison*,
　356 F.3d 211 (2d Cir. 2004) ................................................................................... 12, 13

*Soares v. United of Omaha Life Ins. Co.*,
　157 F. Supp. 3d 164 (D. Conn. 2016) ........................................................................ 10

*Tischmann v. ITT/Sheraton Corp.*,
　145 F.3d 561 (2d Cir. 1998) ...................................................................................... 13

*Varity Corp. v. Howe*,
　516 U.S. 489 (1996) ................................................................................................ 4, 6

*Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*,
　2017 WL 2462675 (S.D.N.Y. June 7, 2017) ............................................................. 3, 5

## I. INTRODUCTION

Plaintiffs' amended complaint raises a range of claims based on scattershot and conclusory allegations. But their opposition brief now confirms what this case is really about: "Plaintiffs' claim is that [Defendants] *underpaid* benefits due under their plans." Opp. at 9; *accord id.* at 1–2, 7–8, 10–11, 13–15, 28–29. ERISA's carefully crafted remedial scheme provides a specific cause of action to seek relief for such claims—Section 1132(a)(1)(B)—which Plaintiffs assert in Count I. This Court should dismiss Plaintiffs' procedurally defective and duplicative claims, brought against improper parties, so that the proper parties can litigate the claims for underpaid benefits.

Plaintiffs' opposition offers a winding array of arguments—many buried in their thirty-nine single-spaced footnotes[1]—in an attempt to overcomplicate a straightforward dispute over benefits between Gonzalez and Webb and UHS. Each of these arguments is unavailing.

*First*, Plaintiffs repeat their theory that Defendants violated fiduciary duties by declining to rely exclusively on a reimbursement methodology never mentioned in Plaintiffs' plans, and thereby paying lower benefits to Plaintiffs than they contend they should have been paid under their preferred reimbursement method. This claim completely duplicates Plaintiffs' denial-of-benefits claim in Count I and is barred on that basis alone. Further, Plaintiffs' theory does not make sense. As Plaintiffs would have it, Defendants should have unquestioningly paid potentially exorbitant fees to out-of-network medical providers—draining money from the plans—simply because that is what the providers demanded. But ERISA fiduciaries owe duties to *beneficiaries* and *plans*, not *providers*. Plaintiffs' provider-centric interpretation of fiduciary duties finds no support in the case law or common sense, and thus fails to state a claim.

---

[1] Given the length of Plaintiffs' opposition brief, Defendants cannot feasibly respond to each of Plaintiffs' arguments or fully discuss each of the eighty-two (often inapposite) cited cases. For the avoidance of doubt, Defendants do not concede any points to which they do not respond in this brief, but instead have focused on the core flaws that justify dismissal here.

1

*Second*, Plaintiffs seek to paper over procedural failings in Popovchak's and Gonzalez's claims by asking the Court to credit Plaintiffs' conclusory and counterfactual assurances that such problems simply do not exist. But the procedural flaws—Popovchak's untimeliness and Gonzalez's failure to exhaust administrative remedies for his claims for services from Dr. Frelinghuysen—are apparent from the face of the complaint and documents that Plaintiffs concede are incorporated by reference into the complaint, and thus bar Plaintiffs' claims.

*Third*, Plaintiffs ignore plan language specifying their respective plan administrators and instead improperly group four distinct entities as jointly responsible for *all* claims: UnitedHealth Group Incorporated ("UHG"), UnitedHealthcare Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS Inc."), and United Healthcare Service LLC ("UHS LLC," and together with UHS, Inc., "UHS"). This group-pleading approach has been roundly rejected by courts in this District assessing claims against these same Defendants. The result—dismissal of UHG and UHIC—should be the same here.

*Finally*, Plaintiffs offer shifting arguments as to their purported basis to seek prospective relief and a jury trial. But neither is available for ERISA claims like those Plaintiffs raise here.

The Court should dismiss all of Plaintiffs' claims other than the portions of Count I asserting claims for wrongful denial of benefits against UHS Inc. by Gonzalez (for services from Dr. McCance) and Webb (for services from American Surgical Arts PC). The Court should also strike Plaintiffs' claims for injunctive relief and demand for a jury trial.

