USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/19/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALEXANDRA POPOVCHAK, OSCAR          :
GONZALEZ, AND MELANIE WEBB,         :
individually and on behalf of all others similarly   :
situated,                           :
                                    :          22-CV-10756 (VEC)
                        Plaintiffs, :
        -against-                   :          OPINION & ORDER
                                    :
                                    :
UNITEDHEALTH GROUP INCORPORATED,    :
UNITED HEALTHCARE INSURANCE         :
COMPANY, UNITED HEALTHCARE          :
SERVICES, INC., AND UNITEDHEALTHCARE :
SERVICE LLC,                        :
                                    :
                                    :
                        Defendants. :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiffs are beneficiaries of private health benefit plans governed by the Employee

Retirement Income Security Act of 1974 ("ERISA") and administered by certain Defendants.

Plaintiffs allege that Defendants failed adequately to reimburse Plaintiffs for medical services in

violation of plan terms and their fiduciary duties.  The gravamen of Plaintiffs' claims for breach

of fiduciary duty is that Defendants charged the plans "savings fees" that they had not earned to

enrich themselves at Plaintiffs' and the plans' expense.  *See generally* Am. Compl., Dkt. 35.

Plaintiffs bring claims for benefits under ERISA Section 502(a)(1)(B) or (a)(3) ("Count I");

breach of fiduciary duty pursuant to Section 502(a)(3) or (a)(1)(B) ("Count II"); breach of

fiduciary duty and self-dealing pursuant to Section 502(a)(2) ("Count III"); and for co-fiduciary

liability pursuant to Section 405(a) ("Count IV").  Defendants moved to dismiss all but part of

Count I pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs. Not. of

Mot., Dkt. 38.  For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Alexandra Popovchak ("Popovchak") is a beneficiary of a self-funded health benefit plan[2] sponsored by Morgan Stanley (the "Morgan Stanley Plan").  Am. Compl. ¶ 6; *see also* Morgan Stanley Plan Summary, Dkt. 43-1.  Oscar Gonzalez ("Gonzalez") and Melanie Webb ("Webb") are beneficiaries of a self-funded health benefit plan sponsored by Fresenius Medical Care (the "Fresenius Plan").  Am. Compl. ¶¶ 7–8; *see also* Fresenius Plan Summary, Dkt. 43-2. The Morgan Stanley Plan and the Fresenius Plan (together, "the Plans") are governed by ERISA. *See* Am. Compl. ¶¶ 6–7; Defs. Mem., Dkt. 40, at 1.

UnitedHealth Group Incorporated ("UHG") is a healthcare company that operates through subsidiaries including United Healthcare Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS Inc."), and UnitedHealthcare Service LLC ("UHS LLC") (together, "Defendants").  Am. Compl. ¶ 9.  UHG's subsidiaries fulfill the purposes, goals, and policies of their parent.  *Id.* ¶ 14.

UHG, acting through its subsidiaries, is the claims administrator for the Plans.  *Id.* ¶ 23. As a claims administrator, UHG determines coverage and benefits pursuant to the Plans' written terms and uses Plan assets to pay benefits for covered healthcare expenses and to defray reasonable administrative expenses.  *Id.* ¶ 21.

---

[1]     For the purposes of this motion, the Court treats the facts alleged in the Amended Complaint as true.  The Court also considers the plan summaries and letters referenced in the Amended Complaint.  *See Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015).

[2]     A self-funded plan's assets are comprised of contributions from the plan sponsor and payroll contributions from participating employees.  Each self-funded plan pays its administrator an administrative services fee.  *See* Am. Compl., Dkt. 35, ¶ 22.

UHG, acting through its subsidiaries, exercises complete control over the bank accounts holding the Plans' assets, unilaterally determines the amount of benefits each plan will pay for covered services, and makes benefit payments on behalf of the Plans.  *Id.* ¶ 27.  According to Plaintiffs, Defendants each participated in administering Plaintiffs' benefits and exercised discretionary authority with respect to Plaintiffs' benefits claims.  *Id.* ¶ 28.[3]

The Plans cover healthcare services received from providers; some providers participate in Defendants' network ("Network Providers") and others do not ("Out-of-network Providers").  *Id.* ¶¶ 36–37.  Network Providers agree to accept reimbursement rates set by Defendants for the covered healthcare services they provide and promise not to bill plan patients for more than those agreed-upon rates.  *Id.* ¶ 36.  Out-of-network Providers do not have any ongoing contractual relationship with Defendants.  *Id.* ¶ 37.  They bill their patients as they see fit; Defendants then determine how much of that billed charge is covered under the terms of the relevant plan.  *Id.*

The Plans provide that they will reimburse Plaintiffs a particular percentage of the Eligible Expenses for each covered health service listed in the Plans.  *Id.* ¶ 38.  The Plans' summary plan descriptions give "UnitedHealthCare," one of UHG's primary businesses, the discretion to determine Eligible Expenses consistent with Plan terms and applicable law.  *Id.* ¶¶ 10, 39.

Under the Plans, Eligible Expenses for Out-of-network services are "determined based on available data resources of competitive fees in [the 80th percentile of the] geographic area" in which the service is provided.  *Id.* ¶¶ 40, 69.  Defendants may also determine Eligible Expenses

---

[3]     In support of this assertion, Plaintiffs allege that: the Morgan Stanley Plan's summary plan description lists UHIC's business address as the claim administrator's address, *id.* ¶ 29; UHIC pre-authorized Gonzalez's surgery as medically necessary under the Fresenius Plan, *id.* ¶ 30; and in correspondence with Plaintiffs, Defendants identified UHS Inc. and UHS LLC as the legal entities that made benefit determinations on Plaintiffs' claims and that decided their administrative appeals, *id.* ¶¶ 31, 101, 105, 119, 123, 131, 152, 162.

using "a gap methodology established by *OptumInsight* and/or a third party vendor that uses a relative value scale or similar methodology." *Id.* ¶ 42.  The amount of any Out-of-network Provider's bill that exceeds Eligible Expenses is not covered by the Plans.  *Id.* ¶ 43.  Instead, the Plan member is responsible for payment.  *Id.* ¶ 44.  Defendants have "the discretion and authority to decide . . .  how the Eligible Expenses will be determined and otherwise covered" under the Plans.  Fresenius Plan Summary at 10; *see also* Morgan Stanley Plan Summary at 33.

The Morgan Stanley Plan summary provides, in relevant part, that plan members "may not bring a lawsuit to recover benefits under a benefit plan until [they] have exhausted the plan's administrative process . . . . If [the claimant's] appeal is denied, [the claimant] [has] the right to file a lawsuit under ERISA, if it is within the earliest of: Six months following the date [their] appeal is denied . . . ."  Morgan Stanley Plan Summary at 175.

The Fresenius Plan summary provides in relevant part that plan members "cannot bring any legal action" against the claims administrator until "all required reviews of [their] claim have been completed."  Fresenius Plan Summary at 96.

## I.    Defendants' Allegedly Improper Calculation of Eligible Expenses

Plaintiffs take issue with how Defendants calculate Eligible Expenses.  According to Plaintiffs, the Plans require Defendants to review "the actual amounts billed by providers in the same geographic area for the same service" and to set Eligible Expenses at a "competitive" level relative to those fees.  Am. Compl. ¶ 45.  Defendants "regularly use[]" at least one reliable public database of providers' actual billed charges to determine Eligible Expenses: FAIR Health charge data.  *Id.* ¶ 46.  FAIR Health is a nonprofit that collects data from insurance companies, health care plans, and healthcare providers around the country; its database "is a reliable source of accurate information on providers' actual, non-discounted fees."  *Id.* ¶¶ 47, 50, 54.  Defendants

sell FAIR Health data to providers.  *Id.* ¶ 55.[4]  FAIR Health's database is not the only source of healthcare billing in the open market.  *Id.* ¶ 52.

Despite generally using FAIR Health data to determine Eligible Expenses, Defendants have "increasingly" relied on data from "Repricers" to determine Eligible Expenses.  *Id.* ¶ 57. Repricers are for-profit companies that help insurance providers and claims administrators "reprice" non-contracted charges.  *Id.* ¶ 58.  Repricers use proprietary methodologies to "select a new, lower amount" for Eligible Expenses instead of an Out-of-network Provider's actual billed charge or a "competitive rate" in the provider's geographic region.  *Id.* ¶¶ 58–60.  Repricers' methodologies are "designed to reduce reimbursement amounts" because they use data reflecting reimbursement rates paid by insurers and claims administrators for services "*after* imposing or negotiating deep discounts."  *Id.* ¶ 62.  According to Plaintiffs, the Plans do not allow Defendants to use data from Repricers when data on providers' actual fees is available.  *Id.* ¶ 61.

Although Defendants' default is to use FAIR Health data to determine Eligible Expenses, in "many other instances," contrary to the Plans' written terms and the best interests of Plan members, Defendants use data from Repricers instead.  *Id.* ¶¶ 66–74.

## II.    Defendants' Savings Fee Scheme

Plaintiffs maintain that Defendants orchestrated a savings fee scheme to benefit from their use of Repricers.  *Id.* ¶¶ 74–90.  Around 2016, Defendants[5] represented to the Plans that they would secure discounts from Out-of-network Providers and relieve Plan members of financial liability for the full amount of an Out-of-network Provider's billed charge if the Plans

---

[4]    Defendants have purportedly asserted that failing to use this data could "cost a practice thousands of dollars each year" by causing providers to charge "underpriced fees"; relying on national averages rather than data for the provider's geographic location "could result in underpayments."  *Id.* ¶ 56.

