

# GIBSON DUNN

August 11, 2025

Heather L. Richardson
Partner
T: +1 213.229.7409
M: +1 213.400.7802
hrichardson@gibsondunn.com

<u>VIA ECF</u>

United States District Judge Dale Ho
United States District Court
Southern District of New York
40 Foley Square New York, NY 10007

Re:     *Popovchak v. United Healthcare Services, Inc.*, No. 1:22-cv-10756-DEH (S.D.N.Y.)—Defendants' Letter-Motion to Compel 30(b)(6) Deposition Testimony from Non-party Providers' Offices

Dear Judge Ho:

Pursuant to Federal Rules of Civil Procedure 26(b)(1), 30(b)(6), 37(a)(3), 45(g), and this Court's Individual Civil Rule 4(k), Defendants move to compel non-parties Specialty Physicians of New Jersey ("SPNJ") and Spine Associates ("SA") (collectively, the "Offices") to designate qualified witnesses to testify about certain topics identified in Defendants' deposition subpoenas.[1]

***Relevant Background***.  The Offices' medical providers rendered the services to Plaintiffs that underlie the benefit claims at issue in this case.  Defendants deposed each of the Plaintiffs and two of Plaintiffs' providers, but neither Plaintiffs nor the providers were familiar with the financial aspects of the services provided to Plaintiffs or the benefit claims and appeals process.  *See, e.g.*, Ex. B at 23:25-24:2 (Popovchak:  "No. I don't handle any of the insurance."), Ex. D at 47:15-21 (Frelinghuysen:  "I don't participate in the billing process in my office, so I don't know.").  Plaintiffs' counsel (who also represent the Offices and the providers) opposed depositions of Plaintiffs' other two providers on the grounds that the information Defendants sought fell within the purview of the Offices' administrative staff, not the providers themselves.  Ex. F at 4–5.  Accordingly, Defendants subpoenaed the Offices and requested that they present corporate representatives to testify about limited topics relevant to Plaintiffs' claims, including the Offices' policies, procedures, and practices regarding pricing, billing, accounting, collection, and rate negotiation for their services, as well as their pursuit of insurance claims.  Ex. G.

The Offices have objected to these topics to the extent they seek information beyond the Offices' specific dealings with Plaintiffs, arguing that the topics improperly ask about patients whose claims are not at issue.  Ex. I at 2.  Defendants explained that these topics seek information about the Offices' standard practices and whether the Offices followed or deviated from their standard practice in dealing with Plaintiffs.  Ex. H at 3.  And given the providers and Plaintiffs were not able to explain these practices during their depositions, Defendants need to seek this information from the Offices.  Defendants further explained that they do not seek personal identifying information or protected health information of any patient who is not a

---

[1] Defendants also subpoenaed a third office, American Surgical Arts PC ("ASA").  Because ASA is required to comply with the deposition subpoena in New Jersey, it is not included in this motion.  That being said, ASA disputes virtually identical topics and is represented by the same counsel as SPNJ and SA.  The parties thus anticipate that the Court's ruling as to SPNJ and SA will inform how they proceed with respect to ASA.

## GIBSON DUNN

United States District Judge Dale Ho                                              August 11, 2025
Southern District of New York                                                          Page 2

named plaintiff in this case.  *Id.*  After meeting and conferring and discussing these issues over email,[2] the parties continue to disagree about the relevance of the following topics:

1.  The Offices' pricing of their services, reviewing of patients' insurance information, and recovery through insurance claims (SPNJ Topics 6, 8, 9, 15; SA Topics 6, 9, 10, 16),

2.  The Offices' balance billing and collection from patients (SPNJ Topics 12, 13; SA Topics 13, 14), and

3.  The Offices' negotiations regarding their services and the amounts they accept as payment in full (SPNJ Topics 10, 11, 18; SA Topics 11, 12, 19).[3]  Ex. G.

**Argument**.  Discovery from non-parties is subject to "Rule 26(b)(1)'s overriding relevance requirement."  *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018).  As this Court has previously stated, "relevance, for the purposes of discovery, is an extremely broad concept."  Dkt. 114 at 4, citing *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).  Information is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The relevance standard "is applied more liberally in discovery than it is at trial."  *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016).  While the party seeking discovery has the burden to demonstrate relevance, that burden "is not heavy."  *Pearlstein*, 332 F.R.D. at 120.  The burden "then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome."  *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 55 (S.D.N.Y. 2023).  The disputed topics are relevant to Defendants' defenses for several reasons.

*First*, these topics seek information relevant to Defendants' defense against Plaintiffs' breach-of-fiduciary-duty claims.  As the Court recognized, "[t]he gravamen of Plaintiffs' claims for breach of fiduciary duty is that Defendants charged the plans 'savings fees' that they had not earned" by negotiating lower rates with out-of-network providers, Dkt. 60 at 1, and "[t]o the extent the effective use of Repricer data resulted in actual savings to the Plan and to Plan participants, Defendants will prevail," *id.* at 29.  To develop this defense, Defendants are entitled to explore how the Offices set the prices for their services, how the Offices negotiate their rates with insurers (if at all), what rates the Offices consider to be reasonable and standard, whether the Offices charged Plaintiffs those rates, whether the Offices charge higher rates to insured patients, and whether the Offices recover higher rates for those patients.  Evidence that the Offices charged Plaintiffs more than their standard rates or deviated from their standard negotiation practices would be relevant to Defendants' arguments that using repricer data was necessary to preserve plan assets in the face of overbilling by providers.

