**VIA ECF**                                                                                                    May 19, 2026
United States District Judge Dale Ho
U.S. District Court, S.D.N.Y.
40 Foley Square
New York, NY 10007

      Re:    *Popovchak, et al. v. United Healthcare Services, Inc., et al.*, No. 1:22-cv-10756-DEH Letter Motion Re Defendants' Privilege Log

Dear Judge Ho,

Pursuant to Individual Civil Rule 4(k), Plaintiffs write regarding several deficiencies in Defendants' (collectively, "United's") Privilege Log. Given the number and complexity of the issues presented, Plaintiffs request leave to file a formal motion to compel or, in the alternative, for *in camera* review, supported by a full brief and exhibits. In the alternative, Plaintiffs request a conference with the Court to discuss the issues below.

**I. Background.** United is the third-party administrator of the Plaintiffs' and putative class members' ERISA plans. Plaintiffs challenge United's systematic disregard of written plan terms requiring it to set reimbursement rates for out-of-network healthcare services based on "competitive fees" in the provider's geographic area. Am. Compl. (ECF No. 35) ¶¶ 36-44. Instead of using competitive fees, United uses deeply discounted rates set by "repricing" vendors, including MultiPlan, Inc., *id*. ¶¶ 58-63, and, Plaintiffs learned in discovery, Naviguard (a United affiliate). United has done so through its "Shared Savings Program"—a years-long scheme United has used to increase its own profits by reducing benefit payments and charging plans "savings fees" for supposedly securing discounts from providers' billed charges. *Id*. ¶¶ 75-90. But the "savings" are illusory. *Id*. ¶¶ 84-88.

United produced privilege logs on February 6 and July 8, 2025. On August 25, 2025, Plaintiffs sent a 25-page letter identifying the extensive deficiencies in United's logs, to which United responded on September 15, 2025. United then produced amended logs on October 9 and October 24, 2025, and additional logs on January 2 and January 23, 2026. On April 15, 2026, Plaintiffs sent United another comprehensive letter, explaining why United's logs remained substantively deficient for reasons Plaintiffs previously identified and for new reasons. In response, United produced an amended, consolidated log on April 21, 2026. On May 12, 2026, Plaintiffs informed United that the April 21, 2026 log did not cure any of the deficiencies Plaintiffs had identified in their letters. The parties met and conferred on May 15, 2026 at 1:00 ET, and agreed they are at an impasse as to the issues Plaintiffs have raised. Plaintiffs informed United they would be seeking a conference with this Court. United informed Plaintiffs of its belief that its privilege log is sufficient and that it would oppose this request.

**II. Defendants' Log Fails to Support their Privilege Claims.** Almost three-quarters of the entries on United's log fail to comply with Federal Rule of Civil Procedure 26(b)(5), Local Rule 26.2(a)(2)(A), and this Court's Individual Rule 4(k)(vi). As a result, not only does the log fall far short of United's burden to establish the elements of each privilege claimed, but it also thwarts Plaintiffs' ability to assess and meaningfully challenge the privilege claims.

One or more categories of information required by L.R. 26.2(a)(2)(A) is missing or inadequately set forth in at least 885 of the 1,187 entries on Defendants' latest log, including the following *non-exhaustive* list of deficiencies:

1. Nearly 100 entries fail to describe the type of document (such as a letter, email or memorandum) for which United has claimed privilege.

2. 380 entries fail to identify any of the document's recipient(s). After Plaintiffs raised this problem in August 2025, Defendants filled in the blank recipients by simply listing "File" as the only recipient for all the entries. Then, after Plaintiffs explained in April 2026 that the "File" listing was demonstrably incorrect and incomplete, Defendants amended their log by removing those representations and reverting back to entries that leave the recipients blank.

3. Many other entries fail to identify *all* the recipients of the logged document. For example, Defendants have withheld or redacted dozens of presentations and reports without identifying the audience to whom the presentation was made or the report was sent. In other cases, Plaintiffs were able to figure out that a non-privileged parent document revealed that a logged, withheld document was shared with recipients Defendants failed to list on the log (or to identify in their Appendix)— raising questions about log entries where the parent document is itself withheld.

4. 165 entries fail to identify a single attorney involved in the purportedly privileged communication. Each of those entries lists a non-attorney as the author and the custodian, lists no recipients at all, and then merely asserts that the "UHG Legal Department" is the "Attorney or Priv Actor" that, according to Defendants, "make[s] a document privileged."

5. The log fails entirely to identify the relationships among the non-attorneys listed in any entry, even though, to support its claims, United has to identify facts showing why each recipient of a logged communication "needed to know" the privileged content and that the predominant purpose of the communication was to render or solicit legal advice. After Plaintiffs raised this issue, United provided an Appendix citing the professional titles of 800 individuals, but offered no further information about those individuals' job responsibilities or why they "needed to know" the purportedly privileged information conveyed by any given document. And United left 307 individuals appearing on its log off the Appendix entirely.