## II.  ARGUMENT

A. **Plaintiffs Do Not State a Viable Claim for Breach of Fiduciary Duty.**

   1. **Plaintiffs' Fiduciary-Duty Claims in Counts II and III Are Duplicative of Their Benefits Claims in Count I.**

The law in this District is clear:  Plaintiffs cannot "repackage claims for wrongful denial of benefits . . . as claims for breaches of fiduciary duties." *Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017) (internal quotation marks omitted); Mot. at 14–16.  If a court is faced with such repackaged claims at the pleading stage, the duplicative claim for breach of fiduciary duty "must be dismissed." *Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, 2020 WL 5659467, at *4 (S.D.N.Y. Sept. 23, 2020).

Plaintiffs' claims for breach of fiduciary duty in Counts II and III are nothing more than repackaged claims for wrongful denial of benefits.  Both claims are premised on Defendants' alleged use of "repricer" data, which allegedly "reduced the amount of benefits [Plaintiffs] would receive." FAC ¶¶ 181–87, 189–93.  Indeed, Plaintiffs repeatedly confirm in their opposition that their fiduciary-duty claims are based on their allegation that Defendants "underpaid benefits due." Opp. at 7; *see also id.* at 8, 9, 10, 11, 13, 14, 15.  This is the same alleged conduct and harm underlying Plaintiffs' claim for benefits in Count I:  "underpayment of . . . benefits due." Opp. at 5; *accord* FAC ¶ 175 (alleging Defendants "underpaid the benefits due to Plaintiffs").  Because Plaintiffs' fiduciary-duty claims in Counts II and III address the same alleged conduct as their denial-of-benefits claim in Count I, and seek to remedy the same alleged harm, those claims are duplicative and should be dismissed.

None of Plaintiffs' attempts to differentiate their claims change this commonsense conclusion.  Plaintiffs' primary argument is that the claims are different because the benefits claim "centers on the written plan language" whereas the fiduciary-duty claims concern how Defendants

3

allegedly "manipulate" the plan language describing "Eligible Expenses." Opp. at 16. But this is a distinction without a difference. The "written plan language" that is the subject of Plaintiffs' benefits claim *is* the language describing "Eligible Expenses." Plaintiffs also suggest that the benefits claim "seeks to enforce the terms of Plaintiffs' plans," whereas their fiduciary-duty claims "seek to hold United to ERISA's strict standards of [fiduciary] conduct." *Id.* (internal quotation marks omitted). But once again, the "standard[]" of fiduciary conduct that Plaintiffs seek to enforce here is the payment of benefits according to their (erroneous) interpretation of the terms of their plans. *See* Mot. 14–16. The Supreme Court has made clear that Plaintiffs may not use Section 1132(a)(3) to obtain a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," since Section 1132(a)(1)(B) "specifically provides" for such a remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Attempting to avoid this simple rule, Plaintiffs resort to arguing with strawmen and mischaracterizing caselaw. Plaintiffs contend that a plaintiff is not prohibited, as a general matter, from bringing both Section 1132(a)(1)(B) and (a)(3) claims. Opp. at 17–20. As a general matter, Defendants do not dispute that. What Defendants contend, and what Plaintiffs have failed to meaningfully rebut, is that where a plaintiff's "request for relief involves words of contract rather than those of equity"—here, the terms of Plaintiffs' plans—the relief sought is available through Section 1132(a)(1)(B). *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005).

Moreover, contrary to Plaintiffs' assertions, Opp. at 17, the Second Circuit did not deviate from this rule and forbid dismissal of duplicative claims at the pleading stage in *New York State Psychiatric Association, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015). Instead, the Second Circuit reasoned that "the source of [the plaintiff's] monetary losses" was unclear in that case, so it would be premature to dismiss his fiduciary-duty claims as duplicative. *Id.* at 135. But

4

the Second Circuit made clear that dismissal is appropriate where, as here, "the relief [a plaintiff] seeks is merely monetary compensation resembling legal damages," and expressly reaffirmed *Nechis*. *See id.*

Courts in this District have rejected Plaintiffs' flawed reading of *New York State Psychiatric* and have continued to dismiss duplicative fiduciary-breach claims in the years after that opinion was published. *See, e.g.*, *Benson v. Tiffany & Co.*, 2021 WL 1864035, at *14 (S.D.N.Y. May 10, 2021); *Michael E. Jones*, 2020 WL 5659467, at *4; *Xiaohong Xie*, 2017 WL 2462675, at *5. Because Plaintiffs' fiduciary-duty claims in Counts II and III seek "monetary compensation" for underpaid benefits—the exact relief they seek in Count I—these claims should be dismissed as duplicative under the Second Circuit's reasoning.