[5]    As discussed *infra*, Discussion Part V, the Amended Complaint engages in group pleading.  It is impossible to tell from the Amended Complaint which Defendant made representations regarding the savings program.

signed up for Defendants' "Shared Savings Program." *Id.* ¶ 76.  Under that program, Defendants

purportedly secure discounts by negotiating with Out-of-network Providers. *Id.* ¶¶ 76–77.  In

exchange, Defendants charge the Plans a percentage of the difference between the Out-of-

network Provider's full billed charge and the Eligible Expenses as a "savings fee." *Id.* ¶ 79.

Using data from Repricers ensures more generous savings fees for Defendants because the

Repricer rate is "usually a fraction" of the fees Out-of-network Providers actually charge.  *Id.*

¶ 80.[6]

Although Defendants represented that they would negotiate discounts from Out-of-

Network Providers, Plaintiffs' Out-of-network Providers did not agree to accept discounted fees.

*Id.* ¶¶ 78, 84.  Despite Defendants' representations that the plan member is not financially

responsible for the unpaid fees, Plaintiffs were required to pay for services not paid by the Plan.

*Id.* ¶¶ 84–85, 88.[7]

### III.     Popovchak's Claim

On December 29, 2020, Popovchak received a covered emergency procedure from an

Out-of-Network Provider: Dr. Emil Shakov ("Dr. Shakov").  *Id.* ¶¶ 91, 93.  Dr. Shakov billed

$36,569.80 and submitted a claim for that amount to Defendants on Popovchak's behalf.  *Id.*

¶ 92.

---

[6]     According to Plaintiffs, by encouraging Out-of-network Providers to set their billed charges using FAIR Health data and then setting Eligible Expenses at the lower amount suggested by the Repricer data, Defendants create a delta in fees on which they can collect a savings fee. *Id.* ¶ 83.

[7]     As alleged in the Amended Complaint, Defendants were not consistent in their communications with Plaintiffs.  In the initial explanation of benefits, Defendants informed the Plan participants, in substance, that if the participant was asked by the provider to pay more than the deductible, co-pay and co-insurance, that the participant should call "Data iSight."  According to the explanation of benefits, Data iSight would work with the provider on the participant's behalf.  The explanation acknowledged that the provider might bill the participant for the difference between the amount billed and the amount allowed.  *See* Am. Compl. ¶¶ 97, 113, 147.  In the decisions on Plaintiffs appeals, on the other hand, Defendants affirmatively represented that the provider in question had agreed to accept the lower amount and that the participant was responsible only for the deductible, co-pay and co-insurance.  *See id.* ¶¶ 102, 120, 153.

Defendants allowed $1,031.91 for the procedure, of which Defendants paid $925.32. *Id.*

¶ 94.  Although UHS LLC reported that Popovchak was only responsible for $16,106.59,

because Defendants had not negotiated a reduced charge with Dr. Shakov, Plaintiff owed the

provider $35,537.89 — the entire difference between the $925.32 Defendants paid and the full

billed charge. *Id.* ¶¶ 95–96.  Defendants determined Eligible Expenses for the procedure based

on data from a Repricer. *Id.* ¶ 97.  If Defendants had used FAIR Health data instead, Eligible

Expenses for the procedure would have been $29,884.00. *Id.* ¶ 98.

On December 4, 2021, Defendants denied Popovchak's administrative appeal of their

benefits decision. *Id.* ¶¶ 99–101.  Defendants asserted that Popovchak's claim had been

reimbursed using Repricer data, that the "discount shown" was Popovchak's "savings," and that

she only needed to pay the co-insurance, co-payment, and deductible listed in her explanation of

benefits. *Id.* ¶ 102.  This response was "false and misleading" because Dr. Shakov "never agreed

to any 'discount'" (resulting in no "savings"). *Id.* ¶ 103.[8]  Popovchak remains responsible for

$35,537.89 in unpaid fees to her doctor. *Id.* ¶ 103.

**IV.    Gonzalez's Claim**

On May 19, 2021, Gonzalez received covered surgery from Out-of-network Providers:

Dr. Sean McCance ("Dr. McCance") and Dr. Peter Frelinghuysen ("Dr. Frelinghuysen"). *Id.*

¶¶ 108–09.  Dr. McCance billed $54,000 and Dr. Frelinghuysen billed $27,500; both providers

submitted benefits claims to Defendants on Gonzalez's behalf. *Id.* ¶¶ 110–11.

---

[8]       On March 28, 2022, Defendants denied Popovchak's second-level administrative appeal. *Id.* ¶ 105.  None of Defendants' letters to Popovchak stated that her plan imposed a six-month statute of limitations period on any ERISA claims resulting from their decision. *Id.* ¶ 107.

### A.  Dr. McCance

Defendants allowed $2,658.62 of Dr. McCance's bill, of which Defendants paid $1,595.18.  *Id.* ¶ 112.  Defendants determined Eligible Expenses for the procedure based on data from a Repricer.  *Id.* ¶¶ 113–14.  If Defendants had used FAIR Health data instead, Eligible Expenses for the procedure would have been approximately $55,499.99.  *Id.* ¶ 115.  Plaintiffs allege, on information and belief, that Defendants charged the Fresenius Plan a purported savings fee even though Defendants did not secure savings from Dr. McCance.  *Id.* ¶¶ 116, 121.[9]

On June 21, 2022, Defendants denied Gonzalez's administrative appeal of their benefits decision.  *Id.* ¶ 119.  Defendants asserted that Gonzalez's claim had been reimbursed using Repricer data, that the "discount shown" was Gonzalez's "savings," and that he only needed to pay the co-insurance, co-payment, and deductible listed in his explanation of benefits.  *Id.* ¶ 120.  This response was "false and misleading" because Dr. McCance "never agreed to any 'discount'" (resulting in no "savings").  *Id.* ¶ 121.[10]  Gonzalez remains responsible for $52,404.82 in unpaid fees to Dr. McCance.  *Id.* ¶ 121.

### B.  Dr. Frelinghuysen

Defendants allowed $531.72 of Dr. Frelinghuysen's bill, of which Defendants paid $319.03.  *Id.* ¶ 125.  Defendants determined Eligible Expenses for the procedure based on data from a Repricer.  *Id.* ¶ 126.  Plaintiffs allege, on information and belief, that Defendants charged

---

[9]     If Defendants had used FAIR Health data, they would not have been able to charge a savings fee because the entirety of Dr. McCance's billed charge would have been an Eligible Expense under the Fresenius Plan.  *Id.* ¶ 117.

[10]     On September 8, 2022, Defendants denied Gonzalez's second-level administrative appeal.  *Id.* ¶ 123.

the Fresenius Plan a purported savings fee even though Defendants did not secure savings from Gonzalez's provider.  *Id.* ¶¶ 128, 133.[11]

On December 30, 2021, Dr. Frelinghuysen filed an administrative appeal on Gonzalez's behalf challenging Defendants' use of Repricer data and arguing that Defendants should have used FAIR Health data to determine Eligible Expenses instead.  *Id.*  On July 5, 2022, Defendants denied the appeal.  *Id.* ¶ 131.  Defendants asserted that Gonzalez's claim had been reimbursed using Repricer data, that the "discount shown" was Gonzalez's "savings," and that he only needed to pay the co-insurance, co-payment, and deductible listed in his explanation of benefits.  *Id.* ¶ 132.  This response was "false and misleading" because Dr. Frelinghuysen "never agreed to any 'discount'" (resulting in no "savings").  *Id.* ¶ 133.

On August 16, 2022, Gonzalez filed a second-level administrative appeal.  *Id.* ¶ 134.  On September 16, 2022, UHS Inc. responded (without providing further information) that it would "process" the claim "accordingly."  *Id.* ¶ 135.  On September 23, 2022, Gonzalez received a new explanation of benefits, revising Gonzalez's co-insurance obligation from $212.69 to $106.35.  *Id.* ¶ 136.[12]  Gonzalez remains responsible for any unpaid fees to Dr. Frelinghuysen.  *Id.* ¶ 133.

## V. Webb's Claim

On March 14, 2020, Webb received covered surgery from an Out-of-network Provider: Dr. Sean Bidic ("Dr. Bidic").  *Id.* ¶¶ 140, 142.  Dr. Bidic billed $16,513.00 and submitted a claim for that amount to Defendants on Webb's behalf.  *Id.* ¶ 141.

---

[11]     If Defendants had used FAIR Health data instead, the entirety of Dr. Frelinghuysen's billed charge would have been an Eligible Expense under the Fresenius Plan, and Defendants would not have been able to charge a savings fee.  *Id.* ¶¶ 127, 129.

[12]     The explanation of benefits did not change any aspects of UHS Inc.'s initial benefits determination that Gonzalez had challenged.  *Id.* ¶ 137.  On October 19, 2022, Dr. Frelinghuysen submitted a third administrative appeal repeating the same arguments asserted in the first two appeals.  *Id.* ¶ 138.  Defendants refused to process the appeal, asserting that Gonzalez needed to submit a form to be represented by counsel.  *Id.*

Defendants allowed $2,664.38 for the procedure, of which Defendants paid $211.92. *Id.*
¶ 143. Although UHS Inc. reported that Webb was only responsible for $5,664.10, Webb owed
Dr. Bidic $16,301.08 — the entire difference between the $211.92 Defendants paid and the full
billed charge. *Id.* ¶ 144. Defendants falsely represented that they had negotiated a "discount"
with Dr. Bidic. *Id.* ¶¶ 145–46. Defendants determined Eligible Expenses for the procedure
based on data from a Repricer. *Id.* ¶ 147.