---

[2] The parties met and conferred via videoconference on June 16, 2025, and continued the discussions by exchanging letters and emails.  Exs. H. I, K.  Defendants informed opposing counsel that Defendants believed the parties to be at an impasse and that Defendants would request a conference with the Court.  Ex. K at 5.

[3] The remaining topics were agreed on or withdrawn.

# GIBSON DUNN

United States District Judge Dale Ho
Southern District of New York

August 11, 2025
Page 3

*Second*, the Offices' balance billing and collection efforts are relevant to Defendants' argument that Plaintiffs lack standing and/or can't seek monetary relief because they have not made any out-of-pocket payments (beyond their patient responsibility obligations) for the services they received.  Dkt. 61 at 28.  Defendants should be able to ask not just whether the Offices have balance billed or plan to balance bill Plaintiffs, but also about the Offices' balance billing practices more generally.  If the Offices never or rarely balance bill patients, it would undermine any claim that that Plaintiffs face a realistic risk of balance billing.  Evidence that the Offices do not balance bill their patients would also support Defendants' arguments that the Offices accepted negotiated rates for the services they rendered to Plaintiffs.

*Third*, Defendants are entitled to explore whether the Offices agreed to negotiated rates for the services at issue.  The Offices will likely testify that the Defendants or their repricers did not negotiate lower rates for the services at issue or that the Offices never accepted a negotiated rate.  *See* Dkt. 35 ¶¶ 96, 146.  Understanding the Offices' rate negotiation policies, procedures, and practices is necessary to assess how they handled any negotiation for Plaintiffs' benefit claims and whether they insisted on rates higher than what were reasonable and standard for their services.

The Offices' relevance objection is premised on the exceedingly narrow view that because their claims concern *Defendants'* alleged failure to comply with Plaintiffs' plan terms, it is irrelevant whether the *Offices* deviated from their standard practices when dealing with Plaintiffs.  Ex. I at 5–6.  That view is not consistent with the "liberal[]" standard of relevance at the discovery stage.  *Vaigasi*, 2016 WL 616386, at *11.  And in any event, it ignores Defendants' entitlement to take discovery to support their defense and theory of the case, including that Plaintiffs' allegations misconstrue their plans' terms.  Defendants have maintained that plan terms at issue are intended to address egregious overbilling by providers.  Defendants are entitled to elicit evidence of billing practices from Plaintiffs' providers to show *why* the terms should be interpreted in that manner.  Testimony concerning the Offices' standard practices is not only probative of *how* the Offices handled Plaintiffs' claims, it is also relevant to show *why* plan sponsors (e.g., Defendants' clients) place limits on out-of-network provider reimbursements, and why, by implication, Plaintiffs' interpretation of the plan terms is incorrect.

The Offices also contend that the disputed topics "improperly seek absent class member discovery," as Plaintiffs and Defendants "have agreed that no party may rely—at class certification briefing or argument—on evidence outside of the Claim Sample" that is being negotiated.  Ex. I at 2.  That contention misunderstands the parties' agreement.  While the parties agreed to not use "any [out-of-network] Benefit Claim" outside of the Claim Sample, the parties did not agree to confine the entire universe of evidence in this case to the evidence produced pursuant to the Claims Sample.  Ex. J, ¶ 41.  Indeed, Plaintiffs have pursued far-ranging discovery from Defendants that vastly exceeds the material Defendants agreed to produce for the Claim Sample.  *See, e.g.*, Dkt. 119 at 2–6; Dkt. 114 at 6.  And in any event, the disputed topics do not seek information about the particular benefit claims of other specific patients; they seek information about the Offices' general policies, procedures, and practices.

For these reasons, Defendants respectfully ask this Court to order the Offices to produce witnesses under Rule 30(b)(6) to provide testimony on the disputed topics.

# GIBSON DUNN

United States District Judge Dale Ho
Southern District of New York

August 11, 2025
Page 4

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/   Heather L. Richardson*

Heather L. Richardson

HLR

Cc: All counsel (via ECF)

**APPLICATION GRANTED IN PART AND DENIED IN PART.**  For substantially the reasons set forth in this endorsed letter motion, the Court grants Defendants' motion to compel 30(b)(6) depositions of the Non-Party Offices concerning topic (2), as described on page 2 of this letter.  With respect to topics (1) and (3), however, questioning shall generally be limited to "how the Non-Parties set the billed charges for the *Named Plaintiffs' services*," and to "negotiations concerning payment for the *Named Plaintiffs' benefit claims*," respectively.  For the reasons stated in the Non-Party Offices Letter, ECF No. 124, the Court concludes that additional discovery on topics (1) and (3) would not be proportional to the needs of this case.

The Clerk of Court is respectfully directed to close ECF No. 121.

SO ORDERED.

Dale E. Ho
United States District Judge
Dated: January 9, 2026
New York, NY