6. Hundreds of United's document descriptions also fall short of what is required to establish the elements of the privileges United claims. Many of the entries state that the communication only conveys factual "information," while other entries assert only that the logged document "reflects" legal advice, stopping short of representing that the document actually contains or discloses legal advice or a request for it. United invokes the work product doctrine, but its entries fail to provide *facts* showing the documents were prepared because of litigation and not "in the ordinary course of business" or in "essentially similar form irrespective of litigation." *Schaeffler v. United States,* 806 F.3d 34, 43 (2d Cir. 2015) (citations omitted). And some entries make *no* reference to any actual or anticipated litigation or other adversary proceeding. Similarly, Defendants invoke the common-interest doctrine with respect to their communications with MultiPlan—even communications that do not involve attorneys—but they disclaim *any* need even to identify the common legal interest in question, let alone demonstrate that the communication furthered that common interest. *See*, *e.g.*, *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,* 2023 WL 315072, at *8, 12 (S.D.N.Y. Jan. 19, 2023); *In re Loc. TV Advert. Antitrust Litig.,* 2025 WL 681193, at *32 (N.D. Ill. Feb. 21, 2025).

7. In several instances, United has logged duplicate documents that it produced with inconsistent redactions. Plaintiffs thus unavoidably viewed information in one copy of certain documents that United redacted from another. Having viewed the sometimes-redacted information in good faith,

however, Plaintiffs do not believe the information is privileged at all. (Indeed, when Plaintiff brought some of these inconsistencies to Defendants' attention, Defendants produced the documents without redactions and removed the entries from their log.) United's attempts to justify these unjustifiable redactions, however, call into doubt United's other privilege claims.

**III. Defendants' Log Supports a Reasonable Belief that Many, if not Most, of the Logged Documents Fall within the Fiduciary Exception.** The long-established fiduciary exception to the attorney-client privilege entitles beneficiaries of ERISA plans (like Plaintiffs) to discover otherwise-privileged communications between a plan fiduciary (like United) and its counsel, if the fiduciary sought the legal advice "to assist in the administration of the plan." *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997); *See*, *e.g.*, *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 284 F.R.D. 84, 87-88 (W.D.N.Y. 2012) (explaining rationales for the fiduciary exception). Where, as here, the available information supports a reasonable belief that the fiduciary exception applies, courts often conduct *in camera* review to determine which documents must be produced. *Gill*, 284 F.R.D. at 91.

For example, almost 150 entries on Defendants' logs state that the privileged content concerns Defendants' "ONET policy or programs" or "out-of-network program design."  When United develops standard policies and procedures to interpret and administer plans—including policies governing how United will determine the "allowable amount" for out-of-network services covered by such plans—it is performing a fiduciary function. *See* 29 U.S.C. § 1002(21)(A); *see also Wit v. United Behav. Health*, 2016 WL 258604, at *10-11, *13 (N.D. Cal. Jan. 21, 2016). That is precisely what United's out-of-network programs are: United's standardized, internal policies and procedures for administering benefits under self-funded plans pursuant to United's delegated discretionary authority. Thus, when United seeks legal advice about its out-of-network programs, that advice aids its plan administration, and the fiduciary exception applies. The same is true when United seeks advice about interpretation of plan terms, regulatory compliance, and other fiduciary functions it performs as a plan administrator.

In many instances, United appears to try to avoid the exception by providing only equivocal or ambiguous subject matter descriptions—demonstrating why United's refusal to provide an adequate privilege log is particularly problematic here. For example, 266 entries state that the document concerns *either* one subject *or* a different subject, which might be treated differently with respect to the exception. In other instances, United claims that documents relate to "disputes" or even litigation, but without clarifying whether United is seeking legal advice for its own protection or in its role as a plan fiduciary. In still other cases, United asserts that the logged document relates to "plan design," transparently attempting to take advantage of the distinction courts sometimes draw between "fiduciary functions," which give rise to fiduciary duties, and "'settlor' functions" (like "plan design") which do not. *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014). But United's claim that hundreds of its logged documents relate to "plan design" is not credible. As a third-party administrator, United *never* performs "settlor" functions with respect to *self-funded* plans (known within United as "administrative services only" plans), which are at issue here. Instead, United handles the day-to-day administration of plans, *after* the employer plan *sponsor* makes the "plan design" decisions and acts as the settlor. Indeed, documents United initially withheld and subsequently produced expose United's misuse of the "plan design" label—United described them on its log as concerning "plan design," but the documents actually concerned United's out-of-network programs, calling into question all entries similarly invoking the "plan design" talisman.

Respectfully submitted,

/s/ Caroline E. Reynolds
Caroline E. Reynolds
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
creynolds@zuckerman.com
Tel: 202.778.1859

Cc: All counsel of record (ECF)

Plaintiffs shall, by **May 27, 2026**, file a motion to compel in the form of a letter brief limited to five single-spaced pages.  Defendants shall file any opposition by **June 3, 2026**, limited to five single-spaced pages.  Any reply shall be filed by **June 5, 2026**, limited to three single-spaced pages.  The briefing must otherwise conform with this Court's Individual Rule 4(c)(iii).  The Clerk of Court is respectfully directed to terminate ECF No. 149.

SO ORDERED.
Dated: May 20, 2026
New York, New York

Dale E. Ho
United States District Judge