### 2. Plaintiffs Do Not Allege a Viable Theory of Breach of Fiduciary Duty on Behalf of Themselves or Their Plans.

Even if Plaintiffs' fiduciary breach claims did not impermissibly duplicate their benefits claims, they still lack merit. The complaint asserts two related claims for breach of fiduciary duty—one on behalf of Plaintiffs, FAC ¶¶ 180–87, and one on behalf of their plans, *id.* ¶¶ 188–93. But both claims boil down to the same basic theory, which is that Defendants breached their fiduciary duties by declining to interpret the terms of the Plaintiffs' plans to require the use of Plaintiffs' preferred reimbursement rate (FAIR Health data) to calculate benefits for out-of-network services, which resulted in lower benefit payments to out-of-network providers and a higher "savings fee" for Defendants. *Compare id.* ¶ 187 (alleging breach in Count II based on contention that Defendants "reduced the amount of benefits . . . so that it could misdirect a portion of those benefits to its own coffers") *with id.* ¶ 193 (alleging breach in Count III based on allegation that Defendants "transferred plan assets to United and the Repricers, rather than those assets being used to pay benefits").

5

Plaintiffs' theory of fiduciary breach fails because it puts *providers'* interests first, ahead of the plan and ahead of plan beneficiaries. UHS does not owe fiduciary duties to providers. Instead, it bears the fiduciary duty to "preserve assets" and consider future claims and beneficiaries. *Varity*, 516 U.S. at 514. As a result, the ERISA "fiduciary obligation . . . does not necessarily favor payment over nonpayment." *Id*. The focus of ERISA is on whether the fiduciary is faithfully applying the plan language and taking an "impartial account" to steward plan assets for "all beneficiaries." *Id*. UHS did just that here by paying benefits according to the terms of the plans and in a way that preserved plan assets, rather than unquestioningly paying potentially exorbitant bills from out-of-network providers. Plaintiffs cannot turn the reasonable conduct of UHS into a breach of fiduciary duty.

Plaintiffs' theory is also unavailing because it is premised on the mistaken assumption that their plans required UHS to look exclusively to FAIR Health data in determining "competitive fees." But this theory finds no support in the written terms of Plaintiffs' plans, which nowhere mention "FAIR Health," let alone mandate it be used to benchmark all claims. Rather, Plaintiffs' plans promise payment for out-of-network services based on "competitive fees" in the relevant area, which is fully disclosed as potentially being less than what would be paid for in-network services, and explicitly reserve to UHS the "discretion and authority to decide . . . how the Eligible Expenses will be determined." Dkt. 43-1 at 33; Dkt. 43-2 at 10; *see also* Mot. at 4–7. This discretion permits UHS to resist the influence of out-of-network providers who may bill far in excess of what is fair for their services in their market, and instead gives UHS the flexibility to select the appropriate reimbursement methodology for any given claim. Any other interpretation of the plans would be illogical and incompatible with ERISA's objectives.

6

Plaintiffs tack on additional arguments in opposition, but each is based on the same atextual and provider-centric interpretation of "competitive fees." For instance, Plaintiffs claim that UHS breached its fiduciary duties because it "underpa[id] benefits in order to generate purported 'savings fees.'" Opp. at 15. But this argument simply illustrates how the fiduciary-breach claims impermissibly duplicate the claim for "underpaid benefits" in Count I. Plaintiffs' contention is that Defendants misapplied the terms of their plans to use repricer data instead of FAIR Health data, which resulted in Plaintiffs receiving less benefits than they contend they are owed. Plaintiffs do not challenge the fact that the Shared Savings Program was fully disclosed in their plans. *See* Mot. at 21 n.3. Nor do they appear to challenge the propriety of that program as a whole, instead challenging only the *amount* of the savings fee collected by UHS, which Plaintiffs claim was too high given what Plaintiffs assert was the impermissible use of repricer data *in violation of the plans' terms*. *See* Opp. at 13; FAC ¶ 80 (alleging that, "by using Repricer methodologies," UHS is "able to collect substantially more money in 'savings fees'"). This argument thus fails for the same reason as Plaintiffs' primary theory—the plans do not obligate Defendants to exclusively use FAIR Health data, which is an argument concerning the interpretation of plan terms in any event, and thus duplicates Count I.