Defendants did not respond to Webb's April 12, 2021, administrative appeal of their
benefits determination. *Id.* ¶¶ 149–50. On June 9, 2022, Defendants denied Webb's second-
level administrative appeal. *Id.* ¶ 152. Defendants asserted that Webb's claim had been
reimbursed using Repricer data, that the "discount shown" was Webb's "savings," and that she
only needed to pay the co-insurance, co-payment, and deductible listed in her explanation of
benefits. *Id.* ¶ 153. This response was "false and misleading" because Dr. Bidic "never agreed
to any 'discount'" (resulting in no "savings"). *Id.* ¶ 121.

Following another appeal, on October 10, 2022, UHS Inc. revised Webb's insurance
obligation upward from $5,664.10 to $6,463.41, again using Repricer data to determine Eligible
Expenses. *Id.* ¶¶ 157–58. If Defendants had used FAIR Health data instead, Eligible Expenses
for the procedure would have been $5,839.38. *Id.* ¶ 159.[13] Webb remains responsible for any
unpaid fees to Dr. Bidic. *Id.* ¶ 154.

## DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)
when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v.
Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quotation omitted). "An

---

[13]     On January 6, 2023, Defendants denied a further administrative appeal. *Id.* ¶ 162.

objection to standing is properly made on a Rule 12(b)(1) motion." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (citation omitted).  A court considering a Rule 12(b)(1) motion may consider evidence outside of the pleadings to determine whether subject-matter jurisdiction exists.  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## I.   Count I: Popovchak's Claim for Benefits Under Section 502(a)(1)(B) or (a)(3) is Timely

Because Defendants failed substantially to comply with ERISA's written notice requirements, New York's six-year statute of limitations period for breach-of-contract claims applies to Popovchak's benefits claim, not the Morgan Stanley Plan's six-month limitations period.  Popovchak's claim is therefore timely.

A.      **Legal Standard**

ERISA does not include a statute of limitations period for benefits claims under Sections 502(a)(1)(B) and (a)(3).  *See Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012).

Courts must generally enforce an ERISA policy's contractual limitations period unless the period is "unreasonably short" or a "controlling statute" precludes the provision from taking effect.  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013).[14]  In the absence of a contractual limitations period, courts apply the limitations period specified in the "most nearly analogous . . . limitations statute" of the forum state: the limitations period for breach-of-contract claims.  *Muto*, 668 F.3d at 57.  If a "nonresident plaintiff"[15] brings a cause of action that arose outside of New York, the court must apply the shorter limitations period of either New York or the state in which the cause of action accrued.  *Id.* (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)).  The statute of limitations period for breach-of-contract claims in New York is six years.  *See* N.Y. C.P.L.R. § 213(2).

Department of Labor ("DOL") regulations, promulgated pursuant to 29 U.S.C. § 1133, require every employee benefit plan governed by ERISA to "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations."  29 C.F.R. § 2560.503–1(b).  A plan's procedures are only "reasonable" if, *inter alia*, the plan administrator:

---

[14]     Plaintiffs do not dispute that the six-month limitations period in the Morgan Stanley Plan satisfies those conditions.  A six-month limitations period is within the realm of what is reasonable, *see Tuminello v. Aetna Life Ins. Co.*, No. 13-CV-938 (KBF), 2014 WL 572367, at *2 (S.D.N.Y. Feb. 14, 2014) (deeming a contractual limitations period of "approximately nine months" to bring an ERISA claim reasonable); *cf. Wechsler v. HSBC Bank USA, N.A.*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *2 (S.D.N.Y. Apr. 26, 2016) (noting that six-month contractual limitations periods have "consistently" been deemed reasonable under New York law), and the Court is not aware of any ERISA provision precluding this limitations period, *see Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109, 111–12 (2013) (concluding that a contractual limitations period that gave the plaintiff "approximately one year" to file an ERISA lawsuit did not "undermine" ERISA's remedial scheme).

[15]     Popovchak resides in New Jersey.  Am. Compl. ¶ 6.

> shall provide a claimant with written or electronic notification of any adverse benefit determination . . .  set[ting] forth, in a manner calculated to be understood by the claimant . . . (iv)[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

*Id.* § 2560.503–1(g)(1).

A written notice of denial that "fails to substantially comply with these requirements does not trigger a time bar contained within the plan."  *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107–08 (2d Cir. 2003) (citation omitted).

## B. Application

The parties do not dispute that the contractual limitations period for bringing ERISA claims to recover benefits under the Morgan Stanley Plan is six months following the denial of a claimant's administrative appeal.  *See* Morgan Stanley Plan Summary at 175.  Popovchak's second administrative appeal was denied on March 28, 2022.  *See* Am. Compl. ¶ 105. Popovchak brought this action almost nine months later, on December 21, 2022.  *See* Compl., Dkt. 1.  Her claim for benefits under Section 502(a)(1)(B) or (a)(3) is, therefore, untimely if the contractual limitations period applies.

Plaintiffs argue that the six-month limitations period does not apply because Defendants failed to state the applicable limitations period in their letter denying her appeal, thus failing substantially to comply with DOL regulations.  *See* Pls. Mem., Dkt. 49, at 25–27.  Instead of addressing Plaintiffs' argument, Defendants assert that the contractual limitations period cannot be *equitably tolled* because Popovchak's counsel had a copy of the Morgan Stanley Plan setting forth the six-month limitations period; Popovchak, therefore, had actual knowledge of the right

to sue and the time period within which she must do so.  *See* Defs. Reply Mem., Dkt. 53, at 9–10.[16]

The Court agrees with Plaintiffs.  Applicable DOL regulations require a plan administrator to provide "written or electronic notification" of any adverse benefit determination setting forth, as relevant here, "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA] . . . ."  29 C.F.R. § 560.503–1(g)(1).[17]

Because Defendants failed to include the applicable six-month limitations period in their denial letter to Popovchak, they "fail[ed] to substantially comply" with DOL notice requirements.  *Burke*, 336 F.3d at 107–09 (refusing to enforce the limitations period to file administrative appeals under an ERISA plan because the denial letter "d[id] not expressly say" that the plaintiff had ninety days to appeal even though "materials accompanying the letter" did set forth the limitations period).  The Morgan Stanley Plan's six-month limitations period was,

---

[16]     A plan administrator's failure to provide adequate notice of a limitations period governing ERISA claims may justify equitably tolling the contractual limitations period; such an "extraordinary remedy" is not appropriate, however, if the claimant "has actual knowledge of the right to bring a judicial action challenging the denial of her benefits . . . ."  *Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 325–26 (2d Cir. 2004); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 496 F. App'x 129, 130–31 (2d Cir. 2012) (summary order) (concluding that a defendant's failure to disclose the time limits for filing an ERISA action in its denial of benefits letters did not entitle the plaintiff to equitable tolling of a contractual limitations period because the plaintiff's counsel had received a copy of the plan containing the limitations provision "long before" the limitations period had expired).

[17]     Although the Second Circuit has not had occasion to decide whether the phrase "the plan's review procedures" encompasses ERISA lawsuits (as opposed to applying only to administrative procedures), *see Heimeshoff*, 496 F. App'x at 130–31, the Court finds that it does; the word "including" would otherwise lose its meaning, *see Novick v. Metropolitan Life Ins. Co.*, 764 F. Supp. 2d 653, 660–64 (S.D.N.Y. 2011) ("[T]he word 'including' modifies the word 'description' and requires that that description of review procedures include a description of the right to bring a civil action."); *Santana-Diaz v. Metropolitan Life Ins. Co.*, 816 F.3d 172, 180 (1st Cir. 2016) (concluding that interpreting the regulation as imposing two unrelated requirements would "effectively erase" the word "including" and replace it with "and"); *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 134 (3d Cir. 2015) (same); *Moyer v. Metropolitan Life Ins. Co.*, 762 F.3d 503, 505–06 (6th Cir. 2014) (same).  That reading of the regulation, which Defendants do not contest, also upholds the "full and fair review contemplated by 29 U.S.C. § 1133 and the DOL regulations."  *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 109 (2d Cir. 2003).

therefore, never triggered.  *See id.*  Instead, the six-year statute of limitations for breach-of-

contract claims governs.  *See Novick*, 764 F. Supp. 2d at 664 (deeming the plaintiff's ERISA

action timely because the defendant's letter terminating her benefits "violated ERISA

regulations" and therefore did not trigger the six-month limitations period; New York's six-year

contractual limitations period applied instead); *Li Neuroscience Specialists v. Blue Cross Blue

Shield of Mass.*, No. 17-CV-06572 (ILG), 2019 WL 121673, at *3–4 (E.D.N.Y. Jan. 7, 2019)

(concluding that an ERISA plan's contractual limitations period did not apply because the

defendant's denial letter did not include a "description of the [i]nsured's right to bring a judicial

action and the two-year time limit for doing so").[18]

Popovchak filed this lawsuit well within the six-year statute of limitations period for

breach-of-contract claims under New York law.  *See* N.Y. C.P.L.R. § 213(2).[19]  Defendants'

motion to dismiss Popovchak's benefits claim as untimely is, therefore, denied.