Nor do Plaintiffs succeed in repackaging this argument as a "prohibited transaction" under ERISA Section 1106. As the Supreme Court has made clear, Section 1106 implicates only those transactions "that present a special risk of plan underfunding." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). But the transactions Plaintiffs challenge—UHS's use of repricer data in some instances, which allegedly led to lower benefits awards—*preserved* plan assets. By contrast, Plaintiffs' preferred use of FAIR Health data in all instances would have the effect of ratcheting

7

up payments to out-of-network providers, thus presenting a risk of plan underfunding. The concerns animating Section 1106 are inapplicable here.

Plaintiffs dodge this conclusion by mischaracterizing the Supreme Court's holding in *Lockheed*, claiming that the "underfunding" discussion pertained to all other subsections of Section 1106, but not 1106(a)(1)(D). Opp. at 15. Plaintiffs' reading is not supported by the text of that case, and courts in this District have declined to adopt Plaintiffs' circumscribed view of *Lockheed*. *See, e.g.*, *Patrico v. Voya Fin., Inc.*, 2018 WL 1319028, at *6 (S.D.N.Y. Mar. 13, 2018) (dismissing claim and reasoning that 1106(a), as a whole, concerns risks of "plan underfunding"). This Court should follow suit: Section 1106 is inapplicable here because UHS's alleged conduct preserved plan assets and thus does not (and cannot) present any risk of underfunding.

Finally, Plaintiffs argue that, even if the use of repricer data wasn't unreasonable on its own, the allegedly inconsistent use of that data was impermissible because it treated "similarly situated" beneficiaries differently. *See* Opp. at 12–13. But Plaintiffs—all of whose claims were determined with reference to repricer data, FAC ¶¶ 97, 114, 126, 158—offer no factual allegations suggesting that claims determined using FAIR Health data were "similarly situated." For instance, Plaintiffs offer no allegations describing the medical providers, procedures, locations of the surgeries, or any other details from which the Court could infer that individuals whose claims were determined using FAIR Health data were similarly situated to other claimants, like Plaintiffs, whose claims were determined using repricer data. Further, the plans give UHS "the discretion and authority to decide . . . how the Eligible Expenses will be determined," reflecting that UHS is not obligated to use only Plaintiffs' preferred data in resolving claims. Dkt. 43-1 at 33; Dkt. 43-2 at 10. Plaintiffs appear to acknowledge as much in their opposition, making clear that their "similarly situated" argument is just another way of alleging that "*all* claimants" should have had

8

their claims determined with reference to FAIR Health data. Opp. at 13. This argument thus fails for the same reasons as their other arguments: Based on the face of the plan documents themselves, UHS had no duty to use exclusively FAIR Health data when determining benefit claims.

In sum, Plaintiffs offer no allegations that would permit the Court to plausibly infer a breach of fiduciary duty. UHS had no obligation under the terms of Plaintiffs' plans to use FAIR Health data to reimburse Plaintiffs' claims, let alone to use FAIR Health data in *all* instances, as Plaintiffs demand. The Court should thus dismiss Counts II and III in their entirety.

### 3. Plaintiffs Do Not State a Claim for Co-Fiduciary Liability.

Plaintiffs' co-fiduciary liability claim in Count IV is wholly premised on the fiduciary breaches they allege in Counts II and III. *See* Opp. at 22–23. Because Plaintiffs have not identified a viable theory of fiduciary breach, Count IV also fails to state a claim. *See In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *2 (S.D.N.Y. Aug. 31, 2009) (dismissing claim where "plaintiffs have not identified a fiduciary breach on which to base a claim of co-fiduciary liability"). Moreover, UHG and UHIC are improper defendants, *see* pp. 10–12, *infra*, making this claim superfluous.

## B. Plaintiffs' Claims Are Procedurally Defective.

### 1. Popovchak's Claim Is Untimely.

Popovchak's plan provides that, if a member wishes to challenge the denial of benefits, she must sue within "[s]ix months following the date [her administrative] appeal is denied." Dkt. 25, Ex. 1 at 175. Popovchak's final benefits appeal was denied on March 28, 2022. FAC ¶ 105. Nevertheless, Popovchak did not file a complaint until December 21, 2022—well after the six-month deadline provided in the plan. Her benefits claim should thus be dismissed as untimely.