## II.     Count I: Gonzalez Sufficiently Exhausted his Claim for Benefits Under Section 502(a)(1)(B) or (a)(3) of ERISA

Gonzalez has sufficiently alleged that he exhausted his claim for ERISA benefits with

respect to the treatment he received from Dr. Frelinghuysen because he alleges that he properly

appealed Defendants' benefits determination at least twice.

---

[18]     Because the Court finds that the Morgan Stanley Plan's contractual limitations period does not apply, and because Plaintiffs do not argue that the limitations period should be equitably tolled, the Court need not decide whether equitable tolling applies.

[19]     The parties do not dispute that New York's statute of limitations period applies even though Popovchak is a New Jersey resident.  *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998).  Because the parties do not dispute choice of law, the Court assumes for the purposes of this opinion, without deciding the issue, that New York law applies.

### A.    Legal Standard

Although ERISA does not contain an exhaustion requirement, the Second Circuit has

recognized a "firmly established federal policy favoring exhaustion of administrative remedies in

ERISA cases."  *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)

(internal quotation marks and citation omitted).  Exhaustion requires "only those administrative

appeals provided for in the relevant plan or policy."  *Id.* (citation omitted).

Failure to exhaust administrative remedies before filing an ERISA action is an

affirmative defense.  *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445–46 (2d

Cir. 2006).  A complaint may be dismissed for failure to exhaust administrative remedies only "if

the defense appears on the face of the complaint."  *Morillo v. 1199 SEIU Benefit & Pension

Funds*, 783 F. Supp. 2d 487, 489 (S.D.N.Y. 2011) (internal quotation marks and citation

omitted).  Failure to exhaust appears on the face of a complaint if, for example, the plaintiff

"explicitly admit[s] a conscious decision not to exhaust" or if the plaintiff "pleads no facts

suggesting any effort to exhaust the remedies available through his ERISA administrative plan."

*Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 295–96 (E.D.N.Y. 2021)

(cleaned up and collecting cases).

The primary purposes of the exhaustion requirement are to "(1) uphold Congress' desire

that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a

sufficiently clear record of administrative action if litigation should ensue; and (3) assure that

any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious

standard, not *de novo*."  *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 132–34 (2d Cir.

2001).

DOL regulations prohibit claims procedures from requiring more than two appeals before judicial review becomes available.  *See Klotz v. Xerox Corp.*, 557 F. Supp. 2d 400, 406 (W.D.N.Y. 2008) (citing 29 C.F.R. § 2560.503–1(c)(2)).

### B.    Application

Defendants argue that Gonzalez failed to exhaust his administrative remedies with respect to Dr. Frelinghuysen's services because he did not adequately appeal the "new" benefits determination that he received in response to his initial appeal.  *See* Defs. Mem. at 11–12.

That argument is not persuasive; the Court is not convinced that the face of the Amended Complaint reflects a failure to exhaust.  Plaintiffs allege that Gonzalez appealed Defendants' use of Repricer data to determine his benefits three times.  *See* Am. Compl.  ¶¶ 130, 134, 138. Although Defendants refused to process Gonzalez's third appeal, *id.* ¶ 138, a third appeal is unnecessary to seek judicial review under ERISA, *see* 29 C.F.R. § 2560.503–1(c)(2). Gonzalez's receipt of a slightly revised benefits determination after filing his second appeal does not change this analysis.  The revised benefits determination allegedly did not disturb any aspects of Defendants' previous decision that Gonzalez is challenging.  *See* Am. Compl. ¶ 137. Defendants have not identified any provision in the Fresenius Plan's summary, beyond a broad requirement to complete "all required reviews," *see* Defs. Mem. at 11, suggesting that Gonzalez failed to comply with the plan's procedures.  At this stage of the litigation, Defendants have not, therefore, established this affirmative defense.  *See Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, No. 19-CV-9683 (JPO), 2020 WL 5659467, at *3 (S.D.N.Y. Sept. 23, 2020) (concluding that the complaint adequately alleged exhaustion at the pleading stage because it alleged that the plaintiff's appeals "were denied or reclassified and indefinitely delayed"); *Mohr-Lercara v. Oxford Health Ins., Inc.*, No. 18-CV-1427 (VB), 2019 WL 1409479, at *7–8 (S.D.N.Y. Mar. 28, 2019) (same because the plaintiff's allegations of exhaustion were "plausible"); *Med. Soc'y of*

*N.Y. v. UnitedHealth Grp. Inc.*, No. 16-CV-5265 (JPO), 2017 WL 4023350, at *5 (S.D.N.Y.

Sept. 11, 2017) (same because establishing failure to exhaust is "an uphill battle for defendants

on a motion to dismiss" and the complaint alleged that plaintiffs appealed "more than once" or

"comple[ted] two levels of appeal").[20]

Defendants' motion to dismiss Gonzalez's benefits claim with respect to Dr.

Frelinghuysen's services as untimely is, therefore, denied.

### III.    Count II: Plaintiffs Adequately Allege a Claim for Breach of the Duty of Loyalty Under Section 502(a)(3) or 502(a)(1)(B) of ERISA

Plaintiffs adequately allege a claim for breach of the duty of loyalty under Section

502(a)(3) or 502(a)(1)(B) because they challenge Defendants' policy of allegedly charging the

Plans savings fees that were not earned in connection with Out-of-network benefits

determinations; this claim is distinct from Plaintiffs' benefits claims.  Plaintiffs may bring this

claim under either Section 502(a)(3) or Section 502(a)(1)(B) at this stage because the appropriate

remedy can only be determined on a more complete record.  Plaintiffs' remaining claims for

breach of fiduciary duty fail, however, because they essentially challenge Defendants' benefits

determinations and are, therefore, duplicative.[21]

#### A.  Legal Standard

Section 502(a)(3) of ERISA authorizes equitable claims for breach of fiduciary duty.  *See*

*Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) (citing 29 U.S.C.

---

[20]    Because the Court finds that Defendants have not established failure to exhaust at this stage of the litigation, the Court need not decide whether exhaustion would have been futile.

[21]    Defendants initially argued that Plaintiffs' claims based on Section 502(a)(3) contained in Count II should be dismissed; they did not argue that the Count II claims based on Section 502(a)(1)(B) should be dismissed.  *See* Defs. Mem., Dkt. 40, at 1.  In their reply, however, Defendants argued that all of the Count II claims for breach of fiduciary duty, whether based on Section 502(a)(3) or Section 502(a)(1)(B), should be dismissed.  *See* Defs. Reply Mem., Dkt. 53, at 13.  Because the substance of Defendants' moving memorandum requested wholesale dismissal of Plaintiffs' fiduciary claims, which Plaintiffs addressed in their response, the Court disregards the apparent error in Defendants' moving memorandum.

§ 1132(a)(3)).  It is a "'catch-all'" provision that "normally is invoked only when relief is not available" under Section 502(a)(1)(B).  *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578–79 (2d Cir. 2006) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Monetary awards under this provision are appropriate "'only in very limited circumstances.'"  *Id.* (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) and citing *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)).  If a plan participant sues for breach of fiduciary duty "relating to the terms of a plan," a "resulting injunction coupled with 'surcharge' — 'monetary compensation for a loss resulting from a fiduciary's breach of duty, or to prevent the fiduciary's unjust enrichment' — constitutes equitable relief" under Section 502(a)(3).  *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134–35 (2d Cir. 2015) (cleaned up and quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011)); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256–57 (1993).  By contrast, claims seeking "contract-based damages in an amount [plaintiffs] claim they overpaid" do not involve equitable relief.  *Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 478 (S.D.N.Y. 2004), *aff'd*, 421 F.3d 96 (2d Cir. 2005); *see also Great–West Life & Annuity Ins. Co.*, 534 U.S. at 210–12.

If it is "not clear at the motion-to-dismiss stage" whether "monetary benefits alone" will be a sufficient remedy, a plaintiff may pursue claims for breach of fiduciary duty under both Section 502(a)(3) and Section 502(a)(1)(B) of ERISA.  *N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 134; *see also Frommert v. Conkright*, 433 F.3d 254, 272 (2d Cir. 2006).

To state a claim for breach of fiduciary duty, a plaintiff must adequately allege that: "(1) the defendant is a fiduciary of the plan, (2) the defendant acted in its capacity as a fiduciary, and (3) the defendant breached a fiduciary duty."  *Lardo v. Bldg. Serv. 32BJ Pension Fund*, No. 20-CV-5047 (JPC), 2021 WL 4198233, at *6 (S.D.N.Y. Sept. 14, 2021) (citation omitted).  ERISA "assigns fiduciaries specific duties," including those specified under Sections 404, 405, and 406

of the Act.  *Bona v. Barasch*, No. 01-CV-2289 (MBM), 2003 WL 1395932, at *9 (S.D.N.Y.

Mar. 20, 2003).