Popovchak argues that her untimeliness should be excused because she had notice of the limitations period only through her plan—not her explanation of benefits letter. Opp. at 25–27. Although some cases have endorsed this view, the Second Circuit has not. It has held plaintiffs to

9

their contractually-provided limitations period where, as here, counsel had "a copy of the plan containing the unambiguous limitations provision." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 496 F. App'x 129, 130–31 (2d Cir. 2012); *accord Soares v. United of Omaha Life Ins. Co.*, 157 F. Supp. 3d 164, 171–72 (D. Conn. 2016). This makes good sense: The prejudice concerns Popovchak raises are inapplicable here because she was represented by counsel through the administrative-appeal process and relied on plan language in her appeal from the same plan that contains an unambiguous limitations period. *See* FAC ¶¶ 99, 104. With the relevant information in her counsel's possession, Popovchak cannot now claim that she lacked sufficient notice of the limitations period, and her claims should not be equitably tolled.

### 2. Gonzalez Did Not Exhaust His Administrative Remedies.

Gonzalez's plan required him to complete "all required reviews" of his claims before he could "bring any legal action" related to those claims. Dkt. 26-2 at 96. But Gonzalez did not seek *any* review of his claims related to services from Dr. Frelinghuysen *after* he received a new benefits award. FAC ¶ 136; Mot. at 11–12. Although Gonzalez disputes the materiality of the changes between the old and new benefits determination, Dr. Frelinghuysen recognized the need to appeal that new determination. FAC ¶ 138. Yet after United notified Dr. Frelinghuysen as to procedural deficiencies with the appeal, neither he nor Gonzalez is alleged to have taken any action to remedy the deficiencies or otherwise continue pursuing the appeal. Plaintiffs' opposition does not dispute this. *See* Opp. at 23–25. Because Gonzalez did not exhaust his administrative remedies related to his claim for services from Dr. Frelinghuysen, the claim is barred under the plan's terms.

### C. Plaintiffs Have No Standing to Bring Claims Against UHG or UHIC.

There are only four types of entities that may be proper defendants in an ERISA action: "(1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits." *Bushell v. UnitedHealth Grp. Inc.*, 2018 WL

10

1578167, at *8 (S.D.N.Y. Mar. 27, 2018). It is well settled that a plaintiff must provide more than "conclusory allegation[s]" about a defendant's involvement in the claims process, *id.*, and cannot take "a 'group pleading' approach that [does] not bother to distinguish which claims [can] be viably asserted against which defendants," *Cavelli v. New York City Dist. Council of Carpenters*, 2011 WL 9155793, at *12 (E.D.N.Y. Mar. 7, 2011).

The complaint identifies UHS, Inc. and UHS LLC as the "'legal entities' that made the benefit determinations on Plaintiffs' claims"—that is, the claims administrators. FAC ¶ 31. As alleged, they are the only two proper defendants.[2] *See Bushell*, 2018 WL 1578167, at *8. Nevertheless, Plaintiffs contend they may group together their claims against four distinct entities without specifying which entities are liable for which claims. Opp. at 20–22. None of their arguments persuade.

*First*, Plaintiffs offer conclusory assertions about the involvement of UHG and UHIC. Plaintiffs claim that UHG is a parent company that operates through its subsidiaries and cite a decades-old case from the district of New Hampshire to argue that dismissal of a parent company is improper. Opp. at 22. But recent authority from this District makes clear that ERISA does not allow a plaintiff to "sue the parent company of a proper defendant." *Bushell*, 2018 WL 1578167, at *8. Plaintiffs also allege that UHIC is a proper defendant because its business address is listed on Popovchak's (but not Gonzalez's or Webb's) plans. Opp. at 20–21. But simply having an address listed in a plan is not enough to make a party a proper defendant for ERISA claims. *See Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, 2021 WL 665045, at *9

---

[2] Specifically, the complaint alleges that UHS LLC is the claims administrator for Popovchak's plan and that UHS, Inc. is the claims administrator for Gonzalez's and Webb's plan. *See* Mot. at 3–4, 12–14. However, because Popovchak's claims are untimely, *see* pp. 9–10, *supra*, UHC LLC should also be dismissed from this action.

11

(S.D.N.Y. Feb. 19, 2021). To the contrary, Plaintiffs must allege UHIC exercised "total control over the benefits denial process," *id.*, and they have utterly failed to do so here, *see* Mot. at 12–14.