The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of

providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses

of administering the plan."  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,

472 U.S. 559, 570–71 (1985) (quoting 29 U.S.C. § 1104(a)(1)(A)).  The duty of care requires a

fiduciary to "discharge his duties with respect to a plan . . . with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and

with like aims."  *Id.* at 570 (quoting 29 U.S.C. § 1104(a)(1)(B)).  ERISA fiduciaries are also

required to act "in accordance with the documents and instruments governing the plan insofar as

such documents and instruments are consistent with" various ERISA provisions.  *Staten Island

Chiropractic Assocs., PLLC v. Aetna, Inc.*, No. 09-CV-2276 (CBA), 2012 WL 832252, at *8

(E.D.N.Y. Mar. 12, 2012) (quoting 29 U.S.C. § 1104(a)(1)(D)).  Such claims "typically involve

noncompliance with guidelines and procedures set out in the documents" and "do[] not generally

apply to areas where fiduciaries are given discretion, so long as the actions comply with the letter

of the documents."  *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 420 (S.D.N.Y. 2010)

(collecting cases).

### B.  Application

Plaintiffs allege that Defendants breached their duty of loyalty by artificially reducing the

calculation of some Eligible Expenses by using Repricer data so they could profit from purported

"savings" fees even though Defendants never reached agreements with the particular Non-

network Providers that would generate savings; that scheme, according to Plaintiffs, injured

20

individual plan members who received lower reimbursement from their plan and were, therefore, subject to a larger balance due to the Out-of-network Provider.  *See* Am. Compl. ¶¶ 184, 187. That conduct also allegedly violated Defendants' duty to act in accordance with the Plans' written terms, which required Defendants to determine Eligible Expenses using "competitive fees" in the provider's geographic area.  *See id.* ¶¶ 40–44, 185.  Finally, Plaintiffs allege that this conduct violated Defendants' duty of care because Defendants' "inconsistent" approach to out-of-network services failed "to ensure and to verify" that similarly-situated claims would be treated consistently.  *See id.* ¶ 186.

### 1. Duty of Loyalty

Plaintiffs adequately allege a claim for breach of the duty of loyalty because they accuse Defendants of using Repricer data to collect "savings" fees, despite Defendants' failure to secure corresponding savings, for the primary purpose of enriching themselves at Plan members' expense.  In other words, Defendants allegedly failed to make decisions "with an eye single to the interests of the [Plans'] participants and beneficiaries."  *Donovan v. Bierwith*, 680 F.2d 263, 271 (2d Cir. 1982) (concluding that pension plan trustees breached their duty of loyalty under ERISA by failing to resign when their positions as trustees came into conflict with their positions as corporate officers); *see also Kohari v. MetLife Grp., Inc.*, No. 21-CV-6146 (JPC), 2022 WL 3029328, at *9 (S.D.N.Y. Aug. 1, 2022) (concluding that plaintiffs stated a claim for breach of fiduciary duty under ERISA by alleging that defendants "applied a disloyal preference" for certain investments to benefit from "excessive fees"); *Carrigan v. Xerox Corp.*, No. 3:21-CV-1085 (SVN), 2022 WL 1137230, at *9 (D. Conn. Apr. 18, 2022) ("Plaintiffs' plausible claim that Defendants' decision-making process was imprudent, when combined with their allegations that Defendants 'stood to benefit from' the alleged imprudent and excessive fees, are enough to state a claim of disloyalty.").

21

Defendants argue that Plaintiffs fail to state a claim because they do not allege that Defendants acted "*for the purpose*" of providing benefits to themselves and because Defendants' alleged conduct protected Plan assets by preventing overspending on out-of-network claims. *See* Defs. Mem. at 17–20. The mere fact that Defendants' conduct may have, on balance, preserved Plan assets — a factual issue not ripe for resolution at this stage — does not defeat Plaintiffs' claim, which alleges that Defendants' conduct was primarily motivated by their interest in profiting from purported savings fees through a scheme that redounded to the Plan participants' detriment. *Cf. Perez v. First Bankers Trust Servs., Inc.*, 210 F. Supp. 3d 518, 534 (S.D.N.Y. 2016) (concluding that a genuine material dispute as to the defendant's "true motivations" behind its allegedly disloyal decision precluded summary judgment as to the plaintiff's claim that the defendant violated its duty of loyalty under ERISA); *Trs. of Local 138 Pension Fund v. Logan Circle Partners, L.P.*, No. 10-CV-5758 (ILG), 2012 WL 1902266, at *3 (E.D.N.Y. May 25, 2012) (rejecting the defendant's arguments that a plaintiff's claim for breach of the duty of loyalty under ERISA failed because the plaintiff "ultimately benefitted economically" from the purported breach; "[t]hese factual arguments [were] premature and not relevant to the sufficiency of [the] plaintiff's pleading").[22]

---

[22]   Although Defendants do not challenge the adequacy of Plaintiffs' allegations that Defendants charged savings fees despite failing to secure corresponding savings, Plaintiffs' allegations in this regard are just barely adequate. Plaintiffs assert in broad terms that Defendants charged "illusory" savings fees despite failing to secure discounts from Out-of-network Providers. *See* Am. Compl. ¶¶ 78, 84, 88. Plaintiffs allege more specifically, however, only that Gonzalez's out-of-network services (not Popovchak's or Webb's) resulted in such fees being collected by Defendants. *See* Am. Compl. ¶¶ 116, 128. Moreover, even Gonzalez's services only resulted in savings fees being collected "[o]n information and belief." *Id.*

A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted). Defendants' letters to Plaintiffs, which reference "discount[s]" representing "savings," *see* Am. Compl. ¶¶ 102–03, 120–21, 132–33, 153–54, are just enough to nudge Plaintiffs' allegations into the realm of plausibility, *cf. Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597–98 (8th Cir. 2009) (concluding that a plaintiff adequately alleged a fiduciary duty claim under ERISA and noting that such plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences"; courts

Defendants also assert that Plaintiffs' claims for breach of fiduciary duty should be dismissed as duplicative because they are premised on the same allegations and same injury as their claim for benefits under Section 502(a)(1)(B).  *See* Defs. Mem. at 19.  Although that may be true with respect to Plaintiffs' other fiduciary claims, discussed *infra* §§ III.B.2–3, Plaintiffs' loyalty claim is distinct; it targets Defendants' alleged scheme to charge the Plans purported savings fees (without securing corresponding savings) rather than Defendants' failure adequately to reimburse Plaintiffs for out-of-network services.

Plaintiffs may bring their claim for breach of the duty of loyalty pursuant to either Section 502(a)(3) or Section 502(a)(1)(B) of ERISA at this stage because it is not yet clear whether, assuming Plaintiffs can prove a breach, they would be entitled to equitable relief, damages at law, or a combination thereof.  *See* Am Compl. ¶¶ C, E (requesting a permanent injunction, disgorgement, surcharge, and other appropriate equitable relief);  *N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 135 (concluding that, to the extent the plaintiff sought "redress for [the defendant's] past breaches of fiduciary duty or [sought] to enjoin [the defendant] from committing future breaches, the relief sought would count as 'equitable relief'"); *Mohr-Lercara*, 2019 WL 1409479, at *9 (denying defendants' motion to dismiss Section 502(a)(3) claims because the complaint sought "both damages and equitable remedies" and the Court "[could not] readily discern on this undeveloped record whether the former [would] afford [the] plaintiff adequate relief"); *Rapp v. Henkel of Am.*, No. 18-CV-1656 (JCH), 2019 WL 4509095, at *6 (D. Conn. Sept. 18, 2019) (same); *see also CIGNA Corp.*, 563 U.S. at 441–42  (concluding that plaintiffs requested appropriate equitable relief under Section 502(a)(3) of ERISA because "[e]quity courts possessed the power to provide relief in the form of monetary

---

must engage in "careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief" for breach of fiduciary duty).

'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment").[23]

### 2.   Duty to Satisfy the Plans' Written Terms

Plaintiffs' claim that Defendants breached their fiduciary duties by failing to act in accordance with the Plans' written terms must be dismissed because it duplicates their claims for benefits under Section 502(a)(1)(B).  Unlike Plaintiffs' breach of the duty of loyalty claim, this claim is focused on Defendants' alleged failure adequately to reimburse Plaintiffs for out-of-network services under the Plans.  Attempts to "repackage claims for wrongful denial of benefits" under Section 502(a)(1)(B) as claims for breaches of fiduciary duty are routinely dismissed at the pleading stage.  *Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-04546 (LGS) (KHP), 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017) (internal quotation marks omitted) (collecting cases), *report & recommendation adopted*, 2018 WL 501605 (S.D.N.Y. Jan. 19, 2018).  Plaintiffs argue that dismissal is inappropriate because "the gravamen of the fiduciary breach claims is [Defendants'] [savings fees] scheme."  *See* Pls. Mem.

---

[23]     Defendants assert that Plaintiffs lack standing to seek prospective injunctive relief at this stage because they have not adequately alleged a risk of future harm.  *See* Defs. Mem. at 23–25.  The Court disagrees.  Plaintiffs were allegedly harmed by Defendants' policy of charging billions of dollars in purported savings fees to their Plans; they continue to be harmed by this policy as ongoing Plan members.  *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199–200 (2d Cir. 2005) (noting that courts have "recognized that a plan participant may have Article III standing to obtain injunctive relief related to ERISA's . . . fiduciary duty requirements without a showing of individual harm to the participant"); *Garthwait v. Eversource Energy Co.*, No. 20-CV-0902 (JCH), 2022 WL 1657469, at*6 (D. Conn. May 25, 2022) (concluding that plaintiffs lacked standing to seek to enjoin "defendants' future management (or mismanagement) of the Plan" because "the plaintiffs [were] *no longer enrolled* in the Plan and [did] not come forward with evidence that they reasonably expect[ed] to be enrolled in the Plan in the future" (emphasis added)).