*Second*, Plaintiffs claim that Defendants are trying to "rais[e] the pleading standard" by insisting on more than conclusory allegations about a given Defendant's involvement in the claims process. Opp. at 21. As Plaintiff's own authority makes clear, however, asserting claims "against *all* Defendants generally, without specifying which Defendant in particular engaged in the action giving rise to the alleged breach . . . [is] insufficient to state a claim." *Disberry v. Emp. Rels. Comm. of Colgate-Palmolive Co.*, 2022 WL 17807122, at *13 (S.D.N.Y. Dec. 19, 2022).

*Finally*, Plaintiffs offer a fallback argument that, even if UHG and UHIC are not proper defendants on their own, they should still be liable as "co-fiduciaries with responsibility." Opp. at 20. Their allegations on this point are equally conclusory and fall short of satisfying the plausibility pleading standard. FAC ¶ 197; *see also* p. 9, *supra*.

Courts facing nearly identical allegations about UHG and UHIC (raised by Plaintiffs' counsel in this case) have repeatedly rejected Plaintiffs' arguments and dismissed UHG and UHIC from similar ERISA claims. *See Bushell*, 2018 WL 1578167, at *8–9; *Doe v. United Health Grp. Inc.*, 2018 WL 3998022, at *3–5 (E.D.N.Y. Aug. 20, 2018). This Court should do the same.

D.  **Plaintiffs Have No Standing to Pursue Prospective Relief.**

Plaintiffs "cannot rely on past injury" to seek injunctive relief; instead, they must show they "will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). In the context of ERISA claims, this means pleading sufficient facts—not just "speculat[ion] and conject[ure]"—to "establish a likelihood that the defendants will [similarly handle] claims in the future." *Meidl v. Aetna, Inc.*, 2017 WL 1831916, at *4–5 (D. Conn. May 4, 2017); *see also* Mot. at 23–25. Yet, speculation and conjecture is all Plaintiffs have to offer. Plaintiffs ask the Court to assume that (i) Plaintiffs may someday submit claims for hypothetical out-of-network services;

12

(ii) UHS may use repricer data; (iii) the use of repricer data could, with respect to that hypothetical claim, result in UHS reimbursing the claims at a lower rate than if UHS had used FAIR Health data; and (iv) their hypothetical out-of-network providers could then decide to seek reimbursement from Plaintiffs, potentially causing harm. Seemingly recognizing the tenuousness of this chain of predictions, Plaintiffs pivot to general allegations of a "wide-ranging scheme, active for years" that UHS *sometimes* uses repricer data rather than FAIR Health data. Opp. at 29. But the existence of any scheme or "official policy" is insufficient in of itself to establish a likelihood of *future* injury. *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *15–16 (S.D.N.Y. Mar. 22, 2018) (citing *Shain*, 356 F.3d at 216). Because Plaintiffs offer nothing more than allegations of past injury, the Court should strike their claim for injunctive relief.

E. **The Court Should Strike Plaintiffs' Jury-Trial Demand.**

Because "cases involving ERISA benefits are inherently equitable in nature, not contractual . . . no right to jury trial attaches to such claims." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998). This is such a case. *See* pp. 3–5, *supra*; Mot. at 25. In arguing otherwise, Plaintiffs cite cases where the basis for the plaintiff's claims was something other than underpayment of benefits. *See* Opp. at 31–32. Those cases are inapposite here, where Plaintiffs' claims all point back to the same alleged harm: underpayment of benefits. The Court should strike Plaintiffs' jury-trial demand.

### III.  CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiffs' claims other than those portions of Count I against UHS, Inc. relating to Gonzalez's benefits claim for services from Dr. McCance and Webb's benefits claim for services from American Surgical Arts PC. Defendants also ask the Court to strike Plaintiffs' claim for injunctive relief and jury-trial demand.

Dated:  June 28, 2023　　　　　　　　By: */s/ James L. Hallowell*

GIBSON, DUNN & CRUTCHER LLP

James L. Hallowell
200 Park Avenue
New York, NY 10166
Telephone: 212.351.3804
JHallowell@gibsondunn.com

Heather L. Richardson (*pro hac vice*)
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7409
HRichardson@gibsondunn.com
LBlas@gibsondunn.com

*Attorneys for Defendants*

14