The Court notes, however, that "not all relief falling under the rubric of restitution is available in equity." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *see also Sereboff v. Mid Atlantic Med. Servs.*, 547 U.S. 356, 364 (2006) (concluding that a plaintiff suing for breach of fiduciary duty under Section 502(a)(3) of ERISA sought equitable restitution because the plan provisions "specifically identified a particular fund, distinct from [defendants'] general assets . . . and a particular share of that fund to which [plaintiff] was entitled"); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103–04 (2d Cir. 2005) (concluding that a plaintiff suing for breach of fiduciary duty under Section 502(a)(3) of ERISA sought legal restitution because she sought to impose a trust on "premiums paid for health care coverage, which [the defendant] [was] under no obligation to segregate and which [the plaintiff] [did] not allege to be segregated in a separate account").

at 16–17.  As discussed *supra* §§ III.B.1, that is true with respect to Plaintiffs' breach of the duty of loyalty claim.  Plaintiffs' claim that Defendants breached their fiduciary duties by misapplying the Plans' terms, however, is essentially the same as Plaintiffs' claims for benefits.  *See Benson v. Tiffany & Co.*, No. 20-CV-1289 (KPF), 2021 WL 1864035, at *13 (S.D.N.Y. May 10, 2021) (dismissing a plaintiff's claim for breach of fiduciary duty as duplicative of her benefits claim because a Section 502(a)(3) claim "cannot exist solely as a second route to the damages sought" under Section 502(a)(1)(B)); *Curran v. Aetna Life Ins. Co.*, No. 13-CV-0289 (NSR), 2013 WL 6049121, at *8 (S.D.N.Y. Nov. 15, 2013) (same because the plaintiff's claim for breach of fiduciary duty "[was] essentially that [the defendant] erred in its claim determination"); *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 488 (S.D.N.Y. 2004) (same because "cloth[ing] [allegations] in the garb of . . . 'breach of fiduciary duty' d[id] not change the fact that the relief sought—reimbursement for an overcharge under the Plan—[was] the same" as for the plaintiff's benefits claim), *aff'd*, 164 F. App'x 75 (2d Cir. 2006).[24]

### 3.  Duty of Care

Finally, Plaintiffs' claim that Defendants breached the duty of care by taking an "inconsistent" approach to claimants seeking reimbursement for out-of-network services must also be dismissed because it is duplicative of Plaintiffs' benefits claims under Section 502(a)(1)(B).  Although Plaintiffs allege that Defendants breached a DOL regulation requiring

---

[24]    The cases Plaintiffs cite in support of their position do not conflict with the Court's view.  *See* Pls. Mem., Dkt. 49, at 16 n.22 (citing *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 82, 88–90 (2d Cir. 2001) (concluding that plaintiffs were not precluded from bringing claims for breach of fiduciary duty based on defendants' provision of "false and misleading plan information," which were distinct from plaintiffs' benefits claims under Section 502(a)(1)(B)); *Younger v. Zurich Am. Ins. Co.*, No. 11-CV-1173 (TPG), 2012 WL 1022326, at *2–3 (S.D.N.Y. Mar. 26, 2012) (concluding that a plaintiff was not precluded from bringing a claim for breach of fiduciary duty based on defendants' failure to provide an accurate summary of benefits, which was distinct from her benefits claim under Section 502(a)(1)(B)); *Gates v. United Health Grp. Inc.*, No. 11-CV-3487 (KBF), 2012 WL 2953050, at *10 n.10 (S.D.N.Y. July 16, 2012) (dismissing the portion of a claim seeking equitable relief based on defendants' alleged failure adequately to determine the plaintiff's benefits because "any harm [the] plaintiff suffered as a result of defendants' determination of her benefits [could] be adequately compensated by the monetary relief she [sought] under ERISA Section 502(a)(1)(B)").

an ERISA plan's claims procedures to apply plan provisions "consistently with respect to similarly situated claimants," *see* Am Compl. ¶¶ 64–74, Plaintiffs are again essentially challenging Defendants' benefits determinations.  Such claims are routinely dismissed as duplicative.  *See Benson*, 2021 WL 1864035, at *13; *Curran*, 2013 WL 6049121, at *8; *Xiaohong Xie*, 2017 WL 2462675, at *4; *Del Greco*, 337 F. Supp. 2d at 488.

For all of those reasons, Defendants' motion to dismiss Plaintiffs' claim for breach of the duty of loyalty under Section 502(a)(3) or Section 502(a)(1)(B) is denied and Defendants' motion to dismiss Plaintiffs' claims for breach of the duty to satisfy the Plans' written terms and the duty of care is granted.[25]

### IV.    Count III: Plaintiffs Adequately Allege a Claim for Breach of the Duties of Loyalty and Care and for Self-Dealing Under Section 502(a)(2) of ERISA

Plaintiffs adequately allege that Defendants' policy of charging purported savings fees that were not earned in connection with out-of-network benefits determinations constitutes a breach of the duties of loyalty and care under Section 502(a)(2)[26]; that theory of breach is distinct from Plaintiffs' benefits claims.  Plaintiffs' claim for breach of the duty to satisfy plan terms must be dismissed because it essentially challenges Defendants' benefits determinations rather than seeking distinct relief for the Plans.  Plaintiffs' claim for self-dealing survives because Defendants' conduct allegedly harmed the Plans.

---

[25]    Because Defendants' sole argument in favor of dismissing Count IV, which seeks to hold Defendants liable as co-fiduciaries, is that Plaintiffs failed to state claims for breach of fiduciary duty, *see* Defs. Mem. at 22–23, Defendants' motion to dismiss Count IV is denied to the extent Plaintiffs' claims for breach of fiduciary duty survive and granted to the extent that they do not.

[26]    Defendants cite the wrong ERISA provision — Section 502(a)(3) rather than Section 502(a)(2) — in their supporting memorandum.  *See* Defs. Mem. at 1.  The Court again disregards Defendants' error but cautions Defendants to be more careful going forward.

### A.  Legal Standard

Section 502(a)(2) of ERISA authorizes, in relevant part, plan participants or beneficiaries

to bring equitable claims on behalf of the benefit plan for losses pursuant to 29 U.S.C. § 1109;

that section imposes liability for breaches of fiduciary duty that harm the plan.  *See Coan v.*

*Kaufman*, 457 F.3d 250, 256–57 (2d Cir. 2006); *Boyce-Idlett v. Verizon Corp. Servs. Corp.*, No.

06-CV-975 (DAB) (KNF), 2007 WL 2589445, at *13 (S.D.N.Y. Aug. 30, 2007).

Under Section 406 of ERISA, a fiduciary is prohibited from "caus[ing] the plan to engage

in a transaction, if he knows or should know that such transaction constitutes a direct or

indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the

plan."  29 U.S.C. § 1106(a)(1)(D).  A fiduciary is also prohibited from "dealing with the assets of

the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).  Section 406 was

enacted "to bar categorically a transaction that [is] likely to injure the pension plan."  *Lockheed*

*Corp. v. Spink*, 517 U.S. 882, 888 (1996) (cleaned up internal quotation marks and citation

omitted).

### B.  Application

Plaintiffs allege that Defendants breached their duties of loyalty, care, and adherence to

plan terms by artificially depressing Eligible Expenses using Repricer data so they could profit

from "savings" fees that were illusory.  *See* Am. Compl. ¶¶ 191–92.  That scheme allegedly

constituted self-dealing; Defendants effectively transferred Plan assets that should have gone to

benefit payments under the Plans to themselves.  *Id.* ¶ 193.

#### 1.  Breach of Duties of Loyalty, Care, and Adherence to Plan Terms

Plaintiffs have stated a claim for breach of the duty of loyalty because, as set forth *supra*

§ III.B.1, they adequately allege an improper savings fee scheme that is distinct from their

request for unpaid benefits.  Plaintiffs have also stated a related claim for breach of the duty of

care because, construing the facts in the light most favorable to Plaintiffs, Defendants' conduct

was both "imprudent[]" and disloyal.  *Kohari*, 2022 WL 3029328, at *9 (concluding that

plaintiffs adequately alleged claims for breach of the duty of loyalty and the duty of care based

on the same conduct); *Leber v. Citigroup 401(K) Plan Inv. Committee*, 129 F. Supp. 3d 4, 13

(S.D.N.Y. 2015) (granting plaintiffs leave to allege claims for breach of the duty of loyalty based

on similar facts as plaintiffs' claims for breach of the duty of care because the duties "are

interrelated and overlapping").[27]  By contrast, for the reasons discussed *supra* §§ III.B.2–3,

Plaintiffs have not adequately alleged breach of Defendants' duty to satisfy plan terms because

such a claim duplicates Plaintiffs' claim for benefits.  Plaintiffs have also not alleged any

resulting harm to their Plans.  *See Nechis*, 328 F. Supp. 2d at 477 (dismissing a Section 502(a)(2)

claim because the alleged harm "c[ould] only be redressed by awarding relief to those individual

plaintiffs who . . . suffered a reduction of their benefits").

Defendants maintain that Plaintiffs cannot bring any claims pursuant to Section 502(a)(2)

because they have not alleged any losses to the Plans stemming from Defendants' conduct.  *See*

Defs. Mem. at 20–21.  The Court disagrees.  Plaintiffs assert that Defendants' conduct cost the

Plans billions in fees that were improper because the "savings" to Plan participants were illusory;

Plaintiffs request an order requiring Defendants to "restore to each . . . [P]lan" any profits

Defendants made from their conduct.  *See* Am Compl. ¶ F.  That is enough to state a claim.[28]

*See In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005) (concluding that

plaintiffs "clearly" stated a claim under Section 502(a)(2) because they alleged that the plan

---

[27]     It is unclear why Plaintiffs chose to bring claims on behalf of the Plan for both breach of the duty of loyalty
and breach of the duty of care based on Defendants' alleged savings scheme, but only for breach of the duty of
loyalty on behalf of Plaintiffs individually.

[28]     As discussed *supra,* note 22, Plaintiffs just barely adequately allege that Defendants charged savings fees
despite failing to secure corresponding savings.

"suffered significant losses" and sought "a monetary payment to the [p]lan to make good to the [p]lan the losses . . . resulting from [defendants'] breaches of fiduciary duty"); *In re Marsh Erisa Litig.*, No. 04-CV-8157 (SWK), 2006 WL 3706169, at *6–7 (S.D.N.Y. Dec. 14, 2006) (concluding that plaintiffs stated a claim under Section 502(a)(2); it was "of no consequence that, in the final reckoning, [p]lan members [would] benefit from the recovery, because it is taken for granted that an ERISA-covered plan ultimately serves individuals").[29]

### 2. Self-Dealing

Defendants argue that Section 406 of ERISA, which prohibits self-dealing, does not apply because the conduct about which Plaintiffs complain "resulted in preserving plan assets and increasing savings to the plans . . . ." *See* Defs. Mem. at 21.  To the extent the effective use of Repricer data resulted in actual savings to the Plan and to Plan participants, Defendants will prevail.  At this stage, however, Defendants' factual assertion that their conduct benefitted the Plans is premature.  *Cf. Trs. of Local 138 Pension Fund*, 2012 WL 1902266, at *3–4.  In any event, Defendants' argument hinges on an overly expansive view of the conduct at issue. Plaintiffs' Section 406 claim challenges Defendants' alleged scheme to collect for themselves unearned savings fees, not Defendants' refusal adequately to reimburse charges for out-of-network services.  Because Defendants allegedly siphoned billions of dollars from the Plans in unearned savings fees, Plaintiffs have adequately alleged harm to the Plans.[30]

---

[29]    Because Defendants have not moved to dismiss Plaintiffs' claims under Section 502(a)(3) of ERISA as duplicative of their claims under Section 502(a)(2), the Court does not address this issue.

[30]    Defendants insist that Section 406 was "designed to protect against arrangements 'that present a special risk of plan *underfunding*.'"  Defs. Mem. at 21 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)).  That is not quite right.  Certain provisions under Section 406 (although not the provisions pursuant to which Plaintiffs are suing) target "commercial bargains that present a special risk of plan underfunding . . . ."  *Lockheed Corp.*, 517 U.S. at 893.  Section 406 as a whole was designed "to bar categorically a transaction that [is] likely to injure the pension plan."  *Id.* at 888.  That is exactly what Plaintiffs alleged happened in this case: Defendants charged the Plans savings fees that they had not earned, thus injuring the Plans.  Plan "underfunding" is not a prerequisite to stating a claim.

For all of those reasons, Defendants' motion to dismiss Plaintiffs' claim for breach of the duties of loyalty and care and for self-dealing under Section 502(a)(2) is denied, and Defendants' motion to dismiss Plaintiffs' claim for breach of the duty to satisfy the Plans' written terms is granted.

## V.      Plaintiffs Lack Standing to Sue UHG and UHIC

Plaintiffs lack standing to sue UHG and UHIC for benefits under Sections 502(a)(1)(B) or (a)(3) of ERISA because the complaint does not adequately allege that either company exercises total control over benefits claims.  UHG and UHIC are also not proper Defendants for Plaintiffs' claims for breach of fiduciary duty because Plaintiffs have not adequately alleged that UHG and UHIC engaged in the violative conduct at issue.

### A.      Legal Standard

Claims to enforce the terms of a benefits plan under Sections 502(a)(1)(B) or (a)(3) of ERISA are properly brought against "(1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits."  *Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (citing *N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 133).  Although the Second Circuit has "not decided whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)," district courts have held that "discretion alone" is not enough for a claims administrator to be liable.  *Doe v. United*

---

Defendants also cite *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc*, 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014), for the proposition that because Defendants disclosed their savings program, they did not violate Section 406.  *See* Defs. Mem. at 22 n. 3.  That case addresses the application of an exception to Section 406, however, which Defendants do not assert applies.  *See In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 711 (S.D.N.Y. 2011) ("The burden of proving that payments that otherwise would violate § 406(b) are covered by the § 408 exemption lies squarely with the defendant." (citation omitted)).

*Health Grp. Inc.*, No. 17-CV-4160 (AMD) (RL), 2018 WL 3998022, at *3 (E.D.N.Y. Aug. 20, 2018) (internal quotation marks and citations omitted).

Claims for breach of fiduciary duty under ERISA are "distinct" from claims for benefits under Sections 502(a)(1)(B) or (a)(3). *Id.* at *4 n.5 (citing *Gates v. United Health Grp. Inc.*, No. 11-CV-3487 (KBF), 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012)).

An entity is a "fiduciary" with respect to an ERISA plan "to the extent" that it exercises "any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. *Varity Corp.*, 516 U.S. at 498 (quoting ERISA § 3(21)(A)).  An entity "may be an ERISA fiduciary with respect to certain matters but not others. . . ." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (internal quotation marks and citation omitted).  The "threshold question" is whether the defendant was acting as a fiduciary "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA's definition of fiduciary should be "broadly construed." *Frommert*, 433 F.3d at 271 (citation omitted).

### B. Application

Defendants argue that "all claims" against UHG and UHIC should be dismissed because Plaintiffs have not adequately alleged that they were plan administrators, plan trustees, or claims administrators that exercised "total control" over benefits claims.  *See* Defs. Mem. at 12–14. Plaintiffs do not appear to contest that UHG and UHIC cannot be sued to enforce the Plan terms under Section 502(a)(1)(B) or (a)(3) of ERISA; instead, they assert that UHG and UHIC are liable for breach of fiduciary duty.  *See* Pls. Mem. at 20–22.

UHG and UHIC are not proper Defendants with respect to Plaintiffs' claims seeking enforcement of the Plans' terms under Section 502(a)(1)(B) or (a)(3) because, although they may

be claims administrators, the complaint does not adequately allege that either exercises sufficient control over Plaintiffs' benefits determinations to be liable.  UHS Inc. and UHS LLC, not UHG or UHIC, made benefits determinations on Plaintiffs' claims and decided their administrative appeals.  *See* Am. Compl. ¶¶ 31, 101, 105, 119, 123, 131, 152, 162.  UHS Inc. and UHS LLC are, therefore, textbook defendants for benefits claims under Section 502(a)(1)(B) or (a)(3).  *See N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 132 (concluding that an entity was a proper defendant for a claim for ERISA benefits because it enjoyed "sole and absolute discretion" to deny benefits and made "final and binding" decisions on the plaintiff's appeals).  By contrast, Plaintiffs allege that UHG and UHIC exercised some "discretionary authority" with respect to Plaintiffs' benefits claims by listing UHIC's business address in the Morgan Stanley Plan's summary of benefits, by pre-authorizing Gonzalez's surgery as medically necessary under the Fresenius Plan, and by virtue of UHG's status as the remaining Defendants' parent company.  *See* Am Compl. ¶¶ 26–31.[31]  That is far from enough adequately to allege "total control" over Plaintiffs' benefits claims.  *See Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761 (JGK), 2021 WL 665045, at *9 (S.D.N.Y. Feb. 19, 2021) (dismissing a defendant because the fact that adverse benefit communications were transmitted on its stationery was insufficient for it to be a proper defendant in an ERISA benefits case); *Bushell*, 2018 WL 1578167, at *8–9 (dismissing UHG as a defendant because "the mere fact" that UHG was the parent of the entity that administered the plaintiff's ERISA benefits claims was "not enough to make it a proper defendant" in a benefits case); *Doe*, 2018 WL 3998022, at *3–4 (dismissing entities as defendants because the mere fact that they allegedly "took part in

---

[31]     Plaintiffs also allege that UHG exercised discretionary authority by determining which of Plaintiffs' billed healthcare charges were eligible for reimbursement and by controlling and issuing Plan funds; Plaintiffs allege, however, that UHG did so "through its subsidiaries."  *See* Am. Compl. ¶¶ 26–27.  Those subsidiaries are UHS Inc. and UHS LLC.

administering the plaintiff's plan" was insufficient for them to be proper defendants in an ERISA benefits case).[32]

The parties' actual dispute is whether UHG and UHIC are proper defendants for Plaintiffs' claims for breach of fiduciary duty. Although the pleading burden to bring such claims is more lenient than for benefits claims, *see Varity Corp.*, 516 U.S. at 498, the Amended Complaint is devoid of any factual allegations that UHG or UHIC engaged in the conduct that gave rise to Plaintiffs' claims. According to Plaintiffs, Defendants jointly persuaded the Plans to sign up for their purported savings initiative, advertised the program through plan summaries, and cashed in on their scheme. *See* Am. Compl. ¶¶ 75–90.[33] Plaintiffs maintain that "each Defendant participated knowingly in and knowingly undertook to conceal the fiduciary breaches described" in the Amended Complaint, *see id.* ¶ 197; Plaintiffs do not marshal any facts, however, to support their conclusory group pleading. *See Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) (dismissing an ERISA claim for breach of fiduciary duty against a defendant because the complaint did not include "a single allegation of misconduct that [was] specifically plead against [the defendant] as opposed to the 'defendants' as a group").[34]

---

[32]      Plaintiffs argue that these holdings are "inapposite" because they pertain to benefits claims rather than fiduciary duty claims. *See* Pls. Mem. at 22 n.28. The Court agrees that the holdings pertain to benefits claims. Because Defendants moved to dismiss all of Plaintiffs' claims against UHG and UHIC, however, they are undoubtedly apposite.

        By contrast, the case Plaintiffs cite in their favor, *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757, 760 (D.N.H. 1997), is readily distinguishable. *See* Pls. Mem. at 22. *Drolet* involved a claim for breach of fiduciary duty, further discussed *infra*, not a claim for benefits. Moreover, in that case, the parent company defendant "exercise[d] final control over benefits appeals." *Id.* at 761.

[33]       Defendants' plan summaries do not identify particular Defendants as administering their purported savings initiative. Instead, they refer to "UnitedHealthcare," a company "own[ed]" by UHG, and "UHC." *See* Fresenius Plan Summary, Dkt. 43-2, at 11, 139; Morgan Stanley Plan Summary, Dkt. 43-1, at 33; *see also* Am Compl. ¶¶ 24, 26.

[34]      Although the Second Circuit deemed allegations that essentially tracked the statutory definition of an ERISA fiduciary sufficient at the motion-to-dismiss stage in *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236,

For all of those reasons, Defendants' motion to dismiss UHG and UHIC as Defendants in this action is granted.

## VI.   Plaintiffs Are Not Entitled to a Jury Trial at This Stage

The Seventh Amendment grants the right to a jury trial for actions to enforce statutory rights "if the statute created legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001) (quoting *Curtis v. Loether*, 415 U.S. 189, 194 (1974)).  When determining whether a statute entitles a party to a jury trial, courts consider both "the historical treatment of analogous cases" and "the type of remedy available." *Id.* (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998); *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 565 (1990)).  First, courts ask "whether the action would have been deemed legal or equitable in 18th century England." *Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (citation omitted).  Second, courts "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.*  The Court must then "balance the two, giving greater weight to the latter." *Id.* (citation omitted).

The Second Circuit has held that "no right to jury trial attaches" to claims for ERISA benefits because such claims "are inherently equitable in nature, not contractual . . . ." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998) (concluding that a plaintiff seeking benefits pursuant to Section 502(a)(1)(B) of ERISA was not entitled to a jury trial); *see also DeFelice v. Am. Intern. Life Assur. Co.*, 112 F.3d 61, 64 (2d Cir. 1997) (explaining that actions for benefits under ERISA are "equitable" for Seventh Amendment purposes because they

---

241 (2d Cir. 2002), that case was decided before *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007), which requires specific factual allegations to make the claim plausible, *see Forgione v. Gaglio*, No. 13-CV-9061 (KPF), 2015 WL 718270, at *5 (S.D.N.Y. Feb. 13, 2015) (explaining that *Twombly* modifies *Smith*).

seek "trust-like" remedies).  Moreover, as a "general rule," claims for breach of fiduciary duty

"were historically within the jurisdiction of the equity courts." *Pereira*, 413 F.3d at 338.  The

historical inquiry therefore weighs "against a jury trial." *Id.* at 339; *see also Sullivan v. LTV*

*Aerospace & Defense Co.*, 82 F.3d 1251, 1258–59 (2d Cir. 1996) (noting that "[c]ourts

addressing this issue have almost uniformly held that under the common law of trusts

proceedings to determine rights under employee benefit plans are equitable in character and thus

a matter for a judge, not a jury" (citations omitted)), *abrogated on other grounds*, *McCauley v.*

*First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008).

     The Second Circuit has since recognized, however, that the Supreme Court's decision in

*Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), "reconfigured the

legal landscape of restitution"; a plaintiff's claim for breach of fiduciary duty that seeks "funds

attributable to [the plaintiff's] loss, not [defendants'] unjust gain" is for "compensatory

damages—a legal claim." *Pereira*, 413 F.3d at 340 (citation omitted)[35]; *see also Cent. States, Se.*

*& Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 154 (2d Cir. 2014)

(dismissing plaintiffs' claims for past and future beneficiary expenses under Section 502(a)(3) of

ERISA because, under *Great–West*, "an injunction to compel the payment of money past due

under a contract, or specific performance of a past due monetary obligation," is generally a legal

remedy that is only available under Section 502(a)(1)(B)).

     Courts in this Circuit are divided as to whether *Great–West* entitles plaintiffs to jury trials

with respect to certain claims under ERISA.  *See Vellali v. Yale Univ.*, No. 16-CV-1345 (AWT),

2023 WL 2552719, at *5–6 (D. Conn. Mar. 17, 2023) (denying defendants' motion to strike

---

[35]     Plaintiffs incorrectly assert that *Pereira* arose in the context of an ERISA claim.  *See* Pls. Mem. at 31.  The case is nevertheless instructive, however, because it illustrates that the Second Circuit has revised its approach to remedies for breach of fiduciary duty in the wake of *Great–West*.

plaintiffs' jury demand in light of *Pereira* and *Great–West*; plaintiffs sought both equitable relief and recovery of losses to an ERISA plan due to defendants' breach of fiduciary duty); *Garthwait v. Eversource Energy Co.*, No. 20-CV-0902 (JCH), 2022 WL 17484817, at \*2–3 (D. Conn. Dec. 7, 2022) (same); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2018 WL 4279466, at \*3–4 (S.D.N.Y. Sept. 6, 2018) (same).  *But see Pravda v. Prudential Ins. Co. of Am.*, No. 16-CV-2750 (AJN), 2016 WL 3842741, at \*2 (S.D.N.Y. July 12, 2016) (granting a defendant's motion to strike a plaintiff's jury demand because "the Second Circuit has continued to maintain that no jury right is available in actions to recover ERISA benefits over the decade and a half since *Great[–]West*" (citing *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011); *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003)))[36]; *Turcotte v. Blue Cross & Blue Shield of Mass., Inc.*, No. 07-CV-4023 (RJS), 2008 WL 4615903, at \*10 (S.D.N.Y. Oct. 14, 2008) (same); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 79 n.10 (3d Cir. 2012) ("Because ERISA § 502(a)(3) authorizes only 'equitable relief,' no right to a jury trial attaches under the Seventh Amendment to the United States Constitution."); *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1355 (10th Cir. 2009) (same).

Because it is not clear at this stage whether Plaintiffs seek legal damages for their fiduciary duty claims, and because the Second Circuit has long held that ERISA benefits claims do not trigger the right to a jury trial, the Court grants Defendants' motion to strike Plaintiffs' jury demand without prejudice to Plaintiffs renewing their demand in the event they seek damages for breach of fiduciary duty.

---

[36]     Although the Second Circuit affirmed in dicta that there is no right to a jury trial in a suit brought to recover ERISA benefits following *Great–West*, *see O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011); *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003), those cases did not involve claims for breach of fiduciary duty, *see* Compl., *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 08-CV-6121 (DGL), Dkt. 1 (W.D.N.Y. Mar. 18, 2008); Am. Compl., *Muller v. First Unum Life Ins. Co.*, No. 97-CV-1420 (LEK) (DNH), 1998 WL 35183898 (N.D.N.Y. Nov. 27, 1998).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss: Popovchak's and Gonzalez's benefits claims in Count I; Plaintiffs' claim for breach of the duty of loyalty under Section 502(a)(3) or 502(a)(1)(B) in Count II; Plaintiffs' claims for breach of the duties of loyalty, care, and for self-dealing under Section 502(a)(2) in Count III; and Plaintiffs' claim for breach of co-fiduciary duty under Section 405(a) in Count IV to the extent Plaintiffs' claims for breach of fiduciary duty survive is DENIED.  Defendants' motion to dismiss: Plaintiffs' claims for breach of the duties of care and to comply with plan terms under Section 502(a)(3) or 502(a)(1)(B) in Count II; Plaintiffs' claims for breach of the duty to comply with plan terms under Section 502(a)(2) in Count III; Plaintiffs' claim for breach of co-fiduciary duty under Section 405(a) in Count IV to the extent Plaintiffs' claims for breach of fiduciary duty are dismissed; and all of Plaintiffs' claims against UHG and UHIC is GRANTED.  Defendants' motion to strike Plaintiffs' jury demand is GRANTED without prejudice to Plaintiffs renewing their demand in the event they seek damages for breach of fiduciary duty.

Not later than **Friday, October 6, 2023**, the parties must submit a joint status update and proposed case management plan as set forth in the Court's Order at Docket Entry 28.  The discovery stay in this action is hereby lifted.

The Clerk of Court is respectfully directed to close the open motion at Docket Entry 38 and to terminate UHG and UHIC as Defendants in this action.

**SO ORDERED.**

Date:  **September 19, 2023**
     